UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECEIVED

JUN 2 0 2008

| | |
|---|---|
| MYRNA B. TAGAYUN and ROBERT S. MANDELL | ) United States District Court NANCY MAYER WHITTINGTON, CLERK |
| | ) for the District of Columbia U.S. DISTRICT COURT |
| | ) |
| PLAINTIFFS | ) Docket No.: 08-cv-00476 (JR) |
| | ) |
| vs. | ) OBJECTION IN PART and CONSENT |
| | ) IN PART TO DEFENDANT'S MOTION |
| FEDERAL HOME LOAN MORTGAGE CORP., | ) TO DISMISS PURSUANT TO F.R.C.P. |
| a/k/a "FREDDIE MAC"; BANK OF | ) 12(b)(2), and 12(b)(3), OR IN |
| AMERICA, N.A., et al | ) THE ALTERNATIVE TO TRANSFER |
| | ) VENUE. |
| | ) |
| | ) |
| | ) |

## PRELIMINARY STATEMENT

Plaintiffs in this matter were defendants in a foreclosure action instituted in 2005 in the State of New Jersey by Bank of America, N.A., headquartered in Charlotte, North Carolina. Bank of America, N.A. is a federally-chartered National Bank, pursuant to 12 U.S.C. 1 et seq. Plaintiffs commenced this action in the District of Columbia based upon the domicile and status of the Federal Home Loan Mortgage Corporation (a/k/a "Freddie Mac"). Plaintiffs claim fraud and racketeering by Bank of America, N.A., and fraud by Freddie Mac. Plaintiffs further claim other causes of action against other named defendants.

Nearly three years ago, at the commencement of the foreclosure action, Freddie Mac asserted that it was no longer a "federal agency" with respect to complaince under the Freedom of Information Act, 5 U.S.C. 552 et seq, and further that it was not bound the express decision of the United States District Court for the District of Columbia, and the United States Court of Appeals for the Distict of Columbia in **Rocap v. Indiak**, C.A.D.C. 1976, 539 F 2d 174, 176 U.S. App. D.C. 172. (See Exhibit B).

PAGE TWO

The particular fraud alleged in the complaint is plainly evidenced by observation of paragraph four of the First Count of the foreclosure complaint included within Exhibit B: that paragraph states that the complainant, Bank of America, has not "assigned said obligation and mortgage" to any other party ("NONE"). A cursory reading of **Exhibit C,** two communications to the first-named plaintiff here, from Bank of America, confirms that Bank of America had in fact allready sold and assigned the mortgage and note to Freddie Mac, and retained no further equitable or legal interest in the property or instruments. Plaintiffs here believe they can demonstrate satisfactorily to this Court, based upon thousands of documents in our files in this matter, and more germane and substantive evidence which can be gleaned by dint of further discovery; that Freddie Mac, using its 'straw man' loan servicers such as Bank of America, perpetrated a knowing fraud upon us, and did so with the complicity of Bank of America, and others of the named defendants. It is our belief that we were at the 'leading edge' (in 2005) of what has become national and international financial fiasco generally characterized as the "mortgage foreclosure crisis". In a rising and inflated real estate market, the objective of the principal defendants, their "designated counsel", and other named cooperative parties, was to conclude foreclosure, eviction, and resale as quickly as possible. Legal standing to sue was no concern, if it delayed the intended result.

## STATEMENT OF FACTS

1. The Federal Home Loan Mortage Corporation a/k/a Freddie Mac is a federal agency as set forth in its ennabling legislation (see

PAGE THREE

**Exhibit D**, full copy of the Federal Home Loan Mortgage Corporation Act, 12 U.S.C. 1451 et seq). Its purpose in life was and is to buy and sell mortgages (see 7ff. of the Act). Freddie Mac was created by Congress as a federal agency for that purpose. As noted, in 1976, this Court and its Appeals Court affirmed that status. No Act of Congress or discoverable federal court decision has relieved Freddie Mac of that status, despite its own peremptory sssertions.

2. So far as plaintiffs have been able to determine, Freddie Mac maintains no business office or physical premises in the State of New Jersey. It maintains offices in McLean, Virginia, Washington, D.C., and several others--but none in New Jersey.

3. Bank of America, N.A. of course maintains many offices within the State of New Jersey. However, as a National Bank ("N.A."), the State of New Jersey has no control whatever over its operations (see **Exhibit B,** letter to Robert S. Mandell from New Jersey Department of Banking and Insurance, dated July 14, 2005). Bank of America's official legal domicile is Charlotte, North Carolina, which domicile is so indicated on an official copy of its Federal Charter in our possession, obtained during our initial investigation of these parties, i.e., who they are and where they are. We can and will provide a copy to the Court if it requires. We omit it only to save on bulk, and prevent this document from growing to eighteen inches thick. Again, we have thousands of pages of documents in this matter.

Of course, since Bank of America, N.A. maintains many offices within the jurisdiction of this Court (in Washington, D.C.), as a corporation, it is subject to the jurisdiction of the Court. That's evident from 28 U.S.C. 1391, the general venue statute, and in particular

paragraph (c) as noted by movant's counsel in III(D) of their Legal Argument.

4. On April 11, 2008 defendants in Hawthorne, New Jersey were personally served with the Amended Complaint. Service was completed on the Municipal Court, the Borough of Hawthorne, and Hon. John F. Meola, Judge of the Municipal Court. The Summons and Complaint indicated the standard 20 days permitted for response, not including the date of service.

On April 14, 2008, the second-named plaintiff here received a telephone call from Mr. Pfund, New Jersey counsel to the Borough of Hawthorne. After a brief conversation concerning the grounds for naming the Borough of Hawthorne, New Jersey, plaintiff Mandell agreed to dismiss the Borough of Hawthorne, New Jersey from the matter. Mr. Pfund did not indicate he represented any party other than the Borough of Hawthorne, New Jersey. He was assured that the borough would be dismissed pursuant to F.R.C.P. 41. It had been the intent of plaintiff to formally draw up and file the dismissal of the Borough of Hawthorne, New Jersey. Intervening illness and a heavy work schedule had delayed it.

5. There remain several other parties yet to be served within the one hundred twenty days permitted by F.R.C.P. 4, and to date the present movant is the only party to file an answer or motion with the Court. Again, we did consent to dismiss the Borough of Hawthorne, New Jersey, and though more than twenty days have passed between the date of service on that defendant and the date of filing of their present motion, no request has been made seeking default against the Borough of Hawthorne, New Jersey, nor would one be sought.

## PAGE FIVE

Plaintiffs here do of course consent to the dismissal of the Borough of Hawthorne, New Jersey only.

## LEGAL MEMORANDUM AND ARGUMENT

### I. Concerning Dismissal Sought by Defendant's Counsel

As stated, plaintiffs consented to dismissal of the Borough of Hawthorne, New Jersey from this action. Defendant's counsel sought no more than that, to which we consented. Defendant's counsel claimed on April 14, 2008 to represent only the Borough of Hawthorne, New Jersey. Defendant's counsel asked if we would further dismiss the Municipal Court of the Borough of Hawthorne, New Jersey and the Hon. John F. Meola. We stated we would not. Defendant's present motion to dismiss enlarges upon the agreement made on April 14, 2008, and plaintiffs do not consent to that enlargement. Plaintiffs therefore submit that the Municipal Court of the Borough of Hawthorne, New Jersey, and the Hon. John F. Meola, Muncipal Judge, are in default as to timely answer to the summons and complaint. Plaintiffs therefore request the Court enter default as to these parties. As no liquidated damages may be sought of any court or jurist acting within jurisdictional and official capacity, the sole relief sought with respect to these parties is that specified in the amended complaint: writ of mandamus so as to unburden us of further harassment.

Plaintiffs again note that defendant's counsel in New Jersey (Mr. Pfund) on April 14, 2008 by telephone sought only dismissal of of his client from the action. We consented to that, as stated.

Plaintiffs did not consent to dismissal of the action in its entirety; nor did plaintiffs consent to transfer of venue from the District of Columbia to the District of New Jersey. Again plaintiffs confirm consent to the dismissal of the Borough of Hawthorne, New Jersey from this action, notwithstanding their New Jersey and D.C.-admitted counsel having filed the present motion well past the 20-day period from date of service, in which to file an answer or motion. Concerning defendant's motion to dismiss the action, or in the alternative to change venue, plaintiffs request the first or its alternative both be denied as having been submitted out-of-time. On independent, substantive grounds, plaintiffs believe there to be material documentary support presented here with respect to the claims alleged in the complaint and amended complaint, and much, much more in our files, as well as more which may be discovered by dint of further effort.


II. Concerning Proper or Imroper Venue in the District of Columbia

Defendant's counsel in **III(D)** references 28 U.S.C. 1391 (b) and (c), and then elaborates an argument based upon those paragraphs. As stated, supra, the section of the venue statute appropriate to this matter is **28 U.S.C. 1391(e)**. It reads in pertinent part:

> A civil action in which a defendant is an officer
> or employee of the United States or any agency
> thereof acting in his official capacity or under
> color of legal authority, or an agency of the
> United States, may, except as otherwise provided
> by law, be brought <u>in any judicial district in</u>
> <u>which a defendant in the action resides</u>.......

(underscore added)

As noted above, our claim is that Freddie Mac remains a federal
agency under its ennabling legislation, **12 U.S.C. 1451 et seq,**
the Federal Home Loan Mortgage Corporation Act, and further by
a holding of this Court and the District of Columbia Court of
Appeals in **Rocap v. Indiak,** C.A.D.C. 1976, 539 F.2d 174, 176 U.S.
App. D.C. 172. Pursuant to 28 U.S.C. 1391(e), this action may
therefore be properly brought in the District where Freddie Mac
resides--or is subject to the Court's jurisdiction. Freddie Mac
has an office in downtown Washington, D.C. (its Government Rela-
tions Office in fact). And therefore, the District of Columbia
is most certainly a proper venue, legally speaking.

The District of Columbia is also the most appropriate venue, which
is different from propriety of venue. As noted in the exhibits,
Freddie Mac and Bank of America, N.A. were the principal actors
in the connivance, fraud, and chicanery by which the foreclosure
action was inexorably driven to its ultimate conclusion. Without
these two actors, Without their driving force, the scandalous
disregard of the inherent fraud and injustice by other willing
and eager cooperators would have accomplished nothing.

Moreover, as plaintiffs here have allready consented to dismissal
of the Borough of Hawthorne, New Jersey; and the other two parties
in Hawthorne, New Jersey not having answered in the time permitted;
for the single former, the change of venue requirement is moot; and
for the latter two, too late.

Finally, we plaintiffs believe the matter and the claims alleged
would be most objectively considered outside the State of New

Jersey. We include two further Exhibits in this regard:

(1) **Exhibit Pa** is a full copy of an application for Emergent Relief (seeking a stay of the eviction order in the foreclosure) submitted to Mr. Justice Souter at the Supreme Court on July 5, 2006. The eviction was then scheduled for July 12, 2006. Unfortunately, that effort was unsuccessful. However, that document includes within its own set of exhibits, **Exhibit H**, with respect to which we included as the fourth page, a copy of an official letter discovered in the master foreclosure file at New Jersey court headquarters in Trenton, New Jersey. As defendants in that action we frequently travelled to court headquarters in Trenton, New Jersey to investigate activities bearing upon the foreclosure action. The letter appeared in the file several months after its date of July 21, 2005.

The letter is directed to a top administrative official at state court headquarters, from the Chancery Court judge to whom the foreclosure case was assigned, and to whom it would remand in the event our effort to have it proceed in federal court, on federal question grounds, proved unsuccessful.

We plaintiffs here believe the letter evidences undisclosed, ex parte contact initiated by the state court, in an attempt to influence the federal court to remand the matter. This occurred while the matter was on removal, and before the federal court for consideration of the plaintiff's motion to remand the matter. We plaintiffs here believe we were not treated fairly and impartially in this matter.

(2) **Exhibit E** concerns our last contact with New Jersey state court headquarters in this matter. On July 18, 2007 we again

**PAGE NINE**

travelled to state court headquarters to inspect the foreclosure case file. We had been advised that in the normal course of business such files are microfilmed and originals destroyed on some schedule. We had (and have) copious numbers of officially-certified copies from the file (including the letter of July 21, 2005 from the Chancery Court). We sought one last canvas of the file to ascertain if any other documents had been included in the intervening year since the eviction.

We found several documents of interest. Upon requesting certified copies, we were informed by the correspondent to whom the chancery judge had written that no copies, certified, uncertified or otherwise, would be provided, except for documents of an "official" nature which were formal, technical documents filed solely as legal milestones of the progress of the foreclosure action.

We demanded written confirmation as such, as it was at variance with past practice, and it concerned our own case file. The individual appeared upset, but upon repeated insistence, drafted, signed, and presented us with the letter appearing as **Exhibit E**.

As stated, all of these documents, and many, many others, constitute official case records of the foreclosure matter.

Grounded in our experience in the foreclosure matter over a period of fourteen months (from May 3, 2005 to July 12, 2006), we would feel much more confident in having this action proceed well outside the State of New Jersey. We daresay we've been subjected to some rather rough treatment here. See **Exhibit F**.

PAGE TEN

## CONCLUSION

Based upon the above preliminary statement, statement of facts, summary legal analysis, and supporting exhibits, plaintiffs request the Court (a) dismiss the Borough of Hawthorne, New Jersey from this action; (b) order entry of default and default judgment as to the defaulting parties; (c) find the District of Columbia to be the proper and appropriate venue in which the matter may proceed; and (d) enter such other orders as the Court deems appropriate. Plaintiffs further request the Court deny defendant's motion to dismiss the action or change venue to the District of New Jersey.

Respectfully,

_____
Myrna B. Tagayun

_____
Robert S. Mandell

1360 Clifton Avenue, #275
Clifton, New Jersey 07012

973-253-7737

June 18, 2008

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CERTIFICATION OF SERVICE

| | |
|---|---|
| Myrna B. Tagayun & Robert S. Mandell<br><br>Plaintiffs<br><br>vs.<br><br>Federal Home Loan Mortgage Corporation; Bank of America, N.A.; et al<br><br>Defendants | U.S.D.C. Docket No.: 08-cv00476 (JR)<br><br>CIVIL ACTION<br><br>CERTIFICATE OF SERVICE |

I, Robert S. Mandell, hereby certify that I deposited true and complete copies of the within Objection in Part and Consent in Part to Defendant's Motion to Dismiss, together with all Exhibits, in the United States Mail, first class, postage prepaid, on June 20, 2008. Copies were mailed to the following:

Federal Home Loan Mortgage Corporation
401 9th Street, N.W.
Washington, D.C. 20004

Bank of America, N.A.
101 S. Tryon Street
Charlotte, NC 28255

State of New Jersey
Office of the Attorney General
P.O. Box 080
Trenton, NJ 08625

City of Clifton New Jersey
900 Clifton Avenue
Clifton, NJ 07013

Muncipal Court of the City of Clifton NJ and Scott Benion, Judge
900 Clifton Avenue
Clifton, NJ 07013

Reiseman Rosenberg & Pfund, PC
P.O. Box 513
Morris Plains, NJ 07950

LOCAL NEW JERSEY COUNSEL FOR Borough of Hawthorne, NJ; Municipal
Court of Hawthorne, NJ; and John F. Meola, Judge

CERTIFICATION OF SERVICE


D.C. BAR COUNSEL FOR Borough of Hawthorne, NJ; Municipal Court of Hawthrone, NJ; and John F. Meola, Judge

Dombroff Gilmore Jaques & French
1676 International Drive-Penthouse
McLean, VA 22102


_____
Robert S. Mandell


June 20, 2008

EXHIBIT A

```
CVM1023            AUTOMATED CASE MANAGEMENT SYSTEM            10/11/05
PAGE: 001 OF 002        DOCUMENT     LIST                     11:46

     VENUE   : CLERK        COURT : GENL EQTY     DOCKET #: F    007040  05
     CASE TITLE : BANK OF AMERICA N A VS TAGAYUN
     --------------------------------------------------------------------
        DATE    DOC   DOCUMENT    NON    FILING/TARGET    ATTORNEY    MUL DOC
S       FILED   NUM     TYPE      CONF   PARTY NAME         NAME      PTY STA
     --------------------------------------------------------------------
     04 29 2005 001 COMPLAINT            BANK OF AMER    ZUCKER GOLDB  N
     05 06 2005 002 COMP AMENDED         BANK OF AMER    ZUCKER GOLDB  N
     05 09 2005 003 NOTICE TO N.J.       N J STATE OF    ATTY REQUIRE  N
     05 09 2005 004 ACKNOWLDG SERVC      N J STATE OF    ATTY REQUIRE  N
     06 02 2005 007 MISC OTHER           UNITED STATE    ATTY REQUIRE  N
     06 02 2005 008 ANSWER               TAGAYUN MR      PRO SE        N
     06 09 2005 010 ANSWER              .TAGAYUN MR      PRO SE        N
     06 14 2005 009 ANSWER               TAGAYUN         PRO SE        Y
     07 05 2005 011 ANSWER               TAGAYUN         PRO SE        Y
     08 19 2005 012 MOTN SUMM JDGMT      BANK OF AMER    ZUCKER GOLDB  N   GR


PF1-DOCUMENT-DETAIL
PF4=PROMPT  PF6=CONSOLIDATED CASE LIST  PF7=PRIOR  PF8=NEXT  PF22=HELP:
4-©            1    Sess-1    172.16.1.27           TAOCO101      #§2/8
```



I hereby certify that the foregoing is a true copy of the original on file in my office.

Donald F. Phelan
Clerk

- Date: 10/11/2005  Time: 11:46:52 AM

```
CVM1023            AUTOMATED CASE MANAGEMENT SYSTEM          10/11/05
PAGE: 002 OF 002        DOCUMENT    LIST                     11:46


   VENUE    : CLERK        COURT : GENL EQTY    DOCKET #: F   007040  05
   CASE TITLE : BANK OF AMERICA N A VS TAGAYUN

----------------------------------------------------------------------------
         DATE    DOC   DOCUMENT     NON    FILING/TARGET  ATTORNEY    MUL DOC
   S    FILED    NUM    TYPE       CONF    PARTY NAME     NAME       PTY STA
----------------------------------------------------------------------------
      09 23 2005 013 ORDR SUMM JDGMT        BANK OF AMER  ZUCKER GOLDB  N   GR




CV900123 END OF SEARCH
 PF1-DOCUMENT-DETAIL
 PF4=PROMPT  PF6=CONSOLIDATED CASE LIST  PF7=PRIOR  PF8=NEXT  PF22=HELP:
----------------------------------------------------------------------------
4-©           1    Sess-1    172.16.1.27           TAOCO101      #§2/8
```

I hereby certify that the foregoing
is a true copy of the original on file
in my office.

*Donald F. Phelan*

Clerk

- Date: 10/11/2005  Time: 11:46:56 AM

# U.S. District Court
## District of New Jersey [LIVE] (Newark)
## CIVIL DOCKET FOR CASE #: 2:05-cv-02805-FSH-PS
### Internal Use Only

BANK OF AMERICA N.A. v. TAGAYUN
Assigned to: Judge Faith S. Hochberg
Referred to: Magistrate Judge Patty Shwartz
Cause: 28:1442 Petition for Removal- Breach of Contract

Date Filed: 05/31/2005
Jury Demand: Defendant
Nature of Suit: 190 Contract: Other
Jurisdiction: U.S. Government Defendant

### Plaintiff

**BANK OF AMERICA N.A.**

represented by **RICHARD P. HABER**
ZUCKER, GOLDBERG & ACKERMAN

200 SHEFFIELD STREET
SUITE 301
MOUNTAINSIDE, NJ 07092-0024
(908) 233-8500
Fax: (908) 233-1390
Email: rhaber@zuckergoldberg.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

### Defendant

**MYRNA TAGAYUN**

represented by **MYRNA TAGAYUN**
1199 MAIN AVENUE
SUITE 5
CLIFTON, NJ 07011
PRO SE

### Defendant

**MR. TAGAYUN (LEGAL NAME:
ROBERT S. MANDELL)**
*HUSBAND OF MYRNA TAGAYUN*

### Defendant

**DISCOVER BANK, BY ITS
SERVICING AGENT, DISCOVER
FINANCIAL SERVICES, INC.
D/B/A DISCOVER CARD**

### Defendant

**STATE OF NEW JERSEY**

**Defendant**

**UNITED STATES OF AMERICA**

| Date Filed | # | Docket Text |
|---|---|---|
| 05/31/2005 | 2 | NOTICE OF REMOVAL by MYRNA TAGAYUN from SUPERIOR COURT OF PASSAIC COUNTY, case number F-7040-05. ( Filing fee 250 receipt number 200 332519) (mif, ) Additional attachment(s) added on 6/15/2005 (mif, ). Additional attachment(s) added on 6/15/2005 (mif, ). (Entered: 06/15/2005) |
| 06/13/2005 | 1 | MOTION to Remand *foreclosure action to Superior Court of New Jersey* by BANK OF AMERICA N.A.. (Attachments: # 1 Affidavit Affidavit of Ann Wohlabaugh, Vice President of Bank of America# 2 Certification Certification of Ralph Gulko, Esq., counsel for Discover Bank# 3 Brief Plaintiff's brief in support of motion# 4 Text of Proposed Order # 5 Certificate of Service)(HABER, RICHARD) (Entered: 06/13/2005) |
| 06/15/2005 | | Set Deadlines as to 1 MOTION to Remand *foreclosure action to Superior Court of New Jersey*. Opposition to Motion due by 6/27/2005. Reply due by 7/5/2005. Motion returnable 7/11/2005 before Judge Faith S. Hochberg. PARTIES ARE ADVISED THAT THE MOTION WILL BE HEARD ON THE PAPERS AND THAT NO APPEARANCE IS NECESSARY UNLESS OTHERWISE NOTIFIED BY THE COURT. (lm, ) (Entered: 06/15/2005) |
| 06/16/2005 | 3 | Standing ORDER requiring submission of information regarding Removal. Signed by Judge Faith S. Hochberg on 6/16/05. (jd, ) (Entered: 06/16/2005) |
| 06/20/2005 | 4 | DEMAND for Trial by Jury by MYRNA TAGAYUN, MR TAGAYUN. (jd, ) (Entered: 06/20/2005) |
| 06/22/2005 | 5 | Rule 7.1 Letter for extension of return date re 1 MOTION to Remand *foreclosure action to Superior Court of New Jersey* filed by MR. TAGAYUN (LEGAL NAME: ROBERT S. MANDELL). (jd, ) (Entered: 06/22/2005) |
| 06/22/2005 | 6 | RESPONSE by deft Robert S. Mandell to re 3 Order. (entire document w/exhibits in clerks' file) (jd, ) (Entered: 06/22/2005) |
| 06/22/2005 | 7 | ORDER re 1 MOTION to Remand *foreclosure action to Superior Court of New Jersey* filed by BANK OF AMERICA N.A., granting Defendants' request to adjourn the return date to 7/25/2005. Signed by Judge Faith S. Hochberg on 6/22/2005. (lm, ) (Entered: 06/23/2005) |
| 06/22/2005 | | Reset Deadlines as to 1 MOTION to Remand *foreclosure action to Superior Court of New Jersey*. Opposition to motion due by 7/11/2005. Reply due by 7/18/2005. Motion returnable 7/25/2005 before Judge Faith S. Hochberg. PARTIES ARE ADVISED THAT THE MOTION WILL BE HEARD ON THE PAPERS AND THAT NO APPEARANCE IS NECESSARY UNLESS OTHERWISE NOTIFIED BY THE COURT. (lm, |

| | | ) (Entered: 06/23/2005) |
|---|---|---|
| 06/23/2005 | ❍ 8 | CERTIFICATE of Counsel re 3 Order (good faith estimate of amount in controversy) by RICHARD P. HABER on behalf of BANK OF AMERICA N.A. (HABER, RICHARD) (Entered: 06/23/2005) |
| 06/27/2005 | ❍ 9 | Letter from Robert s. Mandell. (jd, ) (Entered: 06/28/2005) |
| 06/29/2005 | ❍ 10 | Letter from Robert S. Mandell. (entire document w/exhibits in Clerk's file) (jd, ) (Entered: 06/30/2005) |
| 06/30/2005 | ❍ 11 | Certification of Richard P. Haber, Esq. in reply to defendants' submission in response to Standing Order filed by the Court on June 16, 2005 on behalf of BANK OF AMERICA N.A. Re 6 Response (NOT Motion), 3 Order. (HABER, RICHARD) (Entered: 06/30/2005) |
| 07/01/2005 | ❍ 12 | Letter from Robert S. Mandell requesting additional time in which to file opposition to motion to remand. (Attachments: # 1 proposed order)(jd, ) (Entered: 07/05/2005) |
| 07/06/2005 | ❍ 13 | Letter from Robert S. Mandell to Mr. Zucker. (document w/exhibit in Clerk's file) (jd, ) (Entered: 07/07/2005) |
| 07/11/2005 | ❍ 14 | BRIEF in Opposition re 1 MOTION to Remand foreclosure action to Superior Court of New Jersey filed by MR. TAGAYUN (LEGAL NAME: ROBERT S. MANDELL). (Attachments: # 1 Robert S. Mandell's opposition to remand (entire document w/exhibit A in clerk's file)) (exhibits AA and BB in Clerk's file)(jd, ) Additional attachment(s) added on 7/12/2005 (jd, ). (Entered: 07/12/2005) |
| 07/13/2005 | ❍ 15 | NOTICE by MR. TAGAYUN (LEGAL NAME: ROBERT S. MANDELL) re: additional documents (jd, ) (Entered: 07/14/2005) |
| 07/18/2005 | ❍ 16 | REPLY to Response to Motion re 1 MOTION to Remand foreclosure action to Superior Court of New Jersey (letter brief) filed by BANK OF AMERICA N.A.. (Attachments: # 1 Certificate of Service)(HABER, RICHARD) (Entered: 07/18/2005) |
| 07/20/2005 | ❍ 17 | Letter from Robert S. Mandell. (jd, ) (Entered: 07/21/2005) |
| 07/21/2005 | ❍ 18 | Letter from Robert S. Mandell. (jd, ) (Entered: 07/25/2005) |
| 08/11/2005 | ❍ 19 | Opinion and ORDER granting 1 Motion to Remand action to Superior Court of NJ, Passaic County . Signed by Judge Faith S. Hochberg on 8/2/05. (jd, ) (Entered: 08/11/2005) |
| 08/11/2005 | ❍ | ***Civil Case Terminated. (jd, ) (Entered: 08/11/2005) |
| 08/11/2005 | ❍ 20 | Letter to Superior Court of NJ, Passaic County re: remand (jd, ) (Entered: 08/11/2005) |
| 08/26/2005 | ❍ 21 | NOTICE OF APPEAL as to 19 Order on Motion to Remand by MR. TAGAYUN (LEGAL NAME: ROBERT S. MANDELL), MYRNA |

| | | TAGAYUN. Filing fee $ 255, receipt number 334379. USCA and counsel of record notified of appeal. The Clerk's Office hereby certifies the record and the docket sheet available through ECF to be the certified list in lieu of the record and/or the certified copy of the docket entries. (ji, ) (Entered: 08/26/2005) |
|---|---|---|
| 08/26/2005 | 22 | TRANSCRIPT REQUEST by MR. TAGAYUN (LEGAL NAME: ROBERT S. MANDELL) re 21 Notice of Appeal (USCA), "Unnecessary for appeal purposes" selected in Section 1A. (ji, ) (Entered: 08/26/2005) |
| 08/31/2005 | 23 | USCA Case Number 05-4022 for 21 Notice of Appeal (USCA), Notice of Appeal (USCA) filed by MYRNA TAGAYUN,, MR. TAGAYUN (LEGAL NAME: ROBERT S. MANDELL),. USCA Case Manager Charlene Crisden (Document Restricted - Court Only) (Crisden, Charlene) (Entered: 08/31/2005) |
| 09/06/2005 | 24 | APPLICATION for Emergent Relief to stay Remand Order by MR. TAGAYUN (LEGAL NAME: ROBERT S. MANDELL), MYRNA TAGAYUN. (Attachments: # 1 proposed order# 2 exhibits)(jd, ) (Entered: 09/06/2005) |
| 09/15/2005 | 25 | Letter from Richard P. Haber, Esq. on behalf of plaintiff Bank of America, N.A. in opposition to defendants' emergent application for stay pending appeal re 24 Application/Petition. (HABER, RICHARD) (Entered: 09/15/2005) |
| 09/15/2005 | 26 | OPINION & ORDER denying 24 Application/Petition for emergency relief filed by MYRNA TAGAYUN,, MR. TAGAYUN (LEGAL NAME: ROBERT S. MANDELL),, The case remains closed . Signed by Judge Faith S. Hochberg on 9/15/2005. (mn, ) (Entered: 09/16/2005) |
| 09/28/2005 | 27 | ORDER of USCA as to 21 Notice of Appeal (USCA), Notice of Appeal (USCA) filed by MYRNA TAGAYUN,, MR. TAGAYUN (LEGAL NAME: ROBERT S. MANDELL), (Crisden, Charlene) (Entered: 09/28/2005) |
| 09/30/2005 | | ***Set CLOSED Flag (ji, ) (Entered: 09/30/2005) |
| 09/30/2005 | 28 | MOTION to Stay by MR. TAGAYUN (LEGAL NAME: ROBERT S. MANDELL). (Attachments: # 1 Motion Part II# 2 Motion Part II)(ji, ) (Entered: 09/30/2005) |
| 11/17/2005 | | Motions No Longer Referred: 28 MOTION to Stay (aa, ) (Entered: 11/17/2005) |
| 12/08/2005 | | ***Motions terminated: 28 MOTION to Stay filed by MR. TAGAYUN (LEGAL NAME: ROBERT S. MANDELL),. (lm, ) (Entered: 12/08/2005) |

Certified as a true copy on
This Date: 12/19/05
By_____ Eric W. Vanberge
    (  ) Clerk
    (X ) Deputy

**EXHIBIT B**



DEX #0772412561/NEXT MORNING

this Freedom of Information
r in "Freddie Mac".

ants in a foreclosure
005, through their
nside, New Jersey.
m the Federal Home
stions:

and information, has
instructed Bank of
Myrna Tagayun, Mr.
er parties, at any

and information, has
instructed Bank of
tly active in the
Number: F-7040-05,

d May 03, 2005 that:
Freddie Mac), the lender
e alternatives to fore-
Mortgage Corporation
of the loan" mean legally?
nk of America, N.A.
much? As of the date(s)
-remaining Principal
er these questions in

om, it appears you have
arket Survey" (PMMS).
A sample page is included herewith. The Link Legend Column indicates you make
available "PMMS Archives". Does this archive include the period January 1, 2001
through December 31, 2001? If so, I require historical data including that period
for 15-Year Fixed Rates, in HTML Format.

Federal Home Loan Mortgage Corporation
8200 Jones Branch Drive, Mail Stop 202
McLean, Virginia 22102

VIA FEDEX #0772412561/NEXT MORNING

Att: Graham Kidner, Esq., Assistant
    General Counsel

Re: Freedom of Information Act Request
    Pursuant to 5 U.S.C. 552

Ref: Bank of America, N.A. Loan Number 6060430888/
    Myrna B. Tagayun

August 26, 2005

Dear Mr. Kidner:

Your assistant Arlene Campbell instructed me to address this Freedom of Information
Act request to you as the Freedom of Information Officer in "Freddie Mac".

I am husband to Myrna Tagayun. My wife and I are defendants in a foreclosure
suit instituted by Bank of America, N.A. on April 29, 2005, through their
counsel, Messrs. Zucker, Goldberg & Ackerman of Mountainside, New Jersey.
This action is contested. In that regard, I require from the Federal Home
Loan Mortgage Corporation, answers to the following questions:

1) To the best of your Corporation's current knowledge and information, has
the Federal Home Loan Mortgage Corporation specifically instructed Bank of
America, N.A. to commence a foreclosure action against Myrna Tagayun, Mr.
Tagayun (Legal Name: Robert S. Mandell), and/or any other parties, at any
time to the present?

2) To the best of your Corporation's current knowledge and information, has
the Federal Home Loan Mortgage Corporation specifically instructed Bank of
America, N.A. to commence the foreclosure action presently active in the
Superior Court of New Jersey, Chancery Division, Docket Number: F-7040-05,
said action dated April 29, 2005?

3) Bank of America, N.A. states in a communication dated May 03, 2005 that:
"Federal Home Loan Mortgage Corporation (also known as Freddie Mac), the lender
that holds the loan......" has engaged a firm to pursue alternatives to fore-
closure. On exactly what date did the Federal Home Loan Mortgage Corporation
become the "holder" of the loan? And what does "holder of the loan" mean legally?
And, has Federal Home Loan Mortgage Corporation paid Bank of America, N.A.
any amount of money to "hold the loan", and if so, how much? As of the date(s)
of any payment or payments, what percentage of the then-remaining Principal
Balance did that/those payments constitute? Please answer these questions in
full and specifically.

4) By search of your Internet Website, www.freddiemac.com, it appears you have
published a regular feature called: "Primary Mortgage Market Survey" (PMMS).
A sample page is included herewith. The Link Legend Column indicates you make
available "PMMS Archives". Does this archive include the period January 1, 2001
through December 31, 2001? If so, I require historical data including that period
for 15-Year Fixed Rates, in HTML Format.

Freddie Mac
Graham Kidner, Esq.
August 26, 2005
-2-

Basically, I need an official printout of that PMMS Archive inclusive of that
period (1/1/01 through 12/31/01). I need something that will constitute admis-
sible evidence, preferably with your Corporation's stamp or seal on it for veri-
fication. Websites are nice, but if you know code—I'm a physicist and electrical
engineer and I know code—you can duplicate anything in HTML, to say anything
you want. I want it officially from your Corporation.

5) Does Federal Home Loan Mortgage Corporation have any OFFICIAL standards and/
or guidelines on "first purchase money mortgage" lending practices which it
classifies as "predatory lending practices"? I've seen some material on your
website; but it's presented anecdotally, incidentally, and in sketchy fashion.
If you have such standards and/or guidelines, codified in an official document,
by way of regulations, standards, 'best practices', etc., I require and OFFICIAL
COPY of that/those lending characteristics you officially hold as 'predatory'.

6) What methods and/or controls does Federal Home Loan Mortgage Corporation have
in place, and actively applied in your mortgage loan purhcase activities, to pre-
vent purchase of first purchase money mortgages which your standards characterize
as 'predatory'?

7) Upon taking possession of first purchase money mortgages, i.e., "holding loans"
first lent by private lenders, does Federal Home Loan Mortgage Corporation auto-
matically grant these lenders, or others "servicing" the loans, independent agency
authority to institute foreclosure proceedings without prior consent of your
Corporation? Obviously the answer to this question is of particular importance.
Please be as specific as you can with regard to grant of authority, contract terms,
etc. Essentially, I need to know if generally, with regard to all servicers, and
specifically with regard to Bank of America, N.A. in this instance: can they act
in foreclosure matters independent of any imprimatur from your Corporation?

I may have other questions later. For now, that's it. I need answers fast. I
believe 5 U.S.C. 552 requires an initial response in ten (10) working days.
I'm a private user, non-commercial. I'll pay reasonable costs to produce any-
thing not stock available. Get back to me quick.

Put simply, I've got Bank of America, N.A. and their bonecrusher lawyers on
the run and on the ropes. I think (NO, I KNOW) they rolled my wife, when I
was away, where I can't say.

I'm including representative documents as bona fides.


Sincerely,


Robert S. Mandell, a/k/a "Mr. Tagayun"            REPLY ADDRESS:

encl.                                              Robert S. Mandell
                                                   1199 Main Avenue, Suite 5
                                                   Clifton, New Jersey 07011

                                                   T: 973-253-7737
                                                   F: 973-253-0213

# ZUCKER, GOLDBERG & ACKERMAN
## ATTORNEYS AT LAW

J B. ZUCKER
AEL S. ACKERMAN
eL ACKERMAN*

JANINE A. GETLER**
RICHARD P. HABER
FRANCES GAMBARDELLA
NANCY J. TRUESDALE***
TANEISHA J. INGRAM

*ALSO MEMBER OF NY AND CA BAR
**ALSO MEMBER OF NY AND PA BAR
***ALSO MEMBER OF GA BAR

200 SHEFFIELD STREET- SUITE 301
P.O. BOX 1024
MOUNTAINSIDE, NJ 07092-0024

TELEPHONE 908-379-2233
FACSIMILE 908-233-1390
E-MAIL: office@zuckergoldberg.com

*REPLY TO NEW JERSEY ADDRESS*

FOUNDED IN 1923
AS ZUCKER & GOLDBERG

MAURICE J. ZUCKER (1918-1979)
LOUIS D. GOLDBERG (1923-1967)
LEONARD H. GOLDBERG (1929-1979)
BENJAMIN WEISS (1949-1981)

New York Office
475 Park Avenue, 8th Fl.
New York, New York 10016

XWZ L 68975/vl                                    May 3, 2005

MYRNA TAGAYUN
1199 Main Avenue, #5
Clifton, NJ 07011
57 Prospect Street
Clifton, NJ 07011

MR. TAGAYUN, HUSBAND OF MYRNA TAGAYUN
1199 Main Avenue, #5
Clifton, NJ 07011
57 Prospect Street
Clifton, NJ 07011

Re:    BANK OF AMERICA, N.A. vs. MYRNA TAGAYUN, et al.
       Docket No.   F- 4040-05
       Premises:    59 Prospect Street, Clifton, NJ 07011

To The Above Named Addressees:

Enclosed herewith please find copy of Summons and Complaint regarding the above captioned foreclosure matter. Kindly advise of your intentions.

Very truly yours,

By:    *Leonard B. Zucker*

LEONARD B. ZUCKER

LBZ/vl
Enclosures
Certified Mail Return Receipt Requested
cc:    Regular Mail

---

**THIS IS AN ATTEMPT TO COLLECT A DEBT.
ANY INFORMATION OBTAINED
WILL BE USED FOR THAT PURPOSE.**

---

XWZ 68975/mt          **FILED**:    **APR 2 9 2005**
ZUCKER, GOLDBERG & ACKERMAN
Attorneys for Plantiff
200 Sheffield Street, Suite 301
P.O. Box 1024
Mountainside, New Jersey 07092-0024
1-908-233-8500

| | |
|---|---|
| Bank of America, N.A. | :   SUPERIOR COURT OF NEW JERSEY<br>:   CHANCERY DIVISION<br>:   PASSAIC COUNTY<br>:   DOCKET NO. F- *7040-05* |
|          Plaintiff, | :<br>:          <u>Civil Action</u> |
| vs. | :<br>:       **COMPLAINT**<br>:         **FOR** |
| MYRNA TAGAYUN; MR. TAGAYUN,<br>HUSBAND OF MYRNA TAGAYUN; STATE<br>OF NEW JERSEY; | :      **FORECLOSURE**<br>:<br>: |
|          Defendants. | : |

Bank of America, N.A., having its principal place of business at , ,   the plaintiff in the

above entitled cause, says:

## FIRST COUNT

1. On 04/11/2001, Myrna Tagayun & Mr. Tagayun, husband of Myrna Tagayun executed to an obligation (Note) secure the sum of $172800.00, payable on 05/01/2016 with the initial interest rate of 7.500% per annum, by payment of the sum of $1601.88 per month for interest and principal.

2. To secure the payment of the aforesaid obligation, Myrna Tagayun & Mr. Tagayun, husband of Myrna Tagayun, executed to Plaintiff or its assignors or its predecessors, a Mortgage dated 04/11/2001, and thereby mortgaged to Plaintiff or its assignors or its predecessors in fee the land hereinafter described.

3. The mortgaged premises are described as follows:

ALL the following described property located in the City of Clifton, County of Passaic, State of New Jersey:

COMMONLY known as 57 Prospect Street, Clifton, NJ 07011.

BEING also known as Lot 32, Block 15.10 on the tax map of the City of Clifton.

4. The holder of the obligation and Mortgage referred to in paragraphs 1 and 2 above assigned said obligation and Mortgage as follows:

NONE

5. The obligation aforesaid contained an agreement that if any installment payment of interest and principal, taxes and insurance premiums should remain unpaid for 30 days after the same shall fall due, the whole principal sum, with all unpaid interest, should at the option of the above named mortgagee or the heirs, executors, administrators, representatives or assigns, become immediately due and

**Bank of America.**

Bank of America
475 CrossPoint Parkway
PO Box 9000
Getzville, NY 14068-9000

May 03, 2005

Myrna Tagayun
1199 Main Ave #5
Clifton NJ 07011

Loan Number 6060430888

Dear Customer:

Thank you for your most recent payment. This payment is being returned to you as it is not sufficient to fully reinstate your mortgage loan. All money remitted also must be in the form of certified funds, no personal checks will be accepted.

The Federal Home Loan Mortgage Corporation (also known as Freddie Mac), the lender that holds the loan, has engaged First American Loss Mitigation (FALM) to explore alternatives to foreclosure that may be available.

Please call 1.877.232.4999 to speak to a representative of First American Loss Mitigation to explore your options.

Sincerely,

Foreclosure Department

IMPORTANT NOTE: Contacting our office will not suspend your obligation to make your mortgage payments. We will continue all collection and foreclosure activity unless and until a workout plan has been completed. Timing is critical, so please act soon.

Enclosure
FC031 012 F8K

Return To:

**ROBERT L. STOBER**
Attorney At Law
805 Clifton Avenue
Clifton, New Jersey 0  013

Prepared By: MICHAEL ADAMS
BANK OF AMERICA, N.A.
1400 BEST PLAZA DR, STE  01
RICHMOND, VA  23227

───────────── [Space Above This Line For Recording Data] ─────────────

# MORTGAGE

LOAN # 6060430888

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certai   rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  APRIL 11, 2001
together with all Riders to this document.
(B) "Borrower" is  MYRNA TAGAYUN

GERARD J. DISTEFANO
REGISTER
PASSAIC COUNTY
New Jersey

INSTRUMENT NUMBER
2001029417
RECORDED ON
Apr 18, 2001
11:25:43 AM
BOOK:M-463
PAGE:106
Total Pages: 16

Borrower is the mortgagor under this Securit   Instrument.
(C) "Lender" is  BANK OF AMERICA, N.A

Lender is a  NATIONAL BANKING ASSOCIATION
organized and existing under the laws of THE UNITED STATES OF AMERICA

RECORDING FEES -    $45.00
RECORDER OF DEEDS
TOTAL                $45.00

INV: 24172 USER: AM
Form 3031 1/01

**NEW JERSEY** – Single Family – Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**

-6(NJ) (0005)

Page 1 of 15               Initials:_____        CVN  04/09/01 6:34 AM 6060430888
VMP MORTGAGE FORMS - (800)521-7291

Our Other Sites | Sitemap    Search [        ] ▸GO

## Freddie Mac℠

| >> Doing Business with Freddie Mac | >> About Freddie Mac | >> Buying and Owning a Home |

**News and Information**

News and Information Home

**Corporate Statistics**

**Officer Biographies**

Speeches and Statements

**Economic and Housing Research**

**Industry Reports and Publications**

Primary Mortgage Market Survey
· About the PMMS
· Survey Participation
· PMMS Archives
· Syndicate PMMS Data

**News Release Archives**

# Weekly Primary Mortgage Market Survey

2005 Weekly Mortgage Rates Data (Excel 5.0/Win95 workbook)

## Compilation of Weekly Survey Releases for 2005

| August 18, 2005 | 30-yr | 5-yr | 5/1-yr ARM | 1-yr ARM |
|---|---|---|---|---|
| Average Rates: | 5.80% | 40% | 5.34% | 4.58% |
| Fees & Points: | 0.5 | 0.5 | 0.6 | 0.7 |

| August 11, 2005 | 30-yr | 5-yr | 5/1-yr ARM | 1-yr ARM |
|---|---|---|---|---|
| Average Rates: | 5.89% | 47% | 5.40% | 4.57% |
| Fees & Points: | 0.5 | 0.6 | 0.6 | 0.7 |

| August 4, 2005 | 30-yr | 5-yr | 5/1-yr ARM | 1-yr ARM |
|---|---|---|---|---|
| Average Rates: | 5.82% | 38% | 5.30% | 4.47% |
| Fees & Points: | 0.6 | 0.6 | 0.7 | 0.7 |

| July 28, 2005 | 30-yr | 5-yr | 5/1-yr ARM | 1-yr ARM |
|---|---|---|---|---|
| Average Rates: | 5.77% | 34% | 5.27% | 4.46% |
| Fees & Points: | 0.5 | 0.5 | 0.6 | 0.7 |

| July 21, 2005 | 30-yr | 5-yr | 5/1-yr ARM | 1-yr ARM |
|---|---|---|---|---|
| Average Rates: | 5.73% | 32% | 5.26% | 4.42% |
| Fees & Points: | 0.4 | 0.4 | 0.5 | 0.6 |

| July 14, 2005 | 30-yr | 5-yr | 5/1-yr ARM | 1-yr ARM |
|---|---|---|---|---|
| Average Rates: | 5.66% | 25% | 5.15% | 4.39% |
| Fees & Points: | 0.6 | 0.6 | 0.7 | 0.7 |

| July 7, 2005 | 30-yr | 5-yr | 5/1-yr ARM | 1-yr ARM |
|---|---|---|---|---|
| Average Rates: | 5.62% | 20% | 5.19% | 4.33% |
| Fees & Points: | 0.6 | 0.7 | 0.7 | 0.7 |

| June 30, 2005 | 30-yr | 5-yr | 5/1-yr ARM | 1-yr ARM |
|---|---|---|---|---|
| Average Rates: | 5.53% | 12% | 5.06% | 4.24% |
| Fees & Points: | 0.6 | 0.6 | 0.6 | 0.7 |

| June 23, 2005 | 30-yr | 5-yr | 5/1-yr ARM | 1-yr ARM |
|---|---|---|---|---|
| Average Rates: | 5.57% | 16% | 5.05% | 4.23% |
| Fees & Points: | 0.6 | 0.6 | 0.6 | 0.7 |

| June 16, 2005 | 30-yr | 5-yr | 5/1-yr ARM | 1-yr ARM |
|---|---|---|---|---|
| Average Rates: | 5.63% | 22% | 5.10% | 4.25% |
| Fees & Points: | 0.5 | 0.5 | 0.5 | 0.6 |

**PMMS℠ Resources**

Sign-up to participate in our weekly PMMS online survey!

Syndicate PMMS data on your website.

PMMS RSS Feed

**Historical PMMS Data**

Historical monthly PMMS data tables are available for each type of product in both HTML and Excel formats:

30-Year Fixed-Rate Historic Tables
[HTML] [Excel]

15-Year Fixed-Rate Historic Tables
[HTML] [Excel]

5-Year Adjustable-Rate Historic Tables
[HTML] [Excel]

1-Year Adjustable-Rate Historic Tables
[HTML] [Excel]

 **Freddie Mac**

We make home possible℠

Graham H. Kidner, Asst. Gen. Counsel
8200 Jones Branch Drive, MS 202
McLean, Virginia 22102
(703) 903-2492 (telephone)
(703) 903-3691 (facsimile)
graham_kidner@freddiemac.com

31 August 2005

Robert S. Mandell
1199 Main Avenue, Suite 5
Clifton, New Jersey 07011

Re:    Freedom of Information Act Request
       Bank of America, N.A. Loan No. 6060430888
       Myrna B. Tagayun, 57 Prospect Street, Clifton, NJ

Dear Mr. Mandell:

I received your letter dated 26 August 2005.   Federal Home Loan Mortgage Corporation ("Freddie Mac") is not subject to the Freedom of Information Act and will not accede to your request to produce the various documents and records that you are seeking.  Given that you are in litigation with respect to the foreclosure of the referenced property, you should direct all further communications concerning this loan to the law firm of Zucker, Goldberg & Ackerman.   You already have contact information for the law firm.

Yours sincerely,

Graham H. Kidner

cc:    *Richard Haber, Esq.*





Robert S. Mandell
1199 Main Avenue, Suite 5
Clifton, New Jersey 07011

07011+2253-05  C015



Freddie
Mac

Freedie Mac
8200 Jones Branch Road, MS 202
McLean, Virginia 22102

Att: Mr. Grahma H. Kidner, Asst. Gen. Counsel

Re: Your Reply of 31 August, 2005/Refusal to
    Provide Informatin pusuant to 5 U.S.C. 552

CERTIFIED MAIL/RETURN RECEIPT REQUESTED
#7003 2260 0001 9702 0621

September 3, 2005


Dear Mr. Kidner:

I am in receipt of your above-referenced reply, refusing the release of informa-
tion I have requested. You state that "Federal Home Loan Mortgage Corporation
("Freddie Mac") is not subject to the Freedom of Information Act and will not
accede you (my) request to produce various documents and records that (I) am
seeking".

I refer you to Rocap v. INdiek, C.A.D.C. 1976, 539 F.2d 174, 176 U.S. App.
D.C. 172., wherein it was decided that the Federal Home Loan Mortgage Corporation
(is) an "agency", subject to disclosure and reporting requirements of (this)
section".

Again, I demand that the information requested in my communication to you of
August 26, 2005 under Express Mail Number 0772412561 be provided in full and
promptly, I am a non-commercial user of such information, and it bears directly
upon a serious matter in which I am involved.

I suggest you go to your local Law Library and fully review the provisions of
5 U.S.C. 552, together with Annotation 47 (West Publishing Company's edition
of the United States Code Annotated). You will find the above-referred citation
listed at that number.

I would much prefer NOT having to institute an action against the Federal Home
Loan Mortgage Corporation in the United States District Court for the District
of New Jersey. The law on the matter is clear, and was decided nearly thirty (30)
years ago.

I previously included a full copy of the text of 5 U.S.C. 552 for your review,
and therefore it is superfluous that I do so again.

I will take necessary action in the District Court, if the demanded information
is not provided within the time limits set by the provisions of 5 U.S.C. 552.


Respectfully yours,


Robert S. Mandell

# UNITED STATES
# CODE
# ANNOTATED

## Title 5

Government
Organization
and
Employees
§§ 1 to 552

ADMINISTRATIVE PROCEDURE    Ch. 5

ple contention that it is exempt as an agency of Congress. Petkas v. Staats, D.C.D.C.1973, 364 F.Supp. 680, reversed on other grounds 501 F.2d 887, 163 U.S.App.D.C. 327.

**44. — Defense Nuclear Facilities Safety Board**

Defense Nuclear Facilities Safety Board would be considered "agency" within meaning of the Freedom of Information Act (FOIA) and therefore required to make its records available to the public and to open its meetings, even though Board deal with highly sensitive information concerning matters critical to nation's defense and to public health and safety; statute provides for Board to make its recommendations public after receipt by the Secretary of Energy, and entity which advised the President, rather than "agency." Energy Research Foundation v. Defense Nuclear Facilities Safety Bd., C.A.D.C.1990, 917 F.2d 581, 286 U.S.App.D.C. 359.

**45. — Environmental Protection Agency**

Environmental Protection Agency must comply with publication requirements of this section. Appalachian Power Co. v. Train, C.A.4, 1977, 566 F.2d 451.

**46. — Federal courts**

Purpose of this section was to correct improper denials of information by various federal agencies, not by courts. F.D.I.C. v. Ernst & Ernst, C.A.2 (N.Y.) 1982, 677 F.2d 230.

This section imposes no obligation on the courts to produce any records in their possession. Warth v. Department of Justice, C.A.9 (Cal.) 1979, 595 F.2d 521.

This section makes agency information available to public but does not apply to courts of United States. Cook v. Willingham, C.A.10 (Kan.) 1968, 400 F.2d 885.

Tax Court was not an "agency" for purposes of this section such as to require it to disclose records pertaining to taxes theimer v. Chumbley, D.C.Mont.1980, 498 F.Supp. 890, affirmed 746 F.2d 1487.

**47. — Federal Home Loan Mortgage Corporation**

Federal Home Loan Mortgage Corporation was "agency", subject to disclosure and reporting requirements of this

148

section. Rocap v. Indiek, C.A.D.C.1976, 539 F.2d 174, 176 U.S.App.D.C. 172.

**48. — Food and Drug Administration**

Pertinent records of the Food and Drug Administration may be subject to the provisions of this section and to the regulations pertaining to official records and information of the Department of Health, Education, and Welfare. Apicella v. McNeil Laboratories, Inc., D.C.N.Y.1975, 66 F.R.D. 78.

**49. — Grantees**

Federal participation in the generation of data by a privately controlled organization by means of a grant from Department of Housing and Urban Development does not make the private organization a federal "agency" within terms of this section. Forsham v. Harris, U.S.Dist.Col. 1980, 100 S.Ct. 977, 445 U.S. 169, 63 L.Ed.2d 293.

**50. — Municipalities**

Freedom of Information Act does not apply to municipal corporations. Rankel v. Town of Greenburgh, S.D.N.Y.1987, 117 F.R.D. 50.

**51. — National Academy of Sciences**

National Academy of Sciences is not an "agency" within this section. Lombardo v. Handler, D.C.D.C.1975, 397 F.Supp. 792, affirmed 546 F.2d 1043, 178 U.S.App.D.C. 277, certiorari denied 97 S.Ct. 2639, 431 U.S. 932, 53 L.Ed.2d 248.

**52. — National Security Council**

National Security Council (NSC) is "agency" and is subject to Freedom of Information Act of this section. Armstrong v. Executive Office of the President, 1995, 877 F.Supp. 690.

The National Security Council is an Agency for purposes of the Freedom of Information Act. 1978 (Counsel-Inf. Op.) 2 Op.O.L.C. 197.

**53. — Office of Science and Technology**

Where Office of Science and Technology had independent function of evaluating federal scientific programs, Office was "agency" subject to this section. Soucie v. David, C.A.D.C. 1971, 448 F.2d 1067, 145 U.S.App.D.C. 144.

**54. — Office of the President**

Executive Residence of the President, which is exclusively dedicated to assisting the President in maintaining his home

Ch. 5    ADMINISTRATIVE PROCEDURE

and carrying out his various ceremonial duties, is not an "agency" as defined in Freedom of Information Act (FOIA), and therefore was not subject to FOIA reporting requirements; staff of Executive Residence exercises no independent authority. Sweetland v. Walters, C.A.D.C.1995, 60 F.3d 852, 314 U.S.App.D.C. 9.

Counsel to the President, as part of Office of the President, was not an "agency" for purposes of the Freedom of Information Act. National Sec. Archive v. Archivist of the U.S., C.A.D.C. 1990, 909 F.2d 541, 285 U.S.App.D.C. 302.

"Executive Office" does not include Office of the President, and President's immediate personal staff or units in Executive Office whose sole function is to advise and assist President are not included within term "agency" under Freedom of Information Act. Rushforth v. Council of Economic Advisers, C.A.D.C. 1985, 762 F.2d 1038, 246 U.S.App.D.C. 59.

Under second prong of test applied to determine if entity in executive branch is "agency" within meaning of Freedom of Information Act (FOIA), or "sole function test", entity that exercises substantial independent authority aside from advising and assisting President is an agency. Armstrong v. Executive Office of the President, 1995, 877 F.Supp. 690.

**55. — Pardon Attorney**

The Office of the Pardon Attorney which, in addition to handling pardon applications, is authorized to perform any other duties assigned by the Attorney General or the deputy attorney general is a unit within an executive department. Crooker v. Office of Pardon Attorney, C.A.2 (Conn.) 1980, 614 F.2d 825.

**56. — President elect's transition staff**

President elect's transition staff is an agency within this section. Illinois Institute for Continuing Legal Educ. v. U.S. Dept. of Labor, D.C.Ill.1982, 545 F.Supp. 1229.

**57. — Red Cross**

American National Red Cross, while undoubtedly a close ally of the United States government, is not an "agency" for purposes of this section, as operations of Red Cross are not subject to substantial federal control or supervision. Irwin Memorial Blood Bank of San Francisco Medical Blood Bank v. American Nat. Red Cross, C.A.9 (Cal.) 1981, 640 F.2d 1051.

**58. — Renegotiation boards**

The Renegotiation Board is an "agency" for purposes of this section and is not exempt from the applicable provisions of its provisions. Renegotiation Bd. v. Bannercraft Clothing Co., Inc., U.S.Dist.Col. 1974, 94 S.Ct. 1028, 415 U.S. 1, 39 L.Ed.2d 123, on remand 495 F.2d 1074, 162 U.S.App.D.C. 18.

Regional Renegotiation Board, charged with obligation to file reports in renegotiation cases is "agency" to which this section, including requirement of disclosure of final opinions, applies. Grumman Aircraft Engineering Corp. v. Renegotiation Bd., C.A.D.C. 1973, 482 F.2d 710, 157 U.S.App.D.C. 121, certiorari granted 94 S.Ct. 2602, 417 U.S. 907, 41 L.Ed.2d 211, reversed on other grounds 95 S.Ct. 1491, 421 U.S. 168, 44 L.Ed.2d 57.

**59. — Smithsonian Institution**

Smithsonian Institution had reasonable basis for concluding that it was not "agency" under Freedom of Information Act (FOIA) and, thus, it was not liable for attorney fees, even though institution is federally chartered, receives federal appropriations, receives federal ap... to civil service laws, and hires own police force. Cotton v. Heyman, C.A.D.C.1995, 63 F.3d 1115, 314 U.S.App.D.C. 161.

Smithsonian Institution was "agency" subject to Freedom of Information Act (FOIA); Smithsonian performed governmental functions as center of scholarship and national museum responsible for safekeeping and maintenance of national treasures, Smithsonian received federal funds for many of its operations, was majority of civil service employees, and chartered by act of Congress, and had received representation from United States Attorney, absolute governmental immunity in liability suits, and other benefits in property transfers. Cotton v. Adams, D.D.C.1992, 798 F.Supp. 22.

149



Graham H. Kidner, Asst. Gen. Counsel
8200 Jones Branch Drive, MS 202
McLean, Virginia 22102
(703) 903-2492 (telephone)
(703) 903-3691 (facsimile)
graham_kidner@freddiemac.com

We make home possible℠

8 September 2005

Robert S. Mandell
1199 Main Avenue, Suite 5
Clifton, New Jersey 07011

Re:     Freedom of Information Act Request
        Bank of America, N.A. Loan No. 6060430888
        Myrna B. Tagayun, 57 Prospect Street, Clifton, NJ

Dear Mr. Mandell:

I received your letter dated 3 September 2005.   I am familiar with *Rocap v. Indiek*, 539 F.2d 174 (D.C. Cir. 1976).  Because of fundamental changes made by Congress to Freddie Mac's status after the decision in *Rocap*, Freddie Mac takes the position that it is no longer subject to the Freedom of Information Act.

Yours sincerely,

Graham H. Kidner

cc:     *Richard Haber, Esq.*

Freddie
Mac

Robert S. Mandell
1199 Main Avenue, Suite 5
Clifton, New Jersey 07011

07011+2253-05  C015



# State of New Jersey
### DEPARTMENT OF BANKING AND INSURANCE
### DIVISION OF BANKING
PO Box 040
TRENTON, NJ 08625-0040

RICHARD J. CODEY
*Acting Governor*

DONALD BRYAN
*Acting Commissioner*

July 14, 2005

Mr. Robert S. Mandell
1199 Main Avenue, Suite 5
Clifton, NJ 07011

Re: Docket No. 05-1180
Bank of America, NA
Bank of America, LP

Dear Mr. Mandell:

This is in response to your June 24, 2005 correspondence to the Division of Banking regarding Bank of America, NA and Bank of America, LP. Please be advised of the following.

Due to its national charter status, Bank of America, NA does not fall under the jurisdiction of the New Jersey Department of Banking and Insurance-Division of Banking. Nationally chartered banks are regulated by the Office of the Comptroller of the Currency ("OCC"), a bureau of the US Department of the Treasury. Should you choose to file a complaint against Bank of America, NA, please contact OCC's Customer Assistance Group at (800)-613-6743.

Review of the Division of Banking's database does not reflect that Bank of America, LP has not been issued any type of Licensure by this office. It is not known the status of Bank of America, LP- whether it is an affiliate or subsidiary of Bank of America, NA. Affiliates or subsidiaries of National Banks are typically not licensed as they claim federal preemption New Jersey State Law. (N.J.S.A. 17:11C, The New Jersey Licensed Lenders Act) relevant to the requirement that subsidiaries of banks must be licensed.

I hope you found the information provided beneficial. Should you have any questions, please contact me at (609)-984-2777, Extension # 50490.

Very truly yours,

Edward Mann
Investigator 2

STATE OF NEW JERSEY
DEPARTMENT OF BANKING AND INSURANCE
DIVISION OF BANKING
PO BOX 040
TRENTON NJ 08625-0040

Received
7-16-05

Mr. Robert S. Mandell
1199 Main Avenue, Suite 5
Clifton, NJ 07011

07011*2253-05 C015

# SUPERIOR COURT OF NEW JERSEY

DONALD F. PHELAN
CLERK



OFFICE OF THE CLERK
PO BOX 971
TRENTON, NEW JERSEY 08625-0971

June 20, 2005

The Honorable Harriet F. Klein, J.S.C.
Wilentz Complex 8th Floor
212 Washington Street
Newark, NJ 07102

Re:    Bank of America, NA v. Mr. Myrna Tagayun
Docket No.: F- 7040-05

Dear Judge Klein:

This office has received an answer on behalf of Mr. Myrna Tagayun in the above captioned case. As it has been determined that the answer contests the subject of the foreclosure complaint in this matter, the file is being transferred to your office. Therefore, please add this case to the general equity calendar pursuant to Rule 4:36-2.

Respectfully,
Office of Foreclosure

cc:    Zucker, Goldberg & Ackerman

I hereby certify that the foregoing
is a true copy of the original on file
in my office.
_Donald F. Phelan_
Clerk

**EXHIBIT C**

**Bank of America.**

Bank of America
475 CrossPoint Parkway
PO Box 9000
Getzville, NY 14068-9000

May 03, 2005

Myrna Tagayun
1199 Main Ave #5
Clifton NJ 07011

Loan Number 6060430888

Dear Customer:

Thank you for your most recent payment. This payment is being returned to you as it is not sufficient to fully reinstate your mortgage loan. All money remitted also must be in the form of certified funds, no personal checks will be accepted.

The Federal Home Loan Mortgage Corporation (also known as Freddie Mac) , the lender that holds the loan, has engaged First American Loss Mitigation (FALM) to explore alternatives to foreclosure that may be available.

Please call 1.877.232.4999 to speak to a representative of First American Loss Mitigation to explore your options.

Sincerely,

Foreclosure Department

IMPORTANT NOTE: Contacting our office will not suspend your obligation to make your mortgage payments. We will continue all collection and foreclosure activity unless and until a workout plan has been completed. Timing is critical, so please act soon.

Enclosure
FC031 012 F8K

TRUE COPY OF THE ORIGINAL INSPECTED BY ME.

*Michele Chambers*

NOTARY PUBLIC          MICHELE CHAMBERS
Notary Public of New Jersey
My Commission Expires Aug. 5, 2008

Recycled Paper

**Bank of America.**

Bank of America
475 CrossPoint Parkway
PO Box 9000
Getzville, NY 14068-9000

August 16, 2005

Myrna Tagayun
1199 Main Ave #5
Clifton NJ 07011

LOAN NUMBER 6060430888

Dear Customer:

Bank of America would like to assist you in avoiding foreclosure. We understand that you are experiencing financial difficulties and we may be able to consider your loan for a workout alternative.

In order to do this, servicing guidelines require that we obtain detailed information about your current financial situation so that we can properly evaluate your loan for a potential workout option. Please provide the information requested on page 2 within seven (7) days of receiving this letter.

Please be advised that during consideration for any alternative collection activity will continue. This could include foreclosure proceedings, which may cause the assessment of applicable fees. You will be responsible for all fees incurred up until the execution of a workout alternative. In the event that a denial decision is rendered, collections and or foreclosure proceedings will continue.

A loan counselor will notify you of a decision once we have completed the review process. A decision may be subject to the approval of the investor on your loan and the mortgage insurance company.

We look forward to your response and working with you in developing a workout alternative to assist you during this time. If you have additional questions, please call us at 1.800.846.2222.

***WE MAY REPORT OR HAVE REPORTED INFORMATION ABOUT YOUR ACCOUNT TO THE CREDIT BUREAUS. LATE PAYMENTS, MISSED PAYMENTS, OR OTHER DEFAULTS ON YOUR ACCOUNT MAY BE REFLECTERD ON YOUR CREDIT REPORT.***

Sincerely,

Default Servicing

XC804 017 W2B                    Fhlmc/3 Day Remit/parc

Recycled Paper

**Bank of America.**

Bank of America
475 CrossPoint Parkway
PO Box 9000
Getzville, NY 14068-9000

Page 2   Loan Number: 6060430888

Please use this page as a cover letter when returning your information and check off the items that are included in the package.  Please keep a copy of all information you submit to our office for your records. Failure to include ALL of the requested information will delay the review and possible approval of a workout alternative.

_____ A signed letter indicating why you fell behind in your payments and when the hardship occurred.  This letter should include a description of the efforts made to bring the loan current. All parties on the loan must sign this letter.

_____ A completed and signed financial statement (enclosed)

_____ Verification of all sources of income (including last 30 days of pay stubs).  If self employed, please provide current profit and loss statements.

_____ If Bank of America does not pay your homeowners insurance and property taxes, please provide proof of insurance and paid copies of your tax receipts.

_____ If we are reviewing your request for a short sale we will need the following info:
    ____a copy of the signed purchase offer/sales contract
    ____a comparative market analysis
    ____an estimate of net proceeds
    ____a written description of any liens on the property.

To expedite the review and approval process we suggest that you return the requested information via:

Overnight Mail or Priority Mail to:
Bank of America Mortgage,
475 Cross Point Parkway,
Getzville, NY  14068-9000
Loss Mitigation Department

Via Bank of America Interoffice Mail at your local branch to mail code NY2-001-02-17

Via Facsimile to 716.635.7255.

Recycled Paper



UNITED STATES POSTAGE

$ 00.30⁹
PITNEY BOWES

02 1A
0004396575    AUG 19 2005
MAILED FROM ZIP CODE 14068

PRESORTED
FIRST CLASS

08-22-05 BUF NY 142

Bank of America
475 CrossPoint Parkway
PO Box 9000
Getzville NY 14068-9000

Bank of America.

G-LZTMM 07011

Freddie Mac

| BORROWER | CO-BORROWER |
|---|---|

| BORROWER'S NAME | CO-BORROWER'S NAME |
|---|---|

| SOCIAL SECURITY # | HOME PHONE # | WORK PHONE # | SOCIAL SECURITY # | HOME PHONE | WORK PHONE # |
|---|---|---|---|---|---|

| MAILING ADDRESS | PROPERTY ADDRESS |
|---|---|

| Do you occupy the property?<br>Yes   No | Is it a Rental?<br>Yes   No | If so, what is monthly rental income? | Is the property listed for sale?<br>Yes   No | If so, with whom? |
|---|---|---|---|---|

| REAL ESTATE AGENT'S NAME: | CREDIT COUNSELING REPRESENTATIVE: |
|---|---|
| REAL ESTATE AGENT'S PHONE: | CREDIT COUNSELING REP'S PHONE: |

| Have you contacted your credit counseling services for help?  Yes   No | Do you pay Real Estate Taxes? (outside of mortgage payments)  Yes   No | Are the taxes current?<br>Yes   No |
|---|---|---|
| Have you filed Bankruptcy?<br>Yes   No | If Yes,<br>Chapter 7<br>Chapter 13 | Filing Date: | ATTORNEY'S NAME:<br><br>ATTORNEY'S PHONE: | Are there other liens on the property?<br>Yes   No |

### EMPLOYMENT

| EMPLOYER- BORROWER | HOW LONG? | EMPLOYER - CO-BORROWER | HOW LONG? |
|---|---|---|---|

| Monthly Income - Borrower | | Monthly Income - Co-Borrower | |
|---|---|---|---|
| Wages | $ | Wages | $ |
| Unemployment Income | $ | Unemployment Income | $ |
| Child Support / Alimony* | $ | Child Support / Alimony* | $ |
| Disability Income | $ | Disability Income | $ |
| Rents Received | $ | Rents Received | $ |
| Other | $ | Other | $ |
| Less : Federal and State Tax, FICA | $ | Less : Federal and State Tax, FICA | $ |
| Less: Other Deductions (401K, etc.) | $ | Less: Other Deductions (401K, etc.) | $ |
| **Total** | $ | **Total** | $ |

| Monthly Expenses (All Borrowers) | | Assets & Liabilities (All Borrowers) | | |
|---|---|---|---|---|
| Other Mortgages / Liens/Rents | $ | **Type** | **Estimated Value/Amount Owed** | |
| Auto Loan(s) | $ | Checking Account(s) | $ | / |
| Auto Expenses / Insurance | $ | Saving / Money Market | $ | / |
| Credit Cards / Installment Loan(s) | $ | Stocks / Bonds / CDs | $ | / |
| Health Insurance | $ | IRA / Keogh Accounts | $ | / |
| Medical | $ | 401k / ESOP Accounts | $ | / |
| Child Care / Support / Alimony | $ | Home | $ | / |
| Food / Spending Money | $ | Other Real Estate | # | $ | / |
| Water / Sewer / Utilities / Phone | $ | Cars | # | $ | / |
| Other | $ | Other | $ | / |
| **Total** | $ | **Totals** | $ | / |

*Notice:* Alimony, child support, or separate maintenance income need not be revealed if the Borrower or Co-Borrower does not choose to have it considered for repaying this loan.

"I agree as follows: My lender may discuss, obtain and share information about my mortgage and financial situation with third parties regarding a possible alternative to foreclosure. Negotiations for a possible foreclosure alternative will not constitute a waiver of or defense to my lender's right to commence or continue any foreclosure or other collection action, and an alternative to foreclosure will be provided only if an agreement has been approved in writing by my lender. The information herein is an accurate statement of my financial status."

By _____ Date: _____
_____
Signature of Borrower

By _____ Date: _____
_____
Signature of Borrower

Submitted this _____ day of _____, 19_____

Before mailing, make sure you have signed and dated the form and attached a copy of your most recent paystub and bank statement(s) to your checking and/or savings account to it.

## FOR LENDER USE ONLY

Provide the appropriate information about the borrower, mortgage and property. If there are junior or superior liens, indicate the total amount owed, the name of the lien holder(s) and the status of the lien (i.e., current, in foreclosure, delinquent and indicate the number of days delinquent).

The Debt analysis section is divided into three sections, the amount of expenses which have been paid or advanced to retain the lien status, the total amount of the mortgage debt, including the amount of escrow that remains after any advances have been made, and the pending expenses which you are aware are coming due, such as pending unpaid real estate taxes, and indicate the date that any unpaid expenses are due.

| Freddie Mac Loan Number | Seller/Servicer Loan Number | DDLPI | Current Interest rate | Seller/Servicer Number |
|---|---|---|---|---|

| Preparer's Name | Date Prepared | Phone Number ( ) | Fax Number ( ) |
|---|---|---|---|

| Seller/Servicer Name |
|---|

| Address | City | State | Zip |
|---|---|---|---|

| MI Contact Name | Phone Number ( ) |
|---|---|

| MI % of Coverage | MI Company | MI Certificate No. |
|---|---|---|

| Recommendation: ☐ Short Payoff   ☐ Deed in Lieu   ☐ Makewhole | ☐ Workout Mortgage Assumption   ☐ Loan Modification | ☐ Scheduled or ☐ Estimated Foreclosure Sale Date / / |
|---|---|---|

| Bankruptcy History: | Chapter | Date Filed / / | Date Released / / |
|---|---|---|---|

| Monthly payment: | P&I $ _____   Taxes $ _____ | Hazard Insurance $ _____   Mortgage Insurance Premium $ _____ | Other Escrowed Amt $ _____ |
|---|---|---|---|

| Property Condition: ☐ Good   ☐ Fair   ☐ Poor | Property Insurance Claim $ |
|---|---|

| MI Contribution $ | Borrower Contribution $ |
|---|---|

| Junior Lien Amount $ | Lien Holder | Status of Lien |
|---|---|---|

| Superior Lien Amount $ | Lien Holder | Status of Lien |
|---|---|---|

| Expenses | | Mortgage Debt | | Pending Unpaid Expenses (describe/due date) | |
|---|---|---|---|---|---|
| Appraisal/BPO | $ | Unpaid Principal Balance | $ | Next RE taxes due ___/___/___ | $ |
| Real Estate Taxes Advanced | $ | Accrued Interest | $ | | $ |
| Foreclosure Fees/Costs | $ | Positive Escrow Balance | $( ) | | $ |
| Bankruptcy Fees/Costs | $ | (Net of advances) | | | $ |
| Water/Sewer Pmts Advanced | $ | (B) Total Loan Amount | $ | | $ |
| Other (explain) | $ | | | | $ |
| (A) Total Expenses | $ | Total Debt (A + B) | $ | Total | $ |



NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES

**BUSINESS REPLY MAIL**

FIRST-CLASS MAIL    PERMIT NO. 111    CHARLOTTE, NC

POSTAGE WILL BE PAID BY ADDRESSEE

BANK OF AMERICA
PO BOX 9000
GETZVILLE NY 14068-9904

LOSS MITIGATION

32-12-3240/NSB 08-2004

**STOP!** Did you remember to include all of the information that is requested on the checklist?

If not, **DO NOT** seal or mail the envelope before doing so.

**EXHIBIT D**

# FEDERAL HOME LOAN MORTGAGE CORPORATION ACT

### SHORT TITLE AND STATEMENT OF PURPOSE

12 U.S.C. § 1451 Note.

Sec. 301. (a) This title may be cited as the "Federal Home Loan Mortgage Corporation Act."

(b) It is the purpose of the Federal Home Loan Mortgage Corporation—

(1) to provide stability in the secondary market for residential mortgages;

(2) to respond appropriately to the private capital market;

(3) to provide ongoing assistance to the secondary market for residential mortgages (including activities relating to mortgages on housing for low- and moderate-income families involving a reasonable economic return that may be less than the return earned on other activities) by increasing the liquidity of mortgage investments and improving the distribution of investment capital available for residential mortgage financing; and

(4) to promote access to mortgage credit throughout the Nation (including central cities, rural areas, and underserved areas) by increasing the liquidity of mortgage investments and improving the distribution of investment capital available for residential mortgage financing.

### DEFINITIONS

12 U.S.C. § 1451.

Sec. 302. As used in this title—

(a) The term "Board of Directors" means the Board of Directors of the Corporation.

(b) The term "Corporation" means the Federal Home Loan Mortgage Corporation created by this title.

(c) The term "law" includes any law of the United States or of any State (including any rule of law or of equity).

(d) The term "mortgage" includes such classes of liens as are commonly given or are legally effective to secure advances on, or the unpaid purchase price of, real estate under the laws of the State in which the real estate is located or a manufactured home that is personal property under the laws of the State in which the manufactured home is located, together with the credit instruments, if any, secured thereby, and includes interests in mortgages.

(e) The term "organization" means any corporation, partnership, association, business trust, or business entity.

(f) The term "prescribe" means to prescribe by regulations or otherwise.

(g) The term "property" includes any property, whether real, personal, mixed, or otherwise, including without limitation on the generality of the foregoing choses in action and mortgages, and includes any interest in any of the foregoing.

(h) The term "residential mortgage" means a mortgage which (1) is a mortgage on real estate, in fee simple or under a leasehold having such term as may be prescribed by the Corporation, upon which there is located a structure or structures designed in whole or in part for residential use, or which comprises or includes one or more condominium units or dwelling units (as defined by the Corporation) and (2) has such characteristics and meets such requirements as to amount, term, repayment provisions, number of families, status as a lien on such real estate, and otherwise, as may be prescribed by the Corporation. The term "residential mortgage" also includes a loan or advance of credit insured under title I of the National Housing Act whose original proceeds are applied for in order to finance energy conserving improvements, or the addition of a solar energy system, to residential real estate. The term "residential mortgage" also includes a loan or advance of credit for such purposes, or purchased from any public utility carrying out activities in accordance with the requirements of title II of the National Energy Conservation Policy Act if the residential mortgage to be purchased is a loan or advance of credit the original proceeds of which are applied for in order to finance the purchase and installation of residential energy conservation measures (as defined in section 210(11) of the National Energy Conservation Policy Act) in residential real estate, not having the benefit of such insurance and includes loans made where the lender relies for purposes of repayment primarily on the borrower's general credit standing and forecast of income, with or without other security. The term "residential mortgage" is also deemed to include a secured loan or advance of credit the proceeds of which are intended to finance the rehabilitation, renovation, modernization, refurbishment, or improvement of properties as to which the Corporation may purchase a "residential mortgage" as defined under the first sentence of this subsection. Such term shall also include other secured loans that are secured by a subordinate lien against a property as to which the Corporation may purchase a residential mortgage as defined under the first sentence of this subsection. A "secured loan or advance of credit" is one in which a security interest is taken in the rehabilitated, renovated, modernized, refurbished, or improved property. Such term shall also include a mortgage, lien, or other security interest on the stock or membership certificate issued to a tenant-stockholder or resident-member by a cooperative housing corporation, as defined in section 216 of the Internal Revenue Code of 1986, and on the proprietary lease, occupancy agreement, or right of tenancy in the dwelling unit of the tenant-stockholder or resident-member in such cooperative housing corporation. The term "residential mortgage" also includes a loan or advance of credit secured by a mortgage or other lien on a manufactured home that is the principal residence of the borrower, without regard to whether the security property is real, personal, or mixed.

(i) The term "conventional mortgage" means a mortgage other than a mortgage as to which the Corporation has the benefit of any guaranty, insurance or other obligation by the United States or any of its agencies or instrumentalities.

(j) The term "security" has the meaning ascribed to it by section 2 of the Securities Act of 1933.

(k) The term "State", whether used as a noun or otherwise, includes the several States, the District of Columbia, the Commonwealth of Puerto Rico, and the territories and possessions of the United States.

(l) The term "mortgage insurance program" includes, in the case of a residential mortgage secured by a manufactured home, any manufactured home lending program under title I of the National Housing Act.

## ESTABLISHMENT OF CORPORATION

**12 U.S.C. § 1452.**

Sec. 303. (a)(1) There is hereby created the Federal Home Loan Mortgage Corporation, which shall be a body corporate under the direction of a Board of Directors. Within the limitations of law and regulation, the Board of Directors shall determine the general policies that govern the operations of the Corporation. The principal office of the Corporation shall be in the District of Columbia or at any other place determined by the Corporation.

(2)(A) The Board of Directors of the Corporation shall consist of 18 persons, 5 of whom shall be appointed annually by the President of the United States and the remainder of whom shall be elected annually by the voting common stockholders. The Board of Directors shall at all times have as members appointed by the President of the United States at least 1 person from the homebuilding industry, at least 1 person from the mortgage lending industry, at least 1 person from the real estate industry, and at least 1 person from an organization that has represented consumer or community interests for not less than 2 years or 1 person who has demonstrated a career commitment to the provision of housing for low-income households.

(B) Each member of the Board of Directors shall be such or elected for a term ending on the date of the next annual meeting of the voting common stockholders, except that any appointed member may be removed from office by the President for good cause.

(C) Any appointive seat on the Board of Directors that becomes vacant shall be filled by appointment by the President of the United States, but only for the unexpired portion of the term. Any elective seat on the Board of Directors that becomes vacant after the annual election of the directors shall be filled by the Board of Directors, but only for the unexpired portion of the term.

(D) Any member of the Board of Directors who is a full-time officer or employee of the Federal Government shall not, as such member, receive compensation for services as such a member.

(b)(1) Except as provided in paragraph (2), the Corporation may make such capital distributions (as such term is defined in section 1303 of the Federal Housing Enterprises Financial Safety and Soundness Act of 1992) as may be declared by the Board of Directors.

(2) The Corporation may not make any capital distribution that would decrease the total capital of the Corporation (as such term is defined in section 1303 of the Federal Housing Enterprises Financial Safety and Soundness Act of 1992) to an amount less than the risk-based capital level for the Corporation established under section 1361 of such Act or that would decrease the core capital of the Corporation (as such term is defined in section 1303 of such Act) to an amount less than the minimum capital level for the Corporation established under section 1362 of such Act, without prior written approval of the distribution by the Director of the Office of Federal Housing Enterprise Oversight of the Department of Housing and Urban Development.

(c) The Corporation shall have power (1) to adopt, alter, and use a corporate seal; (2) to have succession until dissolved by Act of Congress; (3) to make and enforce such bylaws, rules, and regulations as may be necessary or appropriate to carry out the purposes or provisions of this title; (4) to make and perform contracts, agreements, and commitments; (5) to prescribe and impose fees and charges for services by the Corporation; (6) to settle, adjust, and compromise, and with or without consideration or benefit to the Corporation to release or waive in whole or in part, in advance or otherwise, any claim, demand, or right of, by, or against the Corporation; (7) to sue and be sued, complain and defend, in any State, Federal, or other court; (8) to acquire, take, hold, and own, and to deal with and dispose of any property; and (9) to determine its necessary expenditures and the manner in which the same shall be incurred, allowed, and paid, and appoint, employ, and fix and provide for the compensation and benefits of officers, employees, attorneys, and agents as the Board of Directors determines reasonable and comparable with compensation for employment in other similar businesses (including publicly held financial institutions or other major financial services companies) involving similar duties and responsibilities, except that a significant portion of potential compensation of all executive officers (as such term is defined in subsection (h)(3)) of the Corporation shall be based on the performance of the Corporation, all without regard to any other law except as may be provided by the Corporation or by laws hereafter enacted by the Congress expressly in limitation of this sentence. The Corporation, with the consent of any such department, establishment, or instrumentality, including any field services thereof, may utilize and act through any such department, establishment, or instrumentality and may avail itself of the use of information, services, facilities, and personnel thereof, and may

pay compensation therefor, and all of the foregoing are hereby authorized to provide the same to the Corporation as it may request.

(d) Funds of the Corporation may be invested in such investments as the Board of Directors may prescribe. Any Federal Reserve bank or Federal home loan bank, or any bank as to which at the time of its designation by the Corporation there is outstanding a designation by the Secretary of the Treasury as a general or other depositary of public money, may be designated by the Corporation as a depositary or custodian or as a fiscal or other agent of the Corporation, and is hereby authorized to act as such depositary, custodian, or agent. When designated for that purpose by the Secretary of the Treasury, the Corporation shall be a depositary of public money, under such regulations as may be prescribed by the Secretary of the Treasury, and may also be employed as fiscal or other agent of the United States, and it shall perform all such reasonable duties as such depositary or agent as may be required of it.

(e) The Corporation, including its franchise, activities, capital, reserves, surplus, and income, shall be exempt from all taxation now or hereafter imposed by any territory, dependency, or possession of the United States or by any State, county, municipality, or local taxing authority, except that any real property of the Corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed.

(f) Notwithstanding section 1349 of title 28 of the United States Code or any other provision of law, (1) the Corporation shall be deemed to be an agency included in sections 1345 and 1442 of such title 28; (2) all civil actions to which the Corporation is a party shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such actions, without regard to amount or value; and (3) any civil or other action, case or controversy in a court of a State, or in any court other than a district court of the United States, to which the Corporation is a party may at any time before the trial thereof be removed by the Corporation, without the giving of any bond or security, to the district court of the United States for the district and division embracing the place where the same is pending, or, if there is no such district court, to the district court of the United States for the district in which the principal office of the Corporation is located, by following any procedure for removal of causes in effect at the time of such removal.

(g) All mortgages, obligations, or other securities which are or have been sold by the Corporation pursuant to section 305 or section 306 of this title shall be lawful investments, and may be accepted as security for all fiduciary, trust, and public funds, the investment or deposits of which shall be under the authority and control of the United States or any officers thereof.

(h)(1) Not later than June 30, 1993, and annually thereafter, the Corporation shall submit a report to the Committee on Banking, Finance and Urban Affairs of the House of Representatives and the Committee on Banking, Housing, and Urban Affairs of the Senate on (A) the comparability of the compensation policies of the Corporation with the compensation policies of other similar businesses, (B) in the aggregate, the percentage of total cash compensation and payments under employee benefit plans (which shall be defined in a manner consistent with the Corporation's proxy statement for the annual meeting of shareholders for the preceding year) earned by executive officers of the Corporation during the preceding year that was based on the Corporation's performance, and (C) the comparability of the Corporation's financial performance with the performance of other similar businesses. The report shall include a copy of the Corporation's proxy statement for the annual meeting of the shareholder's for the preceding year.

(2) Notwithstanding the first sentence of subsection (c), after the date of the enactment of the Federal Housing Enterprises Financial Safety and Soundness Act of 1992 [Oct. 28, 1992], the Corporation may not enter into any agreement or contract to provide any payment of money or other thing of current or potential value in connection with the termination of employment of any executive officer of the Corporation, unless such agreement or contract is approved in advance by the Director of the Office of Federal Housing Enterprise Oversight of the Department of Housing and Urban Development. The Director may not approve any such agreement or contract unless the Director determines that the benefits provided under the agreement or contract are comparable to benefits under such agreements for officers of other public and private entities involved in financial services and housing interests who have comparable duties and responsbilities. For purposes of this paragraph, any renegotiation, amendment, or change after such date of enactment to any such agreement or contract entered into on or before such date of enactment shall be considered entering into an agreement or contract.

(3) For purposes of this subsection, the term "executive officer" has the meaning given the term in section 1303 of the Federal Housing Enterprises Financial Safety and Soundness Act of 1992.

## CAPITALIZATION OF FEDERAL HOME LOAN MORTGAGE CORPORATION

12 U.S.C. § 1453.    Sec. 304. (a) The common stock of the Corporation shall consist of voting common stock, which shall be issued to such holders in the manner and amount, and subject to any limitations on concentration of ownership, as may be established by the Corporation.

(b) The voting common stock shall have such par value and other characteristics as the Corporation provides. The voting

common stock shall be vested with all voting rights, each share being entitled to 1 vote. The free transferability of the voting common stock at all times to any person, firm, corporation or other entity shall not be restricted except that, as to the Corporation, it shall be transferable only on the books of the Corporation:

## PURCHASE AND SALE OF MORTGAGES

12 U.S.C. § 1454.    Sec. 305. (a)(1) The Corporation is authorized to purchase, and make commitments to purchase, residential mortgages. The Corporation may hold and deal with, and sell or otherwise dispose of, pursuant to commitments or otherwise, any such mortgage or interest therein. The operations of the Corporation under this section shall be confined so far as practicable to residential mortgages which are deemed by the Corporation to be of such quality, type, and class as to meet generally the purchase standards imposed by private institutional mortgage investors. The Corporation may establish requirements, and impose charges or fees, which may be regarded as elements of pricing, for different classes of sellers or servicers, and for such purposes the Corporation is authorized to classify sellers or servicers according to type, size, location, assets, or, without limitation on the generality of the foregoing, on such other basis or bases of differentiation as the Corporation may consider necessary or appropriate to effectuate the purposes or provisions of this Act. The Corporation may specify requirements concerning among other things, (A) minimum net worth; (B) supervisory mechanisms; (C) warranty compensation mechanisms; (D) prior approval of facilities; (E) prior origination and servicing experience with respect to different types of mortgages; (F) capital contributions and substitutes; (G) mortgage purchase volume limits; and (H) reduction of mortgage purchases during periods of borrowing. With respect to any particular type of seller, the Corporation shall not be required to make available programs involving prior approval of mortgages, optional delivery of mortgages, and purchase of other than conventional mortgages to an extent greater than the Corporation elects to make such programs available to other types of eligible sellers. Any requirements specified by the Corporation pursuant to the preceding three sentences must bear a rational relationship to the purposes or provisions of this Act, but will not be considered discriminatory solely on the grounds of differential effects on types of eligible sellers. Insofar as is practicable, the Corporation shall make reasonable efforts to encourage participation in its programs by each type of eligible seller. Nothing in this section authorizes the Corporation to impose any charge or fee upon any mortgagee approved by the Secretary of Housing and Urban Development for participation in any mortgage insurance program under the National Housing Act solely because of such status.

(2) No conventional mortgage secured by a property comprising one- to four-family dwelling units shall be purchased under this section if the outstanding principal balance of the mortgage at the time of purchase exceeds 80 per centum of the

value of the property securing the mortgage, unless (A) the seller retains a participation of not less than 10 per centum in the mortgage; (B) for such period and under such circumstances as the Corporation may require, the seller agrees to repurchase or replace the mortgage upon demand of the Corporation in the event that the mortgage is in default; or (C) that portion of the unpaid principal balance of the mortgage which is in excess of such 80 per centum is guaranteed or insured by a qualified insurer as determined by the Corporation. The Corporation shall not issue a commitment to purchase a conventional mortgage prior to the date the mortgage is originated, if such mortgage is eligible for purchase under the preceding sentence only by reason of compliance with the requirements of clause (A) or such sentence. The Corporation may purchase a conventional mortgage which was originated more than one year prior to the purchase date only if the seller is the Federal Deposit Insurance Corporation, the Resolution Trust Corporation, the National Credit Union Administration, or any other seller currently engaged in mortgage lending or investing activities. With respect to any transaction in which a seller contemporaneously sells mortgages originated more than one year old prior to the date of sale to the Corporation and receives in payment for such mortgages securities representing undivided interests only in those mortgages, the Corporation shall not impose any fee or charge upon an eligible seller which is not a member of a Federal Home Loan Bank which differs from that imposed upon an eligible seller which is such a member. The Corporation shall establish limitations governing the maximum original principal obligation of conventional mortgages that are purchased by it; in any case in which the Corporation purchases a participation interest in such a mortgage, the limitation shall be calculated with respect to the total original principal obligation of the mortgage and not merely with respect to the interest purchased by the Corporation. Such limitations shall not exceed $93,750 for a mortgage secured by a single-family residence, $120,000 for a mortgage secured by a two-family residence, $145,000 for a mortgage secured by a three-family residence, and $180,000 for a mortgage secured by a four-family residence, except that such maximum limitations shall be adjusted effective January 1 of each year beginning with 1981. Each such adjustment shall be made by adding to each such amount (as it may have been previously adjusted) a percentage thereof equal to the percentage increase during the twelve-month period ending with the previous October in the national average one-family house price in the monthly survey of all major lenders conducted by the Federal Housing Finance Board. The foregoing limitations may be increased by not to exceed 50 per centum with respect to properties located in Alaska, Guam, Hawaii, and the Virgin Islands.

(3) The sale or other disposition by the Corporation of a mortgage under this section may be with or without recourse, and shall be upon such terms and conditions relating to resale, repurchase, guaranty, substitution, replacement, or otherwise as the Corporation may prescribe.

(4)(A) The Corporation is authorized to purchase, service, sell, lend on the security of, and otherwise deal in (i) residential mortgages that are secured by a subordinate lien against a one- or four-family residence that is the principal residence of the mortgagor; and (ii) residential mortgages that are secured by a subordinate lien against a property comprising five or more family dwelling units. If the Corporation shall have purchased, serviced, sold, or otherwise dealt with any other outstanding mortgage secured by the same residence, the aggregate original amount of such other mortgage and the mortgage authorized to be purchased, serviced, sold, or otherwise dealt with under this paragraph shall not exceed the applicable limitation determined under paragraph (2).

(B) The Corporation shall establish limitations governing the maximum original principal obligation of such mortgages. In any case in which the Corporation purchases a participation interest in such a mortgage, the limitation shall be calculated with respect to the total original principal obligation of such mortgage secured by a subordinate lien and not merely with respect to the interest purchased by the Corporation. Such limitations shall not exceed (i) with respect to mortgages described in subparagraph (A)(i), 50 per centum of the single-family residence mortgage limitation determined under paragraph (2); and (ii) with respect to mortgages described in subparagraph (A)(ii), the applicable limitation determined under paragraph (2).

(C) No subordinate mortgage against a one- to four-family residence shall be purchased by the Corporation if the total outstanding indebtedness secured by the property as a result of such mortgage exceeds 80 per centum of the value of such property unless (i) that portion of such total outstanding indebtedness that exceeds such 80 is guaranteed or insured by a qualified insurer as determined by the Corporation; (ii) the seller retains a participation of not less than 10 per centum in the mortgage; or (iii) for such period and under such circumstances as the Corporation may require, the seller agrees to repurchase or replace the mortgage upon demand of the Corporation in the event that the mortgage is in default. The Corporation shall not issue a commitment to purchase a subordinate mortgage prior to the date the mortgage is originated, if such mortgage is eligible for purchase under the preceding sentence only by reason of compliance with the requirements of clause (iii) of such sentence.

(5) The Corporation is authorized to lend on the security of, and to make commitments to lend on the security of, any mortgage that the Corporation is authorized to purchase under this section. The volume of the Corporation's lending activities and the establishment of its loan ratios, interest rates, maturities, and charges or fees in its secondary market operations under this paragraph, shall be determined by the Corporation from time to time; and such determinations shall be consistent with the objectives that the lending activities shall be conducted on such terms as will reasonably prevent excessive use of the Corporation's facilities, and that the operations of the Corporation

under this paragraph shall be within its income derived from such operations and that such operations shall be fully self-supporting. The Corporation shall not be permitted to use its lending authority under this paragraph (A) to advance funds to a mortgage seller on an interim basis, using mortgage loans as collateral, pending the sale of the mortgages in the secondary market; or (B) to originate mortgage loans. Notwithstanding any Federal, State, or other law to the contrary, the Corporation is hereby empowered, in connection with any loan under this paragraph, whether before or after any default, to provide by contract with the borrower for the settlement or extinguishment, upon default, of any redemption, equitable, legal, or other right, title, or interest of the borrower in any mortgage or mortgages that constitute the security for the loan; and with respect to any such loan, in the event of default and pursuant otherwise to the terms of the contract, the mortgages that constitute such security shall become the absolute property of the Corporation.

(b) Notwithstanding any other law, authority to enter into and to perform and carry out any transactions or matter referred to in this section is conferred on any Federal home loan bank, the Resolution Trust Corporation, the Federal Deposit Insurance Corporation, the National Credit Union Administration, any Federal savings and loan association, any Federal home loan bank member, and any other financial institution the deposits or accounts of which are insured by an agency of the United States to the extent that Congress has the power to confer such authority.

(c) The Corporation may not implement any new program (as such term is defined in section 1303 of the Federal Housing Enterprises Financial Safety and Soundness Act of 1992) before obtaining the approval of the Secretary under section 1322 of such Act.

### OBLIGATIONS AND SECURITIES OF THE CORPORATION

12 U.S.C. § 1455.

Sec. 306. (a) The Corporation is authorized, upon such terms and conditions as it may prescribe, to borrow, to give security, to pay interest or other return, and to issue notes, debentures, bonds, or other obligations, or other securities, including without limitation mortgage-backed securities guaranteed by the Government National Mortgage Association in the manner provided in section 306(g) of the National Housing Act. Any obligation or security of the Corporation shall be valid and binding notwithstanding that a person or persons purporting to have executed or attested the same may have died, become under disability, or ceased to hold office or employment before the issuance thereof.

(b) The Corporation may, by regulation or by writing executed by the Corporation, establish prohibitions or restrictions upon the creation of indebtedness or obligations of the Corporation or of liens or charges upon property of the Corporation, including after-acquired property, and create liens

and charges, which may be floating liens or charges, upon all or any part or parts of the property of the Corporation, including after-acquired property. Such prohibitions, restrictions, liens, and charges shall have such effect, including without limitation on the generality of the foregoing such rank and priority, as may be provided by regulations of the Corporation or by writings executed by the Corporation, and shall create causes of action which may be enforced by action in the United States District Court for the District of Columbia or in the United States district court for any judicial district in which any of the property affected is located. Process in any such action may run to and be served in any judicial district or any place subject to the jurisdiction of the United States.

(c)(1) The Secretary of the Treasury may purchase any obligations issued under subsection (a). For such purpose, the Secretary may use as a public debt transaction the proceeds of the sale of any securities issued under chapter 31 of title 31, United States Code, and the purposes for which securities may be issued under such chapter are extended to include such purpose.

(2) The Secretary of [the] Treasury shall not at any time purchase any obligations under this subsection if the purchase would increase the aggregate principal amount of the outstanding holdings of obligations under this subsection by the Secretary to an amount greater than $2,250,000,000.

(3) Each purchase of obligations by the Secretary of the Treasury under this subsection shall be upon terms and conditions established to yield a rate of return determined by the Secretary to be appropriate, taking into consideration the current average rate on outstanding marketable obligations of the United States as of the last day of the month preceding the making of the purchase.

(4) The Secretary of the Treasury may at any time sell, upon terms and conditions and at prices determined by the Secretary, any of the obligations acquired by the Secretary under this subsection.

(5) All redemptions, purchases and sales by the Secretary of the Treasury of obligations under this subsection shall be treated as public debt transactions of the United States.

(d) The provisions of this section and of any restriction, prohibition, lien, or charge referred to in subsection (b) shall be fully effective notwithstanding any other law, including without limitation on the generality of the foregoing any law of or relating to sovereign immunity or priority.

(e)(1) Any person, trust, or organization created pursuant to or existing under the laws of the United States or any State shall be authorized to purchase, hold, and invest in mortgages, obligations, or other securities which are or have been sold by the Corporation pursuant to this section or pursuant to section 305 of this title to the same extent that such person, trust, or organization

is authorized under any applicable law to purchase, hold, or invest in obligations issued by or guaranteed as to principal and interest by the United States or any agency or instrumentality thereof. Where State law limits the purchase, holding, or investment in obligations issued by the United States by such a person, trust, or organization, such Corporation mortgages, obligations, and other securities shall be considered to be obligations issued by the United States for purposes of the limitation.

(2) The provisions of paragraph (1) shall not apply with respect to a particular person, trust, or organization or class thereof in any State which, after the date of enactment of this subsection [Dec. 21, 1979], enacts a statute which specifically names the Corporation and either prohibits or provides for a more limited authority to purchase, hold, or invest in such securities by such person, trust, or organization or class thereof than is provided in paragraph (1). The enactment by any State of any statute of the type described in the preceding sentence shall not affect the validity of any contractual commitment to purchase, hold, or invest which was made prior thereto.

(3) Any authority granted by paragraph (1) and not granted by any other Federal statute shall expire as of the end of June 30, 1985. Such expiration shall not affect the validity of any contractual commitment to purchase, hold, or invest which was made prior thereto pursuant to paragraph (1), and shall not affect the validity of any contractual commitment or other action to purchase, hold, or invest pursuant to any other authorization.

(f) The Corporation may have preferred stock on such terms and conditions as the Board of Directors shall prescribe. Any preferred stock shall not be entitled to vote with respect to the election of any member of the Board of Directors.

(g) All securities issued or guaranteed by the Corporation (other than securities guaranteed by the Corporation that are backed by mortgages not purchased by the Corporation) shall, to the same extent as securities that are direct obligations of or obligations guaranteed as to principal or interest by the United States, be deemed to be exempt securities within the meaning of the laws administered by the Securities and Exchange Commission.

(h)(1) The Corporation may not guarantee mortgage-backed securities or mortgage related payment securities backed by mortgages not purchased by the Corporation.

(2) The Corporation shall insert appropriate language in all of the obligations and securities of the Corporation issued under this section and section 305 clearly indicating that such obligations and securities, together with the interest thereon, are not guaranteed by the United States and do not constitute a debt or obligation of the United States or any agency or instrumentality thereof other than the Corporation.

(i) Except for fees paid pursuant to sections 303(c) and 1316(c) of this Act and assessments pursuant to section 106 of the Federal Housing Enterprises Financial Safety and Soundness Act of 1992, no fee or charge may be assessed or collected by the United States (including any executive department, agency, or independent establishment of the United States) on or with regard to the purchase, acquisition, sale, pledge, issuance, guarantee, or redemption of any mortgage, asset, obligation, or other security by the Corporation. No provision of this subsection shall affect the purchase of any obligation by any Federal home loan bank pursuant to section 303(a).

(j)(1) Any notes, debentures, or substantially identical types of unsecured obligations of the Corporation evidencing money borrowed, whether general or subordinated, shall be issued upon the approval of the Secretary of the Treasury and shall have such maturities and bear such rate or rates of interest as may be determined by the Corporation with the approval of the Secretary of the Treasury.

(2) Any notes, debentures, of substantially identical types of unsecured obligations of the Corporation having maturities of 1 year or less that the Corporation has issued or is issuing as of the date of the enactment of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 [Aug. 9, 1989] shall be deemed to have been approved by the Secretary of the Treasury as required by this subsection. Such deemed approval shall expire 365 days after such date of enactment.

(3) Any notes, debentures, or substantially identical types of unsecured obligations of the Corporation having maturities of more than 1 year that the Corporation has issued or is issuing as of the date of the enactment of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 [Aug. 9, 1989] shall be deemed to have been approved by the Secretary of the Treasury as required by this subsection. Such deemed approval shall expire 60 days after such date of enactment.

(k)(1) Any securities in the form of debt obligations or trust certificates of beneficial interest, or both, and based upon mortgages held and set aside by the Corporation, shall be issued upon the approval of the Secretary of the Treasury and shall have such maturities and shall bear such rate or rates of interest as may be determined by the Corporation with the approval of the Secretary of the Treasury.

(2) Any securities in the form of debt obligations or trust certificates of beneficial interest, or both, and based upon mortgages held and set aside by the Corporation, that the Corporation has issued or is issuing as of the date of the enactment of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 [Aug. 9, 1989] shall be deemed to have been approved by the Secretary of the Treasury as required by this subsection.

## RIGHTS AND REMEDIES OF THE CORPORATION

12 U.S.C. § 1456.

Sec. 307. (a) All rights and remedies of the Corporation, including without limitation on the generality of the foregoing any rights and remedies of the Corporation on, under, or with respect to any mortgage or any obligation secured thereby, shall be immune from impairment, limitation, or restriction by or under (1) any law (except laws enacted by the Congress expressly in limitation of this sentence) which becomes effective after the acquisition by the Corporation of the subject or property on, under, or with respect to which such right or remedy arises or exists or would so arise or exist in the absence of such law, or (2) any administrative or other action which becomes effective after such acquisition. The Corporation is authorized to conduct its business without regard to any qualification or similar statute in any State.

(b)(1) The programs, activities, receipts, expenditures, and financial transactions of the Corporation shall be subject to audit by the Comptroller General of the United States under such rules and regulations as may be prescribed by the Comptroller General. The representatives of the General Accounting Office shall have access to all books, accounts, financial records, reports, files and all other papers, things, or property belonging to or in use by the Corporation and necessary to facilitate the audit, and they shall be afforded full facilities for verifying transactions with the balances or securities held by depositaries, fiscal agents, and custodians. A report on each such audit shall be made by the Comptroller General to the Congress. The Corporation shall reimburse the General Accounting Office for the full cost of any such audit as billed therefor by the Comptroller General.

(2) To carry out this subsection, the representatives of the General Accounting Office shall have access, upon request to the Corporation or any auditor for an audit of the Corporation under subsection (d), to any books, accounts, financial records, reports, files, or other papers, things, or property belonging to or in use by the Corporation and used in any such audit and to any papers, records, files, and reports of the auditor used in such an audit.

(c)(1) The Corporation shall submit to the Director of the Office of Federal Housing Enterprise Oversight of the Department of Housing and Urban Development annual and quarterly reports of the financial condition and operations of the Corporation which shall be in such form, contain such information, and be submitted on such dates as the Director shall require.

(2) Each such annual report shall include—

(A) financial statements prepared in accordance with generally accepted accounting principles;

(B) any supplemental information or alternative presentation that the Director may require; and

(C) an assessment (as of the end of the Corporation's most recent fiscal year), signed by the chief executive officer and chief accounting or financial officer of the Corporation, of—

(i) the effectiveness of the internal control structure and procedures of the Corporation; and

(ii) the compliance of the Corporation with designated safety and soundness laws.

(3) The Corporation shall also submit to the Director any other reports required by the Director pursuant to section 1314 of the Federal Housing Enterprises Financial Safety and Soundness Act of 1992.

(4) Each report of financial condition shall contain a declaration by the president, vice president, treasurer or any other officer designated by the Board of Directors of the Corporation to make such declaration, that the report is true and correct to the best of such officer's knowledge and belief.

(d)(1) The Corporation shall have an annual independent audit made of its financial statements by an independent public accountant in accordance with generally accepted auditing standards.

(2) In conducting an audit under this subsection, the independent public accountant shall determine and report on whether the financial statements of the Corporation (A) are presented fairly in accordance with generally accepted accounting principles, and (B) to the extent determined necessary by the Director, comply with and disclosure requirements imposed under subsection (c)(2)(B).

(e)(1) The Corporation shall collect, maintain, and provide to the Secretary, in a form determined by the Secretary, data relating to its mortgages on housing consisting of 1 to 4 dwelling units. Such data shall include—

(A) the income, census tract location, race, and gender of mortgagors under such mortgages;

(B) the loan-to-value ratios of purchased mortgages at the time of origination;

(C) whether a particular mortgage purchased is newly originated or seasoned;

(D) the number of units in the housing subject to the mortgage and whether the units are owner-occupied; and

(E) any other characteristics that the Secretary considers appropriate, to the extent practicable.

(2) The Corporation shall collect, maintain, and provide to the Secretary, in a form determined by the Secretary, data relating to its mortgages on housing consisting of more than 4 dwelling units. Such data shall include—

(A) census tract location of the housing;

(B) income levels and characteristics of tenants of the housing (to the extent practicable);

(C) rent levels for units in the housing;

(D) mortgage characteristics (such as the number of units financed per mortgage and the amount of loans);

(E) mortgagor characteristics (such as nonprofit, for-profit, limited equity cooperatives);

(F) use of funds (such as new construction, rehabilitation, refinancing);

(G) type of originating institution; and

(H) any other information that the Secretary considers appropriate, to the extent practicable.

(3)(A) Except as provided in subparagraph (B), this subsection shall apply only to mortgages purchased by the Corporation after December 31, 1992.

(B) This subsection shall apply to any mortgage purchased by the Corporation after the date determined under subparagraph (A) if the mortgage was originated before such date, but only to the extent that the data referred in paragraph (1) or (2), as applicable, is available to the Corporation.

(f)(1) The Corporation shall submit to the Committee on Banking, Finance and Urban Affairs of the House of Representatives, the Committee on Banking, Housing, and Urban Affairs of the Senate, and the Secretary a report on its activities under subpart B of part 2 of subtitle A of the Federal Housing Enterprises Financial Safety and Soundness Act of 1992.

(2) The report under this subsection shall—

(A) include, in aggregate form and by appropriate category, statements of the dollar volume and number of mortgages on owner-occupied and rental properties purchased which relate to each of the annual housing goals established under such subpart;

(B) include, in aggregate form and by appropriate category, statements of the number of families served by the Corporation, the income class, race, and gender of homebuyers served, the income class of tenants of rental housing (to the extent such

information is available), the characteristics of the census tracts, and the geographic distribution of the housing financed;

(C) include a statement of the extent to which the mortgages purchased by the Corporation have been used in conjunction with public subsidy programs under Federal law;

(D) include statements of the proportion of mortgages on housing consisting of 1 to 4 dwelling units purchased by the Corporation that have been made to first-time homebuyers, as soon as providing such data is practicable, and identifying any special programs (or revisions to conventional practices) facilitating homeownership opportunities for first-time homebuyers;

(E) include, in aggregate form and by appropriate category, the data provided to the Secretary under subsection (e)(1)(B);

(F) compare the level of securitization versus portfolio activity;

(G) assess underwriting standards, business practices, repurchase requirements, pricing, fees, and procedures, that affect the purchase of mortgages for low- and moderate-income families, or that may yield disparate results based on the race of the borrower, including revisions thereto to promote affordable housing or fair lending;

(H) describe trends in both the primary and secondary multifamily housing mortgage markets, including a description of the progress made, and any factors impeding progress, toward standardization and securitization of mortgage products for multifamily housing;

(I) describe trends in the delinquency and default rates of mortgages secured by housing for low- and moderate-income families that have been purchased by the Corporation, including a comparison of such trends with delinquency and default information for mortgage products serving households with incomes above the median level that have been purchased by the Corporation, and evaluate the impact of such trends on the standards and levels of risk of mortgage products serving low- and moderate-income families;

(J) describe in the aggregate the seller and servicer network of the Corporation, including the volume of mortgages purchased from minority-owned, women-owned, and community-oriented lenders, and any efforts to facilitate relationships with such lenders;

(K) describe the activities undertaken by the Corporation with nonprofit and for-profit organizations and with State and local governments and for housing finance agencies, including how the Corporation's activities support the objectives of comprehensive

housing affordability strategies under section 105 of the Cranston-Gonzalez National Affordable Housing; and

(L) include any other information that the Secretary considers appropriate.

(3)(A) The Corporation shall make each report under this subsection available to the public at the principal and regional offices of the Corporation.

(B) Before making a report under this subsection available to the public, the Corporation may exclude from the report information that the Secretary has determined is proprietary information under section 1326 of the Federal Housing Enterprises Financial Safety and Soundness Act of 1992.

(g)(1) Not later than 4 months after the date of enactment of the Federal Housing Enterprises Financial Safety and Soundness Act of 1992 [Oct. 28, 1992], the Corporation shall appoint an Affordable Housing Advisory Council to advise the Corporation regarding possible methods for promoting affordable housing for low- and moderate-income families.

(2) The Affordable Housing Advisory Council shall consist of 15 individuals, who shall include representatives of community-based and other nonprofit and for-profit organizations and State and local government agencies actively engaged in the promotion, development, or financing of housing for low- and moderate-income families.

## PROHIBITED ACTIVITIES

12 U.S.C. § 1457.        Sec. 308. Except as expressly authorized by statute of the United States, no individual or organization (except the Corporation) shall use the term "Federal Home Loan Mortgage Corporation", or any combination of words including the words "Federal," and "Home Loan," and "Mortgage," as a name or part thereof under which any individual or organization does any business, but this sentence shall not make unlawful the use of any name under which business is being done on the date of the enactment of this Act [July 24, 1970]. No individual or organization shall use or display (1) any sign, device, or insigne prescribed or approved by the Corporation for use or display by the Corporation or by members of the Federal home loan banks, (2) any copy, reproduction, or colorable imitation of any such sign, device, or insigne, or (3) any sign, device, or insigne reasonably calculated to convey the impression that it is a sign, device, or insigne used by the Corporation or prescribed or approved by the Corporation, contrary to regulations of the Corporation prohibiting, or limiting or restricting, such use or display by such individual or organization. An organization violating this subsection shall for each violation be punished by a fine of not more than $10,000. An officer or member of an organization participating or knowingly acquiescing in any violation of this subsection shall be punished by a fine of not

more than $5,000 or imprisonment for not more than one year, or both. An individual violating this subsection shall for each violation be punished as set forth in the sentence next preceding this sentence.

## TERRITORIAL APPLICABILITY

**12 U.S.C. § 1458.**    Sec. 309. Notwithstanding any other law, this title shall be applicable to the several States, the District of Columbia, the Commonwealth of Puerto Rico, and the territories and possessions of the United States.

## SEPARABILITY

**12 U.S.C. § 1459.**    Sec. 310. Notwithstanding any other evidences of the intention of Congress, it is hereby declared to be the controlling intent of Congress that if any provision of this title, or the application thereof to any person or circumstances, is held invalid, the remainder of this title, or the application of such provision to persons or circumstances other than those as to which it is held invalid, shall not be affected thereby.

EXHIBIT



APPLICATION FOR EMERGENT RELIEF TO

THE HONORABLE MR. JUSTICE DAVID H. SOUTER

ASSOCIATE JUSTICE

SUPREME COURT OF THE UNITED STATES

OR

OTHER JUSTICE OF THE SUPREME COURT

IN THE ABSENCE OF

MR. JUSTICE SOUTER

———————

APPLICATION OF

MYRNA TAGAYUN AND ROBERT S. MANDELL

HUSBAND AND WIFE

APPLICANTS

———————

DATED: JULY 3, 2006

———————

<u>APPLICANT'S ADDRESS</u>

1199 MAIN AVENUE, SUITE 5

CLIFTON, NEW JERSEY 07011

TELEPHONE: 973-253-7737

FACSIMILE: 973-253-0213

———————

IN THE SUPREME COURT OF THE UNITED STATES

————————

APPLICATION FOR EMERGENT RELIEF BY WAY OF

STAY OF SUMMARY JUDGMENT OF FORECLOSURE

RESULTING IN SHERIFF'S SALE OF

APPLICANT'S PRIMARY RESIDENCE ON

APRIL 11, 2006

AND CONSEQUENT ORDER OF EVICTION

EFFECTIVE ON

JULY 12, 2006 AT 9:00 A.M.

————————

APPLICANTS APPEARING PRO SE

————————

QUESTIONS PRESENTED FOR CONSIDERATION

1) IS IT LEGALLY PERMISSIBLE THAT THE APPLICANTS BE SUED FOR
FORECLOSURE BY A PARTY WITH NO REAL INTEREST IN THE MATTER,
AND HAVE SUMMARY JUDGMENT GRANTED IN FAVOR OF THAT PARTY?
2) IS IT LEGALLY PERMISSIBLE THAT THE REAL PARTY IN INTEREST,
A UNITED STATES GOVERNMENT AGENCY, AND TRUE OWNER OF THE
MORTGAGE AND NOTE, DERIVE BENEFIT FROM THE FORECLOSURE SUIT
COMMENCED BY ITS PROXY, IN FAVOR OF WHOM SUMMARY JUDGMENT HAS
BEEN GRANTED?

**PAGE TWO**

3) IS IT LEGALLY PERMISSIBLE FOR ALL COURTS IN THE STATE OF
NEW JERSEY TO DISREGARD NOTICE OF THE ABSENCE OF REAL INTEREST
BY THE NAMED PLAINTIFF IN THE FORECLOSURE LAWSUIT, PROCEED TO
GRANT THE PLAINTIFF SUMMARY JUDGMENT, DENY THE APPLICANTS
RELIEF BY WAY OF STAY OF SUMMARY JUDGMENT, AND PERMIT THE
APPLICANTS PRIMARY RESIDENCE TO BE SOLD AT SHERIFF'S SALE,
FOLLOWED BY AN ORDER OF EVICTION TO TAKE EFFECT ON JULY 12, 2006.
4) ARE UNITED STATES STATUTES RESPECTING CONSUMER PROTECTION,
IN PARTICULAR THE TRUTH-IN-LENDING ACT, **15 U.S.C. 1601 ET SEQ**,
AND THE FAIR DEBT COLLECTION PRACTICES ACT, **15 U.S.C. 1692 ET SEQ**,
ENFORCEABLE IN THE STATE OF NEW JERSEY IN FORECLOSURE LAWSUITS?
5) ARE UNITED STATES JUDICIARY AND INTERNAL REVENUE CODE STATUTES,
IN PARTICULAR **28 U.S.C. 2410(c), 26 U.S.C. 7425(d)(1), and**
**26 U.S.C. 6321 ET SEQ (THE LATTER THE FEDERAL TAX LIEN ACT),**
ALL ENFORCEABLE IN THE STATE OF NEW JERSEY IN FORECLOSURE
MATTERS, IN PARTICULAR JUDICIAL SALES BY SHERIFFS?

**RELIEF SOUGHT**

Applicants seek a Stay of Summary Judgment, and implicitly a
Stay of the Order of Eviction scheduled to take effect on
July 12, 2006 at 9:00 A.M. The Court may determine the need
for other relief consequent to the emergent circumstances we
face, namely the irreparable injury of eviction from our primary
residence without subsequent place of abode.

## PAGE THREE

## <u>ABSENCE OF RELIEF IN ANY OTHER COURT BELOW</u>

1. We were sued for foreclosure by Bank of America, N.A. on
April 29, 2005. On May 31, 2005 we removed the matter to the
United States District Court for the District of New Jersey
on three grounds: violation of the Truth-in-Lending Act, 15
U.S.C. 1601 et seq, violation of the Fair Debt Collection Prac-
tices Act, 15 U.S.C. 1692 et seq; and the Diversity Statute,
28 U.S.C. 1332, the latter only the third of the three grounds.
There was no need for including the Diversity Statute. We
should have left it out. It created more trouble than it was
worth.

The plaintiff's counsel moved for remand on the absence of
consent to removal by one of the other diverse defendants.
The District Court ordered remand on August 2, 2005, based
on the 'non-consent' of that other defendant. The court
did not take notice of our other grounds.

Over the following eight months (August, 2005 through March,
2006), we filed repeated motions for stays of remand, emer-
gent motions, a Rule 60(b) motion, all with the District Court.
The District Court denied them all.

We also filed an Appeal of the remand, with the Third Circuit.
It dismissed the appeal under 28 U.S.C. 1447(d), stating the
non-appealability of remand under that statute. But it wasn't
'subject matter' and we think they were wrong. We think and
thought they should have considered it in pari materia with

**PAGE FOUR**

**28 U.S.C. 1448**, and wrote a brief on that. But it did no good. The appeal was permanently dismissed.

Thus, all further relief via the federal courts in the Third Circuit was foreclosed

2. Thus the matter proceeded in the State Courts of New Jersey. The plaintiff's counsel filed for summary judgment in State Chancery Court on or about August 18, 2005. The court held a hearing on September 23, 2005, and granted them summary judgment. The Order was entered on September 26, 2005.

Over the following nine months, by our count, we've made eight or nine attempts to obtain relief by way of stay of summary judgment: five or six from the Appellate Division of the Superior Court of New Jersey, the most recent on June 16, 2006, denied on June 22, 2006; and two directly to the Supreme Court of New Jersey, seeking emergent stay under State Rule 2:9-8 (Emergent Temporary Relief) basing our application on Crowe v. De Gioia, **90 N.J. 126**, the standard New Jersey Supreme Court decision on the matter of emergent relief. The first application to the State Supreme Court was in October, 2005, probably much too early for emergent relief. The second application (copy herewith attached) was submitted on or about April 7, 2006, and was denied on April 10, 2006--the day before the Sheriff's Auction sale of our house. Both applications were decided by a Single Justice (the same one in both cases).

## PAGE FIVE

We've filed yet a third application for stay of summary judg-
ment, and for a stay of the Order of Eviction. This most re-
cent motion to the Supreme Court of New Jersey was filed on
June 26, 2006. We specifically sought a hearing by the full
Court. We were told it would be so heard, during this week.
However, on Friday, June 30, 2006 it was announced that the
Governor of New Jersey was compelled by statute to order a
**total shutdown of State Government operations--including
the entire Court System. We attach a photocopy from the
Sunday, July 2, 2006 <u>Herald News</u> confirming that the Governor
signed the shutdown order at 9:30 A.M. on July 1,2006.
Therefore, unless the Supreme Court of New Jersey intends
to sit despite that order, there is no likelihood our motion
would be considered in time to provide us relief at the
State level.** The County Sheriff's are County employees,
we presume unaffected by the State shutdown. And therefore,
it's a certainty that the Eviction Order scheduled for
July 12, 2006 at 9:00 A.M. would be carried out on time.

So, in sum, we've attempted to obtain relief by way of stay
of summary judgment from every court and level within the
State of New Jersey, in all instances, several times. All
were to no avail.

PAGE SIX

## SUMMARY STATEMENT OF FACTS
## PERTINENT TO THIS APPLICATION

1. It is a demonstrable and conclusive fact that the named plaintiff, Bank of America, N.A., is not the real party in interest in this foreclosure suit, and in fact has no standing to sue for foreclosure, so far as we know. We only refer to our accompanying Exhibit File where necessary. It's necessary that we refer the Court to **Exhibits E and F**. Exhibit E comprises a set of letters from the plaintiff to Myrna Tagayun, the mortgagor, confirming that they no longer own the secured note, having sold it to the **Federal Home Loan Mortgage Corporation, a/k/a "Freddie Mac"**; and another, earlier letter from a "First American Loss Mitigation" confirming that "Freddie Mac" also is **"the owner of the mortgage on your property"**.

We have presented these facts to all the courts of the State of New Jersey, especially the first hearing Chancery Court. We have found it hard to believe, so we know others would as well: **No court in the State of New Jersey takes any judicial notice of those facts**. Apparently, the true facts of the matter, don't matter, so long as the named plaintiff has its mortgage recorded, and "Freddie Mac" does not.

Bank of America, N.A. is the 'loan servicer' for Freddie Mac, the mortgage payments collector. They collect and remit to Freddie Mac, less some probably small servicing fee.

We emphasize to the Court that these documents and many others

## PAGE SEVEN

have been presented on numerous occasions to all courts of the State of New Jersey. Apparently, from our failed attempts to gain stay of summary judgment, these facts don't matter, so long as the mortgage originally recorded by Bank of America, N.A. remains the only recorded filing. We suspect this situation prevails many thousands of times in foreclosure actions in this state, and probably over the course of many years. Thus we presented our first question for the Court's consideration. Is is legal, is it equitable, is it fair, does it make any sense at all that we have been sued for foreclosure by a 'collection agent' for Freddie Mac, that has no funds invested, and nothing at risk? And as a corollary, is it legal, equitable, or fair that the courts of New Jersey may proceed to grant that 'collection agent' summary judgment, and carry the matter to the point of a Sheriff's Sale and impending Eviction?

2. This foreclosure lawsuit is not commenced or carried through the courts of New Jersey without Freddie Mac's knowledge. We refer to our **Exhibit F.** When we learned of Freddie Mac's status in the matter, and after chasing about in an attempt to learn who we should contact in their organization, we contacted them. **At that time we truly thought the foreclosure lawsuit was being conducted without their knowledge or consent!** We were quickly

## PAGE EIGHT

disabused of that notion. The correspodence speaks for itself. Freddie Mac knew about the suit, refused to cooperate with us, and fashioned itself **"no longer subject to the Freedom of Information Act"** 5 U.S.C. 552 et seq)! We now know why this is done, but it's not germane to this application, and rather artfully involved.

**If Freddie Mac is doing this in our case, they're doing it in thousands of others (hundreds of thousands of others?).** And big money is behind it. Big money is always behind big schemes.


3. The Sheriff of Passaic County, New Jersey carried out the judicial sale of our home on April 11, 2006. In doing so, he chose to suppress knowledge of a federal tax lien duly recorded against Myrna Tagayun. A copy is appended to the Amendment to Foreclosure Complaint, **Exhibit C.** That tax lien grants the Internal Revenue Service a pre-emptive, superior, and unextinguishable Right of Redemption for a period of 120 days after the judicial sale, **28 U.S.C. 2410(c) and 26 U.S.C. 7425(d)(1).** Here again, as with the Freddie Mac/Bank of America, N.A. true-party-in-interest determination **NO COURT IN THE STATE OF NEW JERSEY TAKES JUDICIAL NOTICE OF THIS PREEMPTIVE, SUPERIOR, AND UNEXTINGUISHABLE I.R.S. RIGHT OF REDEMPTION.** We made these facts and these statutes known to the Chancery Court at an Objection Motion hearing on May 12, 2006

**PAGE NINE**

(In this state one is permitted to make a motion objecting
to the Sheriff's Sale, thus delaying confirmation of sale
until, at least, the date of hearing). The court took no
judicial notice of them, and confirmed the sale. We think
that's illegal. It also appears, in this state, that the
Office of the U.S. Attorney takes no judicial notice of
that preemptive I.R.S. prerogative of redemption. On first
appearance back on May 5, 2005 that office set forth **re-
quired conditions pursuant to 28 U.S.C. 2410** that had to
be met, see **Exhibit D.** But a year later, in a letter dated
May 11, 2006, apparently solicited by one of the other
participants in the matter, that same office asserts that
all the conditions **"had been met"**, and goes on to make
claims on behalf of the I.R.S. as to their preferences
after a judicial sale. **We know the U.S. Attorney's claims
to be false.** Our consultants at Quantum Financial Solutions,
LLC of Boulder, Colorado speak to this subject in **Exhibit G.**
The fact is that no court of New Jersey, nor for that matter
any Sheriff, or even the U.S. Attorney's Office, takes any
judicial notice of the prerogatives reserved to the Internal
Revenue Service with respect to the compulsory requirements
of 28 U.S.C. 2410(c) and 26 U.S.C. 7425(d)(1). This too is
hard to believe, but true.
Had the hearing Chancery Court taken judicial notice of that
statutory requirement, and conditioned conveyance of the

PAGE TEN

deed on that 120-day I.R.S. redemption period, we would have
had ample time in which to complete a refinancing effort,
both to pay off the foreclosed mortgage, and settle with the
I.R.S. No court- in the State of New Jersey permits that.
We do not include it as an exhibit, but we assure the Court
that the Sheriff's County Counsel referred to the I.R.S.
tax lien as an **"alleged tax lien"** in a letter/brief he add-
ressed to the Chancery Court on April 27, 2006, the day before
the first scheduled to hear our Objection Motion. The
Sheriffs in New Jersey don't like complications which might
delay the swift completion of their appointed duty: sell the
property; collect their commission(s); convey the deed.
We are absolutely sure the Sheriff of Passaic County never
notified the I.R.S. **twenty-five days** in advance of the impend-
ing sale--making them aware of it in the first instance, and
so that they might call upon proceeds due them in respect of
that tax lien. **These requirements are in the statute:**
**26 U.S.C. 7425.** But as stated, the courts and officials here
take no judicial notice of it.
As indicated by the documents in **Exhibit G,** we were making
concerted efforts to turn the matter around, refinance our
home, pay off the I.R.S. tax lien as part of the refinancing
package, and make a new start. The Courts and Sheriffs of
New Jersey took no notice of that. Had we been granted **ANY**
of the stay applications made within the past few months,
on what we believe to be overwhelmingly ample grounds, we

**PAGE ELEVEN**

would have completed our refinancing and begun again.


**LEGAL MEMORANDUM**

1. The State of New Jersey is what we characterize as a
'hard' or 'strict' foreclosure state. The only tests re-
quired to assert a prima facie case for foreclosure are:
Execution, Delivery, and Recording of the Mortgage, with
default thereafter. Within that characterization are the
following characteristics:

A) There is no statutory redemption period protecting the
foreclosed mortgagor's 'equity of redemption'. In our case
that amounts to $67,000 (the difference between the high
bid of $293,000, and the latest official appraisal at
$360,000).

B) The only legally sanctioned redemption period available
to the foreclosed mortgagor is a ten-day period after the
sale, resulting from the Supreme Court of New Jersey's holding
in **Hardyston National Bank v. Tartamella**, 56 N.J. 508.

C) A third-party bidder need only deposit twenty percent
of the bid price, and has thirty days in which to pay the
balance. That is to be compared with the ten-day period
available to the foreclosed mortgagor in which to come up
with the **entire accelerated mortgage amocount plus costs.**

## PAGE TWELVE

2. Not even a statute, but only a Court Rule, effectively neuters the application of the entire federal consumer protection statutory armamentarium, i.e., all of 15 U.S.C. 1601 et seq (the entire Truth-in-Lending Act) as valid defenses in State of New Jersey foreclosure actions. The Court Rule of particular note is:

**R. 4:64-5 Joinder of Claims in Foreclosure** which reads:

> **"Unless the court otherwise orders on notice and for good cause shown, claims fore foreclosure of mortgages shall not be joined with non-germane claims gainst the mortgagor or other persons liable on the debt. Only germane counterclaims and cross-claims may be pleaded in foreclosure actions without leave of court. Non-germane claims shall include, but not be limited to, claims on the instrument of obligation evidencing the mortgage debt, assumption agreements and guarantees....... "**

(remainder omitted as non-germane)

It's also of interest that this rule was adopted in September, 1992, and is a specific **exclusion** from New Jersey's "Entire Controversy Doctrine (R. 4:30-A), which in contrast requires the inclusion of all counter- and cross-claims in a defense, or their preclusion thereafter. There's a lot more there than in a few words. Our experience has been that nothing matters in defense, if the plaintiff can prove execution, delivery, recording, and subsequent default.

3. Title 2A of the Statutes of New Jersey encompass Chapter 50: **Mortgages, Notes and Bonds; Foreclosure and Actions On·**

## PAGE THIRTEEN

One interesting section therein probably explains the
Freddie Mac/Bank of America, N.A. proxy methodology:

**N.J.S.A. 2A:50-13 Parties to foreclosure action by trustee
or fiduciary.**

> **"From and after May 29, 1937, it shall not
> be necessary to make any cestui qui trustent,
> ward, beneficiary, holder of bonds, certificates,
> shares or other interests in a mortgage, parties to
> any action brought by any trustee or fiduciary
> acting on their behalf to foreclose any mortgage
> or mortgages in which they may be interested, but
> any order or judgment entered therein shall be
> as binding and effective as though they had been
> made parties to such action. "**

We surmise that this particular statute has been stretched
to cover just about anybody acting in behalf of another.
In our matter, we think Freddie Mac, and their **designated
counsel** (one of only three in the state), Messrs. Zucker,
Goldberg & Ackerman, LLC, of Mountainside, New Jersey,
use it to name their 'loan servicers'/collection agents
as nominal plaintiffs, while Freddie Mac stays above and
well away from the fray.


**AND OF COURSE, WE BELIEVE THAT BOTH RULE 4:64-5  and
N.J.S.A. 2A:50-13 ARE OUTRIGHT UNCONSTITUTIONAL!**


In federal court there are no "non-germane" claims per se!
That's why the plaintiff, Freddie Mac, and their attorneys
had to have the matter remanded--and quickly.

**PAGE FOURTEEN**

**CONCLUSION**

If the Court determines that the answers to the first three questions posed are "Yes", and "No" for the last two, then we're not justly due any relief. We'd best start packing our bags--and fast!

If the Court determines that the answer schema to the questions posed vary at least by one from that above, than we are justly due relief--and we need it fast.

We've certainly not gotten it from any court in New Jersey.

Most respectfully,

_Myrna Tagayun_
Myrna Tagayun

_Robert S. Mandell_
Robert S. Mandell

**Dated:** __July 3, 2006__

CERT/RRR # 7005 1160 0002 7206 7628

# SUPREME COURT OF NEW JERSEY

STEPHEN W. TOWNSEND
CLERK

GAIL GRUNDITZ HANEY
DEPUTY CLERK

OFFICE OF THE CLERK
PO BOX 970
TRENTON, NEW JERSEY 08625-0970

Tel:  (609) 984-7791
Fax:  (609) 396-9056

TO: Robert Mandell

FROM: Mark Neary

SUBJECT: Bk of America v. Tagayun

NUMBER OF PAGES (Including Cover): 2

If you should have any problems with the attached transmission, please

call 609-292-4837 at

Thank you.

**PLEASE NOTE.** The information contained in this facsimile transmission from the Office of the Clerk of the Supreme Court may be privileged and confidential. It is intended for the sole use of the persons or entities named on this transmittal sheet. If you are not the intended recipient of the transmission, the dissemination, distribution, copying, or other use of the information it contains is strictly prohibited. If you have received this transmission in error, please call the sender immediately to arrange for the return of the information.

CERT/R.R.R # 7005 1160 0002 7206 7628

SUPREME COURT OF NEW JERSEY
September Term 2005

BANK OF AMERICA, N.A.,

    Plaintiff,

        v.                                          O R D E R

MYRNA TAGAYUN, et al.,

    Defendants-Movants.

This matter having come before the Court on an application for emergent relief pursuant to Rule 2:9-8, and the undersigned having reviewed the papers submitted by movants, pro se, it is hereby Ordered that the application for emergent relief is denied.

Justice Jaynee LaVecchia

Dated:  April 10, 2006

Case 1:08-cv-00476-JR    Document 6-1    Filed 06/20/2008    Page 9 of 35

TERSON  B1

orres sworn in
second term

YOUR VOICE. YOUR CHOICE

BASK

Reports:
might n

MEET YOUR NEIGHBORS, B2






# HERALDNEW

Sunday, July 2, 2006

## HISTORY

# Innocence lost

## son native stuck in Poland saw horrors of World War II firsthand



*mares fade with the light of day, but the
which Mrs. Sophie Straczynski and her
lived for seven terror-filled years still
even though they have been free from its
June."*

The Morning Call, Paterson, N.J.,
December 24, 1946

**By SUZANNE TRAVERS**
Herald News

sa Straczynski Skibicki still has night-
es. Decades after her return to the Unit-
tates, remembering her life in Poland dur-
r II is a recipe for a restless night.

60th anniversary of the day her ship sailed
into Baltimore Harbor, Skibicki, now 74,
finds that her mind
goes back again and
again to memories of
the war. With the help
of a home health aide,
she brought the
clothes she wore then
down from storage on
her second floor —
two dresses, and a
sweater she knitted to
keep herself warm.

Born in Paterson,
Skibicki was 6 years
old in June 1939

mother Sophie, a Polish immigrant, took
her brother Charles to visit relatives in
traveled by ship, then train, to their moth-
n in northeastern Poland, near what was
iet Socialist Republic of Byelorussia.

1, 1939, as they prepared to board a train
the United States, Germany invaded
massive air strikes and a thundering army.
tracks were bombed, the Straczynskis
rld War II had started. Theresa spent the
ears, often alone, struggling to survive.

it this way: I went from heaven to hell, and
to heaven. And I mean hell," she said.
ibicki lives in Paterson, the city where she
bout of polio when she was 18 months old
t leg weak and atrophied, and for four years,
ed in hospitals — St. Joseph's in Paterson, a
st Orange.

her worked two jobs to support her children
once a month, so those early years left
th little sense of home or the world outside
. When they sailed for Poland, she wore a

**"nt from
n to hell,
me back
ven. And
n hell."**

— STRACZYNSKI
IBICKI,
terson

La
to

C
acti
bro
ma
the
em
for
cen
ten
wo

9:
de
mi
It
aç
stı
ag

se
fo

4!
fu
th
aı
cl
W
th
p

d
n
g
s
i

f
t
l
l

Sunday, July 2, 2006

## STORY

# nce lost

### aw horrors of World War II firsthand



LESLIE BARBARO/Herald News

nski Skibicki, 74, of Paterson, holds a cherished doll given to her by a n Poland, an act of kindness, she said, in a world gone mad with rage.

STATE BUDGET

# Shutdown stirs fears of lost revenues

### Lawmakers meeting today to help resolve stalemate

By PAUL BRUBAKER
Herald News

Gov. Jon S. Corzine's executive order enacting the state's first government shutdown brought an abrupt end to lottery sales and may curb other gambling as residents began the long holiday weekend. A prolonged government shutdown could mean lost revenue for the state, no trials, no new driver's licenses, no state permits, no highway maintenance and no pay for nearly 45,000 state workers.

The governor signed the order just after 9:30 a.m. Saturday, after a constitutional deadline to adopt a new balanced budget by midnight July 1 passed without agreement. It was a grim climax to weeks of budget squabbling among Democrats, who control state government but haven't been able to agree on a budget bill.

"It gives me no joy, no satisfaction, no sense of empowerment to do what I'm forced to do here," Corzine said.

Under Corzine's executive order, about 45,000 state employees were immediately furloughed. State courts were closed for anything but emergencies. State parks, beaches and historic sites were expected to slowly close in the coming days, with all closed by Wednesday. Beaches were staying open through the July Fourth holiday, preventing a more dramatic effect on New Jerseyans' plans for the long weekend.

The casino industry went to court on Friday to block the state from withdrawing its monitors, whose presence is required at gaming sites. A ruling could come as early as Monday. Horse racing won a reprieve to stay open on Saturday until a similar hearing scheduled for today.

New Jersey could lose millions each day from lost revenues at casinos, race tracks and the now-silent lottery ticket machines as well as other places where taxes or fees are collected. The state might even be liable for penalties from withdrawing from its multistate lottery deals. Corzine said he was constitutionally obligated to sign the order in the absence of a legislatively approved balanced budget. The freeze will affect only nonessential state functions and services, including motor vehicle offices, road construction projects and the lottery.

Please see BUDGET, A4

## CRIME

# s exploit access to youth

### al abuse charges rises nationwide

oked up to him – until
I them.
s now a convicted child
. He used to be a youth
sh. He is one of at least

duct allegations, according to published reports and data from the Bergen and Passaic county prosecutors. The coaches' alleged offenses ranged from possession of child

never molest their young athletes, experts agree the number of arrests nationwide is up significantly.

"Judging by the amount of court cases and newspaper accounts, it's a frightening number," said Bob Shoop, a professor at Kansas State

2003. "Some states have 20 to 30 cases going on at a time."

Because coaches are typically among the most respected figures in the community, such misconduct often goes undetected. And it can happen in any town, to any family.

## AFFIDAVIT OF SERVICE

Pursuant to Supreme Court of the United States Rule 29 and 28 U.S.C. 1746, I hereby swear and affirm that I deposited true and complete copies of the within Revised **APPLICATION FOR EMERGENT RELIEF OF MYRNA TAGAYUN AND ROBERT S. MANDELL** in the United States Mail directed to the follwoing parties:

1) Honorable Margaret Mary McVeigh, P.J. Ch.
   77 Hamilton Street
   Paterson, New Jersey 07505

2) Sheriff Gerald Speziale, Att: Dawn Englehardt, Chief Clerk
   Office of the Sheriff of Passaic County
   77 Hamilton Street
   Paterson, New Jersey 07505

3) County of Passaic New Jersey
   Office of the County Counsel
   401 Grand Street, Room 214
   Paterson, New Jersey 07505

4) Zucker, Goldberg & Ackerman, LLC
   200 Sheffield Street, Suite 301
   P.O. Box 1024
   Mountainside, New Jersey 07092-0024

5) Paul Fernandez & Joseph Chang
   270 Park Avenue
   Paterson, New Jersey 07513

_____
Robert S. Mandell

NOTARY PUBLIC

EVELYN GONZALEZ
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES JULY 22, 2008

# EXHIBITS

**EXHIBIT A**

SUPREME COURT OF NEW JERSEY
DENIAL OF RELIEF ORDER
(ATTACHED TO APPLICATION)

**EXHIBIT B**

**SHERIFF OF PASSAIC COUNTY**
77 Hamilton Street
Paterson, NJ 07505

Myrna Tagayun
and any family/Occupants
57-59 Prospect Street
Clifton, NJ 07011

**DO NOT FORWARD**



RECEIVED
JUN 1 4 2006
By

# PASSAIC COUNTY SHERIFF'S DEPARTMENT

| *SHERIFF* | *Office of the Sheriff* | *UNDERSHERIFFS* |
|---|---|---|
| Jerry Speziale | Courthouse | Jerry Gamble |
| | 77 Hamilton Street | Milton Smilek |
| *Executive Officer* | Paterson, New Jersey 07505 | Alfred Steele |
| *UNDERSHERIFF* | 973-881-4200          973-881-4241 | |
| Edward Dombroski | Office                    Fax | *CHIEF* |
| | | John M. Comparetto |



**EVICTION NOTICE**
TO ALL OCCUPANTS AT:
57-59 PROSPECT STREET

CLIFTON, NJ 07011

RE:  BANK OF AMERICA, N.A.
     VS MYRNA TAGAYUN, ET AL
     SHERIFF #: P0600017  ATTORNEY'S FILE #:
     DOCKET #: F 7040 05        DATE: June 7, 2006        PRO. #: 001

We have been commanded, by virtue of a Court Order issuing out of
the Superior Court of New Jersey, to VACATE the premises now
occupied by you, and any others therein.

We hereby inform you that you must VACATE said premises
before 9:00 A.M. on JULY 12, 2006        .

Should you fail to do so, you, your personal belongings and your
household furnishings will be removed IMMEDIATELY on that date.

This is the ONLY notice you will receive from this office.

If you vacate voluntarily before the scheduled eviction date,
kindly notify the following immediately:

Paul Fernandez, Esq.
Paul Fernandez & Associates, P.C.
279 Park Avenue
Paterson, NJ  07513

PHONE # 973-523-5353

**IMMEDIATELY UPON RECEIPT OF THIS LETTER, KINDLY CONTACT THE
UNDERSIGNED.**

Very truly yours,

Jerry Speziale, Sheriff

BY:  Officer Joseph Burda
     973-881-4220    (9:00 A.M. to 4:00 P.M.)
JS:lc
cc: Paul Fernandez, Esq.

P0600017
Paul Fernandez, Esq.
Paul Fernandez & Associates, P.C.
279 Park Avenue
Paterson, New Jersey 07513
(973) 523-5353
Attorney for Third Party Purchaser

ENTERED IN THE RECORDS OF EXECUTIONS
ISSUED IN THE SUPERIOR COURT CLERK'S
OFFICE  4339 F06

~Donald F. Phelan~
DONALD F. PHELAN
Clerk of Superior Court

RECEIVED
PASSAIC COUNTY
SHERIFF'S OFFICE

2006 JUN -5  P 3: 48

---

BANK OF AMERICA, N.A.,          :

          Plaintiff(s),          :

          vs.          :

MYRNA TAGAYUN, ROBERT          :
S. MANDELL, et al.          :
          :
          Defendant(s)          :

.SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION: PASSAIC COUNTY
DOCKET NO.: F-7040-05

*Civil Action*

**WRIT OF POSSESSION**



THE STATE OF NEW JERSEY

TO THE SHERIFF OF THE COUNTY OF PASSAIC

GREETINGS:

WHERAS, on the 23rd day of January 2006 a certain judgment made in our Superior

Court of New Jersey in a certain cause therein pending wherein Bank of America, N.A. is the

Plaintiff and Myrna Tagayun and Robert S. Mandell, Defendants, were ordered and adjudged

that the plaintiff recover the possession of the lands and premises, described in the complaint,

from the defendant Myrna Tagayun and Robert S. Mandell, which premises are more particularly

set forth and described as follows:

All that certain lot, tract, or parcel of land, situate, lying and being in the City of Clifton, County

of Passaic, and State of New Jersey, as more particularly described as follows:

In accordance with the Legal Description attached hereto as Schedule "A"

BEING also known and designated as Lot 32 in Block 15.10 on the Official Tax Map of the City

of Clifton.



More commonly known as: 57-59 Prospect Street, Clifton, New Jersey 07011

The possession of which said lands and premises the said defendants, Myrna Tagayun and Robert S. Mandell, have hitherto unlawfully deprived the said plaintiff/purchaser, as appears to us of record.

Therefore, you are hereby commanded that, without delay, you cause the purchaser, Joseph Chang to have possession of the said lands and premises, with the appurtenances thereunto belonging and appertaining; and make know to the said Superior Court of new Jersey aforesaid, at Trenton, within three months next, the manner which you shall have executed this writ, and have you then and there this writ.

WITNESS,    Honorable

NEIL H. SHUSTER, P.J.Ch.

Judge of the Superior Court at Trenton aforesaid this _1st_ day of _June_, 2006.

By: _____

Paul Fernandez, Esq.

DONALD F. PHELAN

Donald F. Phelan, Clerk of the Superior Court

## CERTIFICATION

Joseph Chang, of full age, by way of certification in accordance with R.1:4-4(b), says:

1. I am the successful bidder at the Sheriff's sale and now owner of the property known as 57-59 Prospect Street, Clifton, New Jersey 07011.

2. The annexed Writ of Possession shall issue against Myrna Tagayun and Robert S. Mandell.

3. Myrna Tagayun and Robert S. Mandell are not protected by the provision of the NJ Tenant Anti Eviction Statute, as enunciated in the NJ Supreme Court case of <u>Chase v. Josephson</u>.

4. Myrna Tagayun and Robert S. Mandell are not tenants in the premises described in the attached Writ, but were the owners of said premises against whom the judgment in the foreclosure were entered.

5. I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: May 26, 2006                     By: _____

                                              Joseph Chang

# SCHEDULE "A"-LEGAL DESCRIPTION

ALL the following described property located in the City of Clifton, County of Passaic, State of New Jersey, being more particularly described as follows:

BEGINNING at a point, said point being formed by the intersection of the southeasterly line of Prospect Street with the northeasterly line of Circle Avenue and running thence:

1) Along the southeasterly line of Prospect Street, North 46 degrees 37 minutes East, 39.89 feet to a point in same; thence

2) South 43 degrees 23 minutes East, 100.00 feet to a point; thence

3) South 46 degrees 37 minutes West, parallel with Prospect Street, 41.10 feet to a point in the northeasterly line of Circle Avenue; thence

4) Along the northeasterly line of Circle Avenue North 42 degrees 41 minutes 30 seconds West, 100.01 feet to the point and place of BEGINNING herein described.

Being further known and designated as Lots 35 and 36 in Block E as shown on map entitled "Paterson Park, 1914, Property of Lint, Butscher and Ross, Inc." filed in the Passaic County Register's Office on August 13, 1915 as Map No. 695.

BEING the same premises described in Deed Book D-236, page 298, recorded on 04/18/2001, in the Office of the Clerk of Passaic County.

COMMONLY known as 57 - 59 Prospect Street, Clifton, NJ, 07011.

BEING also known as Lot 32, Block 15.10 on the tax map of the City of Clifton.

**SHERIFF OF PASSAIC COUNTY**
    77 Hamilton Street
    Paterson, NJ 07505



Robert S. Mandell
and any Family/Occupants
57-59 Prospect Street
Clifton, NJ 07011

**DO NOT FORWARD**



RECEIVED
JUN 14 2006
By

# PASSAIC COUNTY SHERIFF'S DEPARTMENT

| *SHERIFF*<br>Jerry Speziale | *Office of the Sheriff*<br>*Courthouse*<br>*77 Hamilton Street*<br>*Paterson, New Jersey 07505* | *UNDERSHERIFFS*<br>Jerry Gamble<br>Milton Smilek<br>Alfred Steele |
|---|---|---|
| *Executive Officer*<br>*UNDERSHERIFF*<br>Edward Dombroski | 973-881-4200<br>Office          973-881-4241<br>Fax | *CHIEF*<br>John M. Comparetto |

## EVICTION NOTICE
### TO ALL OCCUPANTS AT:
### 57-59 PROSPECT STREET

### CLIFTON, NJ 07011

RE:  BANK OF AMERICA, N.A.
     VS MYRNA TAGAYUN, ET AL
     SHERIFF #: P0600017  ATTORNEY'S FILE #:
     DOCKET #: F 7040 05      DATE: June 7, 2006      PRO. #: 001

We have been commanded, by virtue of a Court Order issuing out of
the Superior Court of New Jersey, to VACATE the premises now
occupied by you, and any others therein.

We hereby inform you that you must VACATE said premises
**before 9:00 A.M. on JULY 12, 2006** .

Should you fail to do so, you, your personal belongings and your
household furnishings will be removed IMMEDIATELY on that date.

This is the ONLY notice you will receive from this office.

If you vacate voluntarily before the scheduled eviction date,
kindly notify the following immediately:

Paul Fernandez, Esq.
Paul Fernandez & Associates, P.C.
279 Park Avenue
Paterson, NJ  07513

PHONE # 973-523-5353

**IMMEDIATELY UPON RECEIPT OF THIS LETTER, KINDLY CONTACT THE
UNDERSIGNED.**

Very truly yours,

Jerry Speziale, Sheriff

BY: Officer Joseph Butta
    973-881-4220    (9:00 A.M. to 4:00 P.M.)
JS:lc
c: Paul Fernandez, Esq.

P060017

Paul Fernandez, Esq.
Paul Fernandez & Associates, P.C.
279 Park Avenue
Paterson, New Jersey 07513
(973) 523-5353
Attorney for Third Party Purchaser

ENTERED IN THE RECORDS OF EXECUTIONS
ISSUED IN THE SUPERIOR COURT CLERK'S
OFFICE  4339 F06

DONALD F PHELAN
Clerk of Superior Court

RECEIVED
PASSAIC COUNTY
SHERIFF'S OFFICE

2006 JUN -5 P 3: 48

BANK OF AMERICA, N.A.,

Plaintiff(s),

vs.

MYRNA TAGAYUN, ROBERT
S. MANDELL, et al.

Defendant(s)

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION: PASSAIC COUNTY
DOCKET NO.: F-7040-05

*Civil Action*

**WRIT OF POSSESSION**



THE STATE OF NEW JERSEY

TO THE SHERIFF OF THE COUNTY OF PASSAIC

GREETINGS:

WHERAS, on the 23rd day of January 2006 a certain judgment made in our Superior

Court of New Jersey in a certain cause therein pending wherein Bank of America, N.A. is the

Plaintiff and Myrna Tagayun and Robert S. Mandell, Defendants, were ordered and adjudged

that the plaintiff recover the possession of the lands and premises, described in the complaint,

from the defendant Myrna Tagayun and Robert S. Mandell, which premises are more particularly

set forth and described as follows:

All that certain lot, tract, or parcel of land, situate, lying and being in the City of Clifton, County

of Passaic, and State of New Jersey, as more particularly described as follows:

In accordance with the Legal Description attached hereto as Schedule "A"

BEING also known and designated as Lot 32 in Block 15.10 on the Official Tax Map of the City

of Clifton.

More commonly known as: 57-59 Prospect Street, Clifton, New Jersey 07011

The possession of which said lands and premises the said defendants, Myrna Tagayun and Robert S. Mandell, have hitherto unlawfully deprived the said plaintiff/purchaser, as appears to us of record.

Therefore, you are hereby commanded that, without delay, you cause the purchaser, Joseph Chang to have possession of the said lands and premises, with the appurtenances thereunto belonging and appertaining; and make know to the said Superior Court of new Jersey aforesaid, at Trenton, within three months next, the manner which you shall have executed this writ, and have you then and there this writ.

WITNESS,    Honorable

Judge of the Superior Court at Trenton aforesaid this 1st day of June, 2006.

By: _____
     Paul Fernandez, Esq.

NEIL H. SHUSTER, P.J.Ch.

DONALD F. PHELAN
Donald F. Phelan, Clerk of the Superior Court

## CERTIFICATION

Joseph Chang, of full age, by way of certification in accordance with R.1:4-4(b), says:

1. I am the successful bidder at the Sheriff's sale and now owner of the property known as 57-59 Prospect Street, Clifton, New Jersey 07011.

2. The annexed Writ of Possession shall issue against Myrna Tagayun and Robert S. Mandell.

3. Myrna Tagayun and Robert S. Mandell are not protected by the provision of the NJ Tenant Anti Eviction Statute, as enunciated in the NJ Supreme Court case of <u>Chase v. Josephson</u>.

4. Myrna Tagayun and Robert S. Mandell are not tenants in the premises described in the attached Writ, but were the owners of said premises against whom the judgment in the foreclosure were entered.

5. I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: May 26, 2006

By: _____
　　　Joseph Chang

## SCHEDULE "A"-LEGAL DESCRIPTION

ALL the following described property located in the City of Clifton, County of Passaic, State of New Jersey, being more particularly described as follows:

BEGINNING at a point, said point being formed by the intersection of the southeasterly line of Prospect Street with the northeasterly line of Circle Avenue and running thence:

1) Along the southeasterly line of Prospect Street, North 46 degrees 37 minutes East, 39.89 feet to a point in same; thence

2) South 43 degrees 23 minutes East, 100.00 feet to a point; thence

3) South 46 degrees 37 minutes West, parallel with Prospect Street, 41.10 feet to a point in the northeasterly line of Circle Avenue; thence

4) Along the northeasterly line of Circle Avenue North 42 degrees 41 minutes 30 seconds West, 100.01 feet to the point and place of BEGINNING herein described.

Being further known and designated as Lots 35 and 36 in Block E as shown on map entitled "Paterson Park, 1914, Property of Lint, Butscher and Ross, Inc." filed in the Passaic County Register's Office on August 13, 1915 as Map No. 695.

BEING the same premises described in Deed Book D-236, page 298, recorded on 04/18/2001, in the Office of the Clerk of Passaic County.

COMMONLY known as 57 - 59 Prospect Street, Clifton, NJ, 07011.

BEING also known as Lot 32, Block 15.10 on the tax map of the City of Clifton.

DEBTOR'S NOTICE QUI TAM FOR AND ON BEHALF OF
THE UNITED STATES DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE

---

To: Passaic County Sheriff's Department
    Office of the Sheriff
    Courthouse, 77 Hamilton Street
    Paterson, New Jersey 07505

Att: Jerry Speziale, Sheriff

RECEIVED
PASSAIC COUNTY
SHERIFF'S OFFICE
2006 APR 10 P 2: 35

---

Sir:

Take Judicial Notice that I am the Taxpayer identified in Tax Lien
Number 153408704 of the United States Department of the Treasury
Internal Revenue Service, executed on January 27, 2004, signed by
Linnette R. Coleman at Philadelphia, Pennsylvania. Said Tax Lien
was duly recorded at the Register of Passaic County, New Jersey
on February 23, 2004 under Instrument Number 2004018719, in Book
TX140, Page 88. At time of recording said Tax Lien was for the
amount of $45,163.77 (forty five thousand one hundred sixty three
dollars and seventy seven cents).

At the present date, as verified and supported by documents presented
herewith in the attached AFFIDAVIT OF MYRNA TAGAYUN, said Tax Lien
has a total of $58,429.11 (fifty eight thousand four hundred twenty
nine dollars and eleven cents) until April 21, 2006.

Take Judicial Notice that pursuant to the Statutes of the United States,
and Statutes of the State of New Jersey, in particular 28 U.S.C. 2410,
26 U.S.C. 6321, 26 U.S.C. 6322, 26 U.S.C. 6323, N.J.S.A. 46:16-13, and
46:17-3.1 you are debarred from selling at foreclosure sale on April
11, 2006 the real property identified under Passaic County Sheriff's
Department Docket Numbers: A-12642 and F0600032, situated at 57-59
Prospect Street, Clifton, New Jersey 07011, without making known
the Prior, Senior, and Superior Tax Lien identified hereinabove.
Pursuant to the United States and State of New Jersey statutes
referenced hereinabove, you are debarred from conveying Clean and

DEBTOR'S NOTICE QUI TAM FOR AND ON BEHALF OF
THE UNITED STATES DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE

---

To: Passaic County Sheriff's Department
    Office of the Sheriff
    Courthouse, 77 Hamilton Street
    Paterson, New Jersey 07505

Att: Jerry Speziale, Sheriff

---

Sir:

Take Judicial Notice that I am the Taxpayer identified in Tax Lien
Number 153408704 of the United States Department of the Treasury
Internal Revenue Service, executed on January 27, 2004, signed by
Linnette R. Coleman at Philadelphia, Pennsylvania. Said Tax Lien
was duly recorded at the Register of Passaic County, New Jersey
on February 23, 2004 under Instrument Number 2004018719, in Book
TX140, Page 88. At time of recording said Tax Lien was for the
amount of $45,163.77 (forty five thousand one hundred sixty three
dollars and seventy seven cents).

At the present date, as verified and supported by documents presented
herewith in the attached AFFIDAVIT OF MYRNA TAGAYUN, said Tax Lien
has a total of $58,429.11 (fifty eight thousand four hundred twenty
nine dollars and eleven cents) until April 21, 2006.

Take Judicial Notice that pursuant to the Statutes of the United States,
and Statutes of the State of New Jersey, in particular 28 U.S.C. 2410,
26 U.S.C. 6321, 26 U.S.C. 6322, 26 U.S.C. 6323, N.J.S.A. 46:16-13, and
46:17-3.1 you are debarred from selling at foreclosure sale on April
11, 2006 the real property identified under Passaic County Sheriff's
Department Docket Numbers: A-12642 and F0600032, situated at 57-59
Prospect Street, Clifton, New Jersey 07011, without making known
the Prior, Senior, and Superior Tax Lien identified hereinabove.
Pursuant to the United States and State of New Jersey statutes
referenced hereinabove, you are debarred from conveying Clean and

DEBTOR'S NOTICE QUI TAM FOR AND ON BEHALF OF
THE UNITED STATES DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE

## PAGE TWO

Clear Deed and Title to Said Premises for a Period of One Hundred
Twenty Days (120) as required by 28 U.S.C. 2410 for Tax Liens held
by the Internal Revenue Service pursuant to 26 U.S.C. 6321, 6322,
and 6323, and duly recorded at the Office of the Register of Passaic
County under Instrument Number 2004018719, recorded in Book: TX140 at
Page: 88, on February 22, 2004.

Take Judicial Notice that any successful bidder at said Sale is re-
quired by United States and State of New Jersey statutes to first
seek waiver or acceleration of the one hundred twenty (120) day
redemption period by release from the United States Department of
the Treasury, Internal Revenue Service, by paying to the United States
Department of the Treasury, Internal Revenue Service the full and
current amount due on said Tax Lien, $58,429.11 (fifty eight thousand
four hundred twenty nine dollars and eleven cents).

I as lienee of the above-referred Tax Lien do not consent to waiver of
payment of the full amount due, to the United States Department of the
Treasury, Internal Revenue Service, by the successful bidder, as a
prior condition of conveyance of Clean and Clear Deed and Title to
said property. I require payment to the Department of the Treasury,
Internal Revenue Service, of the full amount due on the Tax Lien,
prior to and as a condition of conveyance of Clean and Clear Deed
and Title by your Department.

Take Judicial Notice that any conveyance of said property to any
party other than the United States Department of the Treasury, Internal
Revenue Service, prior to the expiration of one hundred twenty (120)
days from April 11, 2006, the date of foreclosure sale, or earlier
payment by any successful bidder of the full amount of the Tax Lien
lodged against me in the current amount of $58,429.11 (fifty eight
thousand four hundred twenty nine dollars and eleven cents), will
be in violation of the above-cited United States and State of New
Jersey Statutes; and adverse to my interest in discharging this

DEBTOR'S NOTICE QUI TAM FOR AND ON BEHALF OF
THE UNITED STATES DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE

## PAGE THREE

obligation to the United States Department of the Treasury, Internal
Revenue Service.

Take Judicial Notice that in the event you convey clean and clear
deed and title to said property in violation of the statutory re-
quirements cited hereinabove, and/or fail to publicly announce same
at foreclosure sale on April 11, 2006, I will maintain a cause of
action against you personally, your department, and the County of
Passaic, New Jersey for all amounts due under said Tax Lien, to-
gether with all accrued interest, penalties, and costs as from
April 21, 2006, and costs of suit and attorney's fees. Suit will
proceed in the United States District Court for the District of
New Jersey under the above-cited statutes and 42 United States
Code 1983.

_____
MYRNA TAGAYUN

KENNETH J. FETT
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires January 12, 2010

Dated: April 10, 2006

DEBTOR'S NOTICE QUI TAM FOR AND ON BEHALF OF
THE UNITED STATES DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE

## CERTIFICATION OF SERVICE

I, Robert S. Mandell do hereby certify that on this date I served
the Original of the within Debtor's Notice Qui Tam for and On Behalf of
the United States Department of the Treasury, Internal Revenue Ser-
vice  , on the Sheriff of Passaic County to his Clerk at 77 Hamilton
Street, Paterson, New Jersey 07505 by personal service.

_____
Robert S. Mandell

Dated:  April 10, 2006 _____


I, Robert S. Mandell do hereby certify that on this date I served
true copies of the within Debtor's Notice Qui Tam for and On Behalf of
the United States Department of the Treasury, Internal Revenue Service
on all parties named in the Certification of Service of the Affidavit
of Myrna Tagayun of April 10, 2006, together with that Affidavit,
each under the same Certified Mail/Return Receipt Requested Number.

_____
Robert S. Mandell

Dated: April 10, 2006 _____

EXHIBIT C



# ZUCKER, GOLDBERG & ACKERMAN
## ATTORNEYS AT LAW

**LEONARD B. ZUCKER**
**MICHAEL S. ACKERMAN**
**JOEL ACKERMAN\***

JANINE A. GETLER**
RICHARD P. HABER
FRANCES GAMBARDELLA
NANCY J. TRUESDALE***
TANEISHA J. INGRAM

\*ALSO MEMBER OF NY AND CA BAR
\*\*ALSO MEMBER OF NY AND PA BAR
\*\*\*ALSO MEMBER OF GA BAR

200 SHEFFIELD STREET- SUITE 301
P.O. BOX 1024
MOUNTAINSIDE, NJ 07092-0024

TELEPHONE: 908-233-8500
FACSIMILE: 908-233-1390
E-MAIL: office@zuckergoldberg.com

*REPLY TO NEW JERSEY ADDRESS*

FOUNDED IN 1923
AS ZUCKER & GOLDBERG

MAURICE J. ZUCKER (1918-1979)
LOUIS D. GOLDBERG (1923-1967)
LEONARD H. GOLDBERG (1929-1979)
BENJAMIN WEISS (1949-1981)

New York Office
475 Park Avenue, 8th Fl.
New York, New York 10016

May 9, 2005

XWZ L -68975

MYRNA TAGAYUN
1199 Main Avenue #5
Clifton, NJ 07011
57 Prospect Street
Clifton, NJ 07011

MR. TAGAYUN, HUSBAND OF MYRNA TAGAYUN
57 Prospect Street
Clifton, NJ 07011

| Re: | Bank of America, N.A. |
| vs. | MYRNA TAGAYUN, et al. |
| Docket No. | F-7040-05 |

To The Above Named Addressees:

We enclose for service upon you a copy of Amendment to Foreclosure Complaint with regard to the above captioned foreclosure matter.

Very truly yours,

By: LEONARD B. ZUCKER

LBZ/ag
Enclosures
Process Server & Certified Mail - Return Receipt Requested
cc: Regular Mail With Enclosure Amendment

**THIS IS AN ATTEMPT TO COLLECT A DEBT.**
**ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

XWZ L  68975/jo
ZUCKER, GOLDBERG & ACKERMAN
Attorneys for Plaintiff
200 Sheffield Street, Suite 301
P.O. Box 1024
Mountainside, New Jersey 07092-0024
1-908-233-8500

| | |
|---|---|
| Bank of America, N.A. | : SUPERIOR COURT OF NEW JERSEY |
| | : CHANCERY DIVISION |
| | : PASSAIC COUNTY |
| Plaintiff, | : DOCKET NO. F-7040-05 |
| | : |
| | : Civil Action |
| vs. | : |
| | : |
| MYRNA TAGAYUN, her heirs, devisees, and | : |
| personal representatives, and her, their or any | : AMENDMENT TO |
| of their successors in right, title and interest; | : FORECLOSURE COMPLAINT |
| MR. TAGAYUN, HUSBAND OF MYRNA | : |
| TAGAYUN; DISCOVER BANK, BY ITS | : |
| SERVICING AGENT, DISCOVER | : |
| FINANCIAL SERVICES, INC., D/B/A | : |
| DISCOVER CARD;  STATE OF NEW | : |
| JERSEY;  UNITED STATES OF AMERICA; | : |

Defendants.

Plaintiff, Bank of America, N.A., does hereby file the following Amendment to Foreclosure

Complaint in the above entitled foreclosure action:

1. The caption of the foreclosure Complaint  is hereby amended to read as set forth

above.

2. Paragraph 1 of the First Count of Plaintiff's Complaint is hereby amended to read as follows:

On 04/11/2001, Myrna Tagayun executed to Bank of America, N.A. an obligation (Note) to secure the sum of $172800.00, payable on 05/01/2016 with the initial interest rate of 7.500% per annum, by payment of the sum of $1601.88 per month for interest and principal, taxes and insurance premiums.

3. Paragraph 2 of the First Count of Plaintiff's Complaint is hereby amended to read as follows:

To secure the payment of the aforesaid obligation, Myrna Tagayun, executed to Bank of America, N.A. a Mortgage dated 04/11/2001, and thereby mortgaged to Bank of America, N.A. in fee the land hereinafter described. Said Mortgage was duly recorded on 04/18/2001, in the OFFICE OF THE CLERK OF PASSAIC COUNTY, in Mortgage Book M-463, Page 106.

4. The description of the mortgaged premises, as found in Paragraph 3 of the First Count of Plaintiff's Complaint, is hereby amended as follows:

## SCHEDULE "A"-LEGAL DESCRIPTION

ALL the following described property located in the City of Clifton, County of Passaic, State of New Jersey, being more particularly described as follows:

BEGINNING at a point, said point being formed by the intersection of the southeasterly line of Prospect Street with the northeasterly line of Circle Avenue and running thence:

1) Along the southeasterly line of Prospect Street, North 46 degrees 37 minutes East, 39.89 feet to a point in same; thence

2) South 43 degrees 23 minutes East, 100.00 feet to a point; thence

3) South 46 degrees 37 minutes West, parallel with Prospect Street, 41.10 feet to a point in the northeasterly line of Circle Avenue; thence

4) Along the northeasterly line of Circle Avenue North 42 degrees 41 minutes 30 seconds West, 100.01 feet to the point and place of BEGINNING herein described.

Being further known and designated as Lots 35 and 36 in Block E as shown on map entitled "Paterson Park, 1914, Property of Lint, Butscher and Ross, Inc." filed in the Passaic County Register's Office on August 13, 1915 as Map No. 695.

BEING the same premises described in Deed Book D-236, page 298, recorded on 04/18/2001, in the Office of the Clerk of Passaic County.

COMMONLY known as 57 - 59 Prospect Street, Clifton, NJ, 07011.

BEING also known as Lot 32, Block 15.10 on the tax map of the City of Clifton.

THIS is a purchase money mortgage.

5. Paragraph 6 of the First Count of the Complaint is hereby amended to include the following additional sub-paragraph:

6c. The **United States of America** is made a party defendant to this foreclosure action by reason of the following notice(s) of federal tax liens entered in the Office of the Clerk of Passaic County recovered against plaintiff's mortgagor, Myrna Tagayun--see Rider attached hereto and made a part hereof.

6d. **Discover Bank, by its Servicing Agent, Discover Financial Services, Inc., d/b/a Discover Card** is made a party defendant to this foreclosure action by reason of the following financing statement entered in the Office of the Clerk of Passaic County-see Rider attached hereto and made a part hereof.

6e. In the event plaintiff is unable to determine the present whereabouts of defendant, Myrna Tagayun, or ascertain if she is presently alive, and as a precaution, plaintiff has joined the following persons as party defendants to this foreclosure action for any lien, claim or interest they may have in, to, or against the mortgaged premises:

**Myrna Tagayun, her heirs, devisees and personal representatives, and her or any of their successors in right, title and interest.**

6. The legal description attached to plaintiff's recorded mortgage inadvertently sets forth Lot 32, Block 15 when in fact said lot and block information should read Lot 32, Block **15.01**.

(f) WHEREFORE, plaintiff demands judgment correcting the lot and block designation in plaintiff's recorded mortgage.

ZUCKER, GOLDBERG & ACKERMAN

BY: _____
LEONARD B. ZUCKER,
MEMBER OF THE FIRM

Dated: May 3, 2005

**THIS IS AN ATTEMPT TO COLLECT A DEBT.
ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

# RIDER 6c

**FILE**

| Form 668 (Y)(c) (Rev. October 2000) | 1008 | Department of the Treasury - Internal Revenue Service |
|---|---|---|

## Notice of Federal Tax Lien

Area:
SMALL BUSINESS/SELF EMPLOYED AREA #3
Lien Unit Phone: (800) 829-3903

Serial Number
153408704

For Optional Use by Recording Office

As provided by section 6321, 6322, and 6323 of the Internal Revenue Code, we are giving a notice that taxes (including interest and penalties) have been assessed against the following-named taxpayer. We have made a demand for payment of this liability, but it remains unpaid. Therefore, there is a lien in favor of the United States on all property and rights to property belonging to this taxpayer for the amount of these taxes, and additional penalties, interest, and costs that may accrue.

HONE D. HOCHBERGER
REGISTER
PASSAIC COUNTY
NEW JERSEY

INSTRUMENT NUMBER
2004018719
FILED IN
Feb 23, 2004
1:05:36 PM
BOOK:TX140
PAGE:88
Total Pages: 1

Name of Taxpayer: MYRNA TAGAYUN

Residence: 57 PROSPECT ST
CLIFTON, NJ 07011-2826

**IMPORTANT RELEASE INFORMATION:** For each assessment listed below, unless notice of the lien is refiled by the date given in column (e), this notice shall, on the day following such date, operate as a certificate of release as defined in IRC 6325(a).

| NJ PRESERVATION ACCOUNT | $5.00 |
| RECORDING FEES - RECORDED 6F DEEDS | $20.00 |
| ITEM | $5.00 |

| Kind of Tax (a) | Tax Period Ending (b) | Identifying Number (c) | Date of Assessment (d) | Last Day for Refiling (e) | Unpaid Balance of Assessment (f) |
|---|---|---|---|---|---|
| 1040 | 12/31/1997 | 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 | 10/07/2002 | 11/06/2012 | 8587.98 |
| 1040 | 12/31/1998 | 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 | 09/30/2002 | 10/30/2012 | 23030.97 |
| 1040 | 12/31/1999 | 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 | 08/19/2002 | 09/18/2012 | 3518.49 |
| 1040 | 12/31/2000 | 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 | 08/19/2002 | 09/18/2012 | 9759.81 |
| 1040 | 12/31/2001 | 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 | 09/29/2003 | 10/29/2013 | 266.52 |

Place of Filing: Office of the County Clerk
Passaic
PATERSON, NJ 07505

Total $ 45163.77

This notice was prepared and signed at PHILADELPHIA, PA , on this,

the 27th day of January , 2004 .

Signature: *Linnette R. Coleman*
FOR L LEDER

Title: ACS
(800) 829-3903

23-00-0008

(NOTE: Certificate of officer authorized by law to take acknowledgments is not essential to the validity of Notice of Federal Tax lien.
Rev. Rul. 71-466, 1971 2 C.B. 409)

Form 668(Y)(c) (Rev. 10-00)
CAT. NO 60026X

Part 1 - Kept By Recording Office

TX 140-88 R 2/23/04
PASSAIC COUNTY

24

Inst # 2004018719 - Page 1

Station View12 - 04/29/2005 11:37:21 AM

END OF DOCUMENT

# RIDER 6d



**FILE**

UCC FINANCING STATEMENT

ROBERT S. MANDELL, 973-253-7737

ROBERT S. MANDELL
1199 MAIN AVENUE, SUITE 5
CLIFTON, NEW JERSEY 07011

001988

| | | | |
|---|---|---|---|
| TAGAYUN | MYRNA | BAUTISTA | |
| 1199 MAIN AVENUE, SUITE 5 | CLIFTON | NJ | 07011 | USA |
| N/A | | | |

| | | | |
|---|---|---|---|
| MANDELL | ROBERT | SAUL | |
| 1199 MAIN AVENUE, SUITE 5 | CLIFTON | NJ | 07011 | USA |
| N/A | | | |

CLAIM OF: DISCOVER BANK,, by its Servicing Agent DISCOVER
FINANCIAL SERVICES, INC., d/b/a DISCOVER CARD

| | | | |
|---|---|---|---|
| 3311 MILL MEADOW DRIVE | HILLIARD | OH | 43026 | USA |

PUBLIC RECORDATION STATEMENT:
Robert S. Mandell publicly records and affirms joint liability with
Myrna B. Tagayun for any amounts which may become due and payable to
the "Secured Parties" named hereinabove as a result of adverse outcome
of Superior Court of New Jersey, Law Division, Passaic County, Special
Civil Part, Docket Number DC-11576-04,. Robert S. Mandell makes the
attached AFFIDAVIT OF JOINT LIABILITY, freely, without coercion, and
without compensation of any kind.
ROBERT S. MANDELL AND MYRNA B. TAGAYUN ASSERT ALL DEFENSES IN THE
MATTER OF DOCKET NUMBER DC-11576-04, INCLUDING THE RIGHT TO JURY
TRIAL AND APPELLATE PROCESS.

REFERENCE: DISCOVER CARD ACCOUNT NUMBER
6011001440140814/DOCKET NUMBER: DC-11576-04

# RIDER 6d (cont.)

## AFFIDAVIT OF JOINT LIABILITY

BY: ROBERT S. MANDELL

I, ROBERT S. MANDELL, BEING OF SOUND MIND AND BODY, DO HEREBY MAKE THIS AFFIDAVIT OF JOINT LIABILITY FREELY AND WITHOUT RESERVATION OR COERCION.

I AM OVER THE AGE OF TWENTY-ONE YEARS OF AGE. MY BIRTHDATE IS JUNE 6, 1945.

MY ADDRESS IS 1199 MAIN AVENUE, SUITE 5, CLIFTON, NEW JERSEY 07011.

I AM GAINFULLY EMPLOYED AS PRACTICE MANAGER TO MYRNA B. TAGAYUN, M.D. I REGULARLY RECEIVE INCOME FROM PROVISION OF THESE SERVICES, AND I AM FREE OF ANY DEBTS OR OBLIGATIONS OF ANY KIND IN ANY AMOUNT.

I, ROBERT S. MANDELL, DO HEREBY ASSUME AND TAKE FINANCIAL RESPONSIBILITY, JOINTLY WITH MYRNA B. TAGAYUN, FOR ANY AMOUNT OF MONEY WHICH NOW OR IN FUTURE MAY BECOME DUE AND PAYABLE TO:

DISCOVER BANK, AND/OR DISCOVER FINANCIAL SERVICES, INC. d/b/a DISOVER CARD, ARISING FROM A REVOLVING CREDIT ACCOUNT WHICH EXISTED BETWEEN MYRNA B. TAGAYUN AND DISCOVER BANK, UNDER THE ACCOUNT NUMBER:

6011 0014 4014 0814

SAID ACCOUNT CLAIMED BY DISCOVER BANK TO HAVE BEEN OPENED IN THE YEAR ONE THOUSAND NINE HUNDRED EIGHTY NINE (1989), AND CLOSED ON OR ABOUT APRIL 30, 2004 WITH A CLAIMED BALANCE OWING AT THAT TIME IN THE AMOUNT OF SEVEN THOUSAND SEVEN HUNDRED NINETY SEVEN DOLLARS and THIRTY-FIVE CENTS ($7,797.35).

I FURTHER UNDERSTAND, ACCEPT, AND ACKNOWLEDGE THAT SAID ACCOUNT, AND SAID CLAIMED BALANCE, IS CURRENTLY THE MATTER AT ISSUE IN A LAWSUIT FILED IN THE SUPERIOR COURT OF NEW JERSEY, LAW DIVISION, PASSAIC COUNTY, SPECIAL CIVIL PART, UNDER THE DOCKET NUMBER:

DC-11576-04

AND THAT THE ATTORNEYS FOR THE PLAINTIFF, MESSRS. EICHENBAUM, KANTROWITZ, LEFF & GULKO, L.L.C., CURRENTLY CLAIM AN AMOUNT OWING OF EIGHT THOUSAND SEVEN HUNDRED SEVENTY THREE DOLLARS and FIFTY-NINE CENTS ($8,773.59), OR MORE, INCLUDING COURT COSTS AND ATTORNEY'S FEES.

(continued, Page Two)

Robert S. Mandell

DATED: JANUARY 31,

EVELYN GONZALEZ
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES JULY 22, 2008

NOTARY PUBLIC



# RIDER 6d (cont.)

## AFFIDAVIT OF JOINT LIABILITY

BY: ROBERT S. MANDELL

### PAGE TWO

I, ROBERT S. MANDELL, DO HEREBY FURTHER CERTIFY AND SWEAR THAT I AM NOT NOW FINANCIALLY INSOLVENT, BANKRUPT, OR IN IMMINENT JEOPARDY OF BECOMING FINANCIALLY INSOLVENT OR BANKRUPT. I FURTHER CERTIFY THAT, TO THE BEST OF MY KNOWLEDGE AND BELIEF, NO PRESENT OR PAST CREDITOR OR CREDITORS PRESENTLY HAVE ANY ACTION ON FILE BEFORE ANY COURT TO PLACE ME IN INVOLUNTARY BANKRUPTCY, OR TO APPOINT A RECEIVER TO ADMINISTER MY FINANCIAL AFFAIRS.

I, ROBERT S. MANDELL, DO HEREBY FURTHER CERTIFY THAT IT IS NOT MY INTENTION TO FILE FOR PROTECTION UNDER THE BANKRUPTCY STATUTES OF THE UNITED STATES, IN THE EVENT ANY AMOUNT BECOMES DUE AND OWING AS A RESULT OF ADVERSE DECISION AGAINST MYRNA B. TAGAYUN IN THE LAWSUIT REFERENCED HEREINABOVE, AFTER ANY AND ALL APPELLATE REVIEW AND ADVERSE DECISION ARISING THEREFROM.

I HEREBY MAKE THIS AFFIDAVIT AND CERTIFICATION WITHOUT RESERVATION OR PURPOSE OF EVASION, AND DO SO IRREVOCABLY.

_____
ROBERT S. MANDELL

EVELYN GONZALEZ
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES JULY 22, 2008

_____
NOTARY PUBLIC

I HEREBY ACCEPT THE ABOVE STATED AFFIDAVIT OF JOINT LIABILITY BY ROBERT S. MANDELL

_____
MYRNA B. TAGAYUN

_____
NOTARY PUBLIC

EVELYN GONZALEZ
NOTARY PUBLIC OF NEW JERSEY
MY COMMISSION EXPIRES JULY 22, 2008

DATED: JANUARY 31, 2005

END OF DOCUMENT

27

PASSAIC COUNTY

Inst.# 2005012320 - Pag

04/29/2005 11:37:27 AM

EXHIBIT D

U.S. Department of Justice

United States Attorney
District of New Jersey

970 Broad Street, Suite 700          ~(973)645-2700
Newark, NJ 07102

2005v01279

May 5, 2005

Zucker, Goldberg & Ackerman, Esq. (s)
200 Sheffield Street, Suite 301
P.O. Box 1024
Mountainside, New Jersey 07092-0024

Re:    Bank of America, N.A. v Myrna Tagayun
       Docket No.: F-7040-05

Dear Counsel:

The United States Attorney for the District of New Jersey hereby acknowledges service of the Summons and Complaint filed by plaintiff in the captioned matter as of the date hereof, providing all the jurisdictional requirements of 28 U.S.C. § 2410 have been met. The United States will not file an Answer in this matter, as it admits the priority of Plaintiff's mortgage, and will not oppose the entry of default against it.

The United States does specifically request that plaintiff's final judgement, whether or not submitted for its consent, contain language similar to that set forth on the attached information sheet.

**PLEASE PROVIDE THIS OFFICE WITH COPIES OF THE SHERIFF'S SALE NOTICE.** Your client may obtain a release of the Government's lien by paying the appropriate government agency the amount due on the lien prior to the sale; or by negotiating for the release of it's right of redemption after sale by contacting this Office and requesting the appropriate forms.

Very truly yours,

CHRISTOPHER J. CHRISTIE
UNITED STATES ATTORNEY

By: DETRIA L. WOMACK-LOWE
Legal Assistant

cc: Clerk, S.C.N.J., Foreclosure Unit

ENTERED ON ACMS

RECD & FILED
SUPERIOR COURT
OF NEW JERSEY
JUN 0 2 2005

hereby certify that the foregoing is a true copy of the original on file in my office.

Donald F. Phelan
Clerk

②

## MORTGAGE FORECLOSURE INFORMATION SHEET

By its decision in <u>US v. Kimbell Foods, Inc., et al</u>, 99 S. Ct. 1448 (1979), the United States Supreme Court has effectively eliminated all special priorities formerly accorded federally held mortgages and other consensual lines. Henceforth, these liens are to be accorded only such priority as they receive under applicable status law. However, the priority fo Federal Tax Liens continues to be controlled by the Federal Tax Lien Act of 1966, 26 U.S.C. § 6323. Plaintiffs are therefore entitled to priority for principal, interest, advances for taxes, advances for insurance and upkeep, and other advances for a maintaining the mortgage premises; and for statutory counsel fees, while IRS is entitled to a priority over late charges and interest on any advances. Your final judgement should therefore provide, when a tax lien is being foreclosed.

> It is further ORDERED and ADJUDGED that the question of priority between plaintiff and defendant United States of America as to late charges and any interest on advances shall await surplus money proceeding, if any.

By virtue of 28 U.S.C. § 2410 (c) the United States has a right of redemption in all cases which cannot be cut off by foreclosure. One year in most cases-120 days in IRS case. Your final judgement should therefore conclude with:

<u><em>except as provided by 28 U.S.C. § 2410</em></u>

hereby certify that the foregoing is a true copy of the original on fil in my office.

*[signature]*
Clerk

11/79

(IRS-MTG-Sec.)



**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

---

*970 Broad Street, Suite 700*            (973)645-2700
*Newark, NJ 07102*

May 11, 2006

Via telefax to (973) 523-4284



Hon. Margaret Mary McVeigh,
Judge, Superior Court of New Jersey
77 Hamilton Street
Paterson, New Jersey 07505

     Re:   Bank of America v. Myrna Tagayun, et al.
           Docket No. F-7040-05

Dear Judge McVeigh:

    This office represents the United States in this matter, and I write to set
forth the position of the government. The United States was joined as a junior
lien in this foreclosure action due to a filed federal tax lien in the amount of
$45,163.77, plus interest. The United States was served. It specifically advised
the plaintiff's attorney that the jurisdictional requirements of 28 U.S.C. §2410 had
been met, that it admitted the priority of plaintiff's mortgage, and that the
government would not appear in this matter. The United States did not appear
and default has been taken against it.

    The United States has a statutory right to redeem the premises pursuant to
28 U.S.C. §2410(c) and (d). This is to protect the interest of the United States in
the event that it decided redemption were in its interest. The statutory right of
redemption runs to the United States and to no other party.

    The government's tax liens will attach to any surplus funds generated by the
sale. Typically the government looks to surplus funds and not to its statutory
redemption rights in these matters. Additionally, a lienor may seek release of the

**TRUE COPY OF THE ORIGINAL INSPECTED BY ME**

**NOTARY PUBLIC**

M'CHELE CHAMBERS
Notary Public of New Jersey
My Commission Expires Aug. 5, 2008

redemption right as set forth in 28 U.S.C.§2410(e).

Respectfully submitted:

CHRISTOPHER J. CHRISTIE
United States Attorney

By:  NEIL R. GALLAGHER
Assistant U.S. Attorney

cc:
all counsel



U.S. OFFICIAL MAIL
PENALTY FOR
PRIVATE USE $300

PITNEY BOWES

$ 00.39°
02 1A              MAY 11 2006
0004202558
MAILED FROM ZIP CODE 07102

RECEIVED
MAY 1 2 2006
By _____

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*
*970 Broad Street, Suite 700*
*Newark, New Jersey 07102-2535*

Official Business

**ADDRESS SERVICE REQUESTED**

Myrna B. Tagayun
1199 Main Avenue, Suite 5
Clifton, NJ 07011

07011+2253-05 C01S

EXHIBIT E

**Bank of America.**

Bank of America
475 CrossPoint Parkway
PO Box 9000
Getzville, NY 14068-9000

May 03, 2005

Myrna Tagayun
1199 Main Ave #5
Clifton NJ 07011

Loan Number 6060430888

Dear Customer:

Thank you for your most recent payment. This payment is being returned to you as it is not sufficient to fully reinstate your mortgage loan. All money remitted also must be in the form of certified funds, no personal checks will be accepted.

The Federal Home Loan Mortgage Corporation (also known as Freddie Mac), the lender that holds the loan, has engaged First American Loss Mitigation (FALM) to explore alternatives to foreclosure that may be available.

Please call 1.877.232.4999 to speak to a representative of First American Loss Mitigation to explore your options.

Sincerely,

Foreclosure Department

IMPORTANT NOTE: Contacting our office will not suspend your obligation to make your mortgage payments. We will continue all collection and foreclosure activity unless and until a workout plan has been completed. Timing is critical, so please act soon.

Enclosure
FC031 012 F8K



**Bank of America**

Bank of America
475 CrossPoint Parkway
PO Box 9000
Getzville, NY 14068-9000

August 16, 2005

Myrna Tagayun
1199 Main Ave #5
Clifton NJ 07011

LOAN NUMBER 6060430888

Dear Customer:

Bank of America would like to assist you in avoiding foreclosure.
We understand that you are experiencing financial difficulties and
we may be able to consider your loan for a workout alternative.

In order to do this, servicing guidelines require that we obtain
detailed information about your current financial situation so that
we can properly evaluate your loan for a potential workout option.
Please provide the information requested on page 2 within seven (7)
days of receiving this letter.

Please be advised that during consideration for any alternative
collection activity will continue.  This could include foreclosure
proceedings, which may cause the assessment of applicable fees.
You will be responsible for all fees incurred up until the
execution of a workout alternative.  In the event that a denial
decision is rendered, collections and or foreclosure proceedings
will continue.

A loan counselor will notify you of a decision once we have completed
the review process. A decision may be subject to the approval of the
investor on your loan and the mortgage insurance company.

We look forward to your response and working with you in developing
a workout alternative to assist you during this time.  If you have
additional questions, please call us at 1.800.846.2222.

***WE MAY REPORT OR HAVE REPORTED INFORMATION ABOUT YOUR ACCOUNT TO
THE CREDIT BUREAUS.  LATE PAYMENTS, MISSED PAYMENTS, OR OTHER DEFAULTS
ON YOUR ACCOUNT MAY BE REFLECTERD ON YOUR CREDIT REPORT.***

Sincerely,

Default Servicing

XC804 017 W2B                Fhlmc/3 Day Remit/parc

**Bank of America.**

Bank of America
475 CrossPoint Parkway
PO Box 9000
Getzville, NY 14068-9000

Page 2   Loan Number: 6060430888

Please use this page as a cover letter when returning your information
and check off the items that are included in the package.  Please
keep a copy of all information you submit to our office for your
records. Failure to include ALL of the requested information will
delay the review and possible approval of a workout alternative.

_____   A signed letter indicating why you fell behind in your payments
         and when the hardship occurred.  This letter should include a
         description of the efforts made to bring the loan current.
         All parties on the loan must sign this letter.

_____   A completed and signed financial statement (enclosed)

_____   Verification of all sources of income (including last 30 days
         of pay stubs).  If self employed, please provide current
         profit and loss statements.

_____   If Bank of America does not pay your homeowners insurance and
         property taxes, please provide proof of insurance and paid
         copies of your tax receipts.

_____   If we are reviewing your request for a short sale we will need
         the following info:
              ___a copy of the signed purchase offer/sales contract
              ___a comparative market analysis
              ___an estimate of net proceeds
              ___a written description of any liens on the property.

To expedite the review and approval process we suggest that you
return the requested information via:

Overnight Mail or Priority Mail to:
Bank of America Mortgage,
475 Cross Point Parkway,
Getzville, NY  14068-9000
Loss Mitigation Department

Via Bank of America Interoffice Mail at your local branch to mail
code NY2-001-02-17

Via Facsimile to 716.635.7255.

**Freddie Mac**

## BORROWER FINANCIAL INFORMATION    LOAN # _____

| BORROWER | | | CO-BORROWER | | |
|---|---|---|---|---|---|
| BORROWER'S NAME | | | CO-BORROWER'S NAME | | |
| SOCIAL SECURITY # | HOME PHONE # | WORK PHONE # | SOCIAL SECURITY # | HOME PHONE # | WORK PHONE # |
| MAILING ADDRESS | | | PROPERTY ADDRESS | | |

| Do you occupy the property? Yes No | Is it a Rental? Yes No | If so, what is monthly rental income? | | Is the property listed for sale? Yes No | If so, with whom? |
|---|---|---|---|---|---|
| REAL ESTATE AGENT'S NAME: | | | CREDIT COUNSELING REPRESENTATIVE: | | |
| REAL ESTATE AGENT'S PHONE: | | | CREDIT COUNSELING REP'S PHONE: | | |

| Have you contacted your credit counseling services for help? Yes No | | Do you pay Real Estate Taxes? (outside of mortgage payments) Yes No | | Are the taxes current? Yes No |
|---|---|---|---|---|
| Have you filed Bankruptcy? Yes No | If Yes, Chapter 7 Chapter 13 | Filing Date: | ATTORNEY'S NAME:  ATTORNEY'S PHONE: | Are there other liens on the property? Yes No |

### EMPLOYMENT

| EMPLOYER- BORROWER | HOW LONG? | EMPLOYER - CO-BORROWER | HOW LONG? |
|---|---|---|---|

| Monthly Income - Borrower | | Monthly Income - Co-Borrower | |
|---|---|---|---|
| Wages | $ | Wages | $ |
| Unemployment Income | $ | Unemployment Income | $ |
| Child Support / Alimony* | $ | Child Support / Alimony* | $ |
| Disability Income | $ | Disability Income | $ |
| Rents Received | $ | Rents Received | $ |
| Other | $ | Other | $ |
| Less : Federal and State Tax, FICA | $ | Less : Federal and State Tax, FICA | $ |
| Less: Other Deductions (401K, etc.) | $ | Less: Other Deductions (401K, etc.) | $ |
| Total | $ | Total | $ |

| Monthly Expenses (All Borrowers) | | Assets & Liabilities (All Borrowers) | | |
|---|---|---|---|---|
| | | Type | Estimated Value/Amount Owed | |
| Other Mortgages / Liens/Rents | $ | | | |
| Auto Loan(s) | $ | Checking Account(s) | $ | / |
| Auto Expenses / Insurance | $ | Saving / Money Market | $ | / |
| Credit Cards / Installment Loan(s) | $ | Stocks / Bonds / CDs | $ | / |
| Health Insurance | $ | IRA / Keogh Accounts | $ | / |
| Medical | $ | 401k / ESOP Accounts | $ | / |
| Child Care / Support / Alimony | $ | Home | $ | / |
| Food / Spending Money | $ | Other Real Estate        # | $ | / |
| Water / Sewer / Utilities / Phone | $ | Cars        # | $ | / |
| Other | $ | Other | $ | / |
| Total | $ | Totals | $ | / |

*Notice:  Alimony, child support, or separate maintenance income need not be revealed if the Borrower or Co-Borrower does not choose to have it considered for repaying this loan.

"I agree as follows: My lender may discuss, obtain and share information about my mortgage and financial situation with third parties regarding a possible alternative to foreclosure. Negotiations for a possible foreclosure alternative will not constitute a waiver of or defense to my lender's right to commence or continue any foreclosure or other collection action, and an alternative to foreclosure will be provided only if an agreement has been approved in writing by my lender. The information herein is an accurate statement of my financial status."

By _____ Date: _____
    _____
    Signature of Borrower

By _____ Date: _____
    _____
    Signature of Borrower

Submitted this _____ day of _____, 19_____



UNITED STATES POSTAGE

PITNEY BOWES

$ 00.30⁹
02 1A        AUG 19 2005
0004396575
MAILED FROM ZIP CODE 14068

PRESORTED
FIRST CLASS

08-22-05 BUF NY 142

Bank of America
475 CrossPoint Parkway
PO Box 9000
Getzville NY 14068-9000

Bank of America.

G-LZTMM 07011



NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES

# BUSINESS REPLY MAIL

FIRST-CLASS MAIL    PERMIT NO. 111    CHARLOTTE, NC

POSTAGE WILL BE PAID BY ADDRESSEE

BANK OF AMERICA
PO BOX 9000
GETZVILLE NY 14068-9904

LOSS MITIGATION



**First American**
**Loss Mitigation Services**

THIS IS A COMMUNICATION FROM A DEBT COLLECTOR

9/24/2004

MYRNA TAGAYUN
1199 MAIN AVE #5
CLIFTON, NJ 07011

Re: Bank Of America - Buffalo   Loan Number: 6060430888

Bank Of America - Buffalo ("the servicer") whose; address is 475 Cross Point Parkway, Getzville, NY, 14068, is the present servicer of your mortgage loan. The Federal Home Loan Mortgage Corporation, commonly known as Freddie Mac, is the owner of this mortgage on your property. We are informed that the servicer has notified you that you may have fallen behind on your mortgage payments and that unless the payments are brought up to date and the mortgage is reinstated, the servicer may seek payment of the debt and foreclosure of the mortgage. As of the date of this letter, you owe $152,075.40. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after the Servicer receives your check in which event the Servicer will inform you before depositing the check for collection. For further information, write the undersigned or call 1-800-988-6843 at extension 2243.

Bank Of America - Buffalo has engaged First American Loss Mitigation Services ("First American") to help resolve the delinquency in a manner beneficial to all parties. Several options may be available to help you reinstate your loan and retain ownership of your property. If those options are not workable, there are other options that may minimize the consequences of any financial hardship that might result from foreclosure.

In order to properly evaluate your situation, we will need to have you complete the enclosed forms accurately and thoroughly and return them to First American. In addition, we will need you to provide the requested documentation. After we receive and review the completed forms and requested documentation, we hope to be able to determine a solution.

The statutes pertaining to debt collection practices give you 30 days after you receive this letter to dispute the validity of the debt stated above or any part of it. If you do not dispute the debt or any part of it within 30 days of receiving this letter, First American will assume that the debt is valid. If you do dispute the debt or any part of it, you may inform First American in writing that you dispute the debt. If that occurs, First American will, as required by law, obtain and mail to you proof of the debt.

Further, if you request in writing the name and address of the original creditor within the same 30-day period, if the original creditor is different from the current creditor (Bank Of America - Buffalo), First American will furnish you with that information as well.



**First American Loss Mitigation Services**
510 Bienville Street • New Orleans, LA 70130
(504) 561-9340 • (800) 988-6843

**EXHIBIT F**

Federal Home Loan Mortgage Corporation
8200 Jones Branch Drive, Mail Stop 202
McLean, Virginia 22102

VIA FEDEX #0772412561/NEXT MORNING

Att: Graham Kidner, Esq., Assistant
     General Counsel

Re: Freedom of Information Act Request
    Pursuant to 5 U.S.C. 552

Ref: Bank of America, N.A. Loan Number 6060430888/
     Myrna B. Tagayun

August 26, 2005

Dear Mr. Kidner:

Your assistant Arlene Campbell instructed me to address this Freedom of Information
Act request to you as the Freedom of Information Officer in "Freddie Mac".

I am husband to Myrna Tagayun. My wife and I are defendants in a foreclosure
suit instituted by Bank of America, N.A. on April 29, 2005, through their
counsel, Messrs. Zucker, Goldberg & Ackerman of Mountainside, New Jersey.
This action is contested. In that regard, I require from the Federal Home
Loan Mortgage Corporation, answers to the following questions:

1) To the best of your Corporation's current knowledge and information, has
the Federal Home Loan Mortgage Corporation specifically instructed Bank of
America, N.A. to commence a foreclosure action against Myrna Tagayun, Mr.
Tagayun (Legal Name: Robert S. Mandell), and/or any other parties? at any
time to the present?

2) To the best of your Corporation's current knowledge and information, has
the Federal Home Loan Mortgage Corporation specifically instructed Bank of
America, N.A. to commence the foreclosure action presently active in the
Superior Court of New Jersey, Chancery Division, Docket Number: F-7040-05,
said action dated April 29, 2005?

3) Bank of America, N.A. states in a communication dated May 03, 2005 that:
"Federal Home Loan Mortgage Corporation (also known as Freddie Mac), the lender
that holds the loan......" has engaged a firm to pursue alternatives to fore-
closure. On exactly what date did the Federal Home Loan Mortgage Corporation
become the "holder" of the loan? And what does "holder of the loan" mean legally?
And, has Federal Home Loan Mortgage Corporation paid Bank of America, N.A.
any amount of money to "hold the loan", and if so, how much? As of the date(s)
of any payment or payments, what percentage of the then-remaining Principal
Balance did that/those payments constitute? Please answer these questions in
full and specifically.

4) By search of your Internet Website, www.freddiemac.com, it appears you have
established a regular feature called: "Primary Mortgage Market Survey" (PMMS).
A sample page is included herewith. The Link Legend Column indicates you make
available "PMMS Archives". Does this archive include the period January 1, 2001
through December 31, 2001? If so, I require historical data including that period
for 15-Year Fixed Rates, in HTML Format.

Freddie Mac
Graham Kidner, Esq.
August 26, 2005
-2-

Basically, I need an official printout of that PMMS Archive inclusive of that period (1/1/01 through 12/31/01). I need something that will constitute admissible evidence, preferably with your Corporation's stamp or seal on it for verification. Websites are nice, but if you know code—I'm a physicist and electrical engineer and I know code—you can duplicate anything in HTML, to say anything you want. I want it officially from your Corporation.

5) Does Federal Home Loan Mortgage Corporation have any OFFICIAL standards and/or guidelines on "first purchase money mortgage" lending practices which it classifies as "predatory lending practices"? I've seen some material on your website; but it's presented anecdotally, incidentally, and in sketchy fashion. If you have such standards and/or guidelines, codified in an official document, by way of regulations, standards, 'best practices', etc., I require and OFFICIAL COPY of that/those lending characteristics you officially hold as 'predatory'.

6) What methods and/or controls does Federal Home Loan Mortgage Corporation have in place, and actively applied in your mortgage loan purhcase activities, to prevent purchase of first purchase money mortgages which your standards characterize as 'predatory'?

7) Upon taking possession of first purchase money mortgages, i.e., "holding loans" first lent by private lenders, does Federal Home Loan Mortgage Corporation automatically grant these lenders, or others "servicing" the loans, independent agency authority to institute foreclosure proceedings without prior consent of your Corporation? Obviously the answer to this question is of particular importance. Please be as specific as you can with regard to grant of authority, contract terms, etc. Essentially, I need to know if generally, with regard to all servicers, and specifically with regard to Bank of America, N.A. in this instance: can they act in foreclosure matters independent of any imprimatur from your Corporation?

I may have other questions later. For now, that's it. I need answers fast. I believe 5 U.S.C. 552 requires an initial response in ten (10) working days. I'm a private user, non-commercial. I'll pay reasonable costs to produce anything not stock available. Get back to me quick.

Put simply, I've got Bank of America, N.A. and their bonecrusher lawyers on the run and on the ropes. I think (NO, I KNOW) they rolled my wife, when I was away, where I can't say.

I'm including representative documents as bona fides.


Sincerely,


Robert S. Mandell, a/k/a "Mr. Tagayun"

encl.

REPLY ADDRESS:

Robert S. Mandell
1199 Main Avenue, Suite 5
Clifton, New Jersey 07011

T: 973-253-7737
F: 973-253-0213

# ZUCKER, GOLDBERG & ACKERMAN
## ATTORNEYS AT LAW

LEONARD B. ZUCKER
MICHAEL S. ACKERMAN
JOEL ACKERMAN*

ANN... GETLER**
MICHAEL P. HABER
FRANCES GAMBARDELLA
NANCY L. TRUESDALE***
JANE ...AM

*ALSO MEMBER OF NY AND CA BAR
**ALSO MEMBER OF NY AND PA BAR
***ALSO MEMBER OF GA BAR

200 SHEFFIELD STREET- SUITE 301
P.O. BOX 1024
MOUNTAINSIDE, NJ 07092-0024

TELEPHONE: 908-379-2233
FACSIMILE  908-233-1390
E-MAIL: office@zuckergoldberg.com

*REPLY TO NEW JERSEY ADDRESS*

FOUNDED IN 1923
AS ZUCKER & GOLDBERG

MAURICE J. ZUCKER (1918-1979)
LOUIS D. GOLDBERG (1923-1967)
LEONARD H. GOLDBERG (1929-1979)
BENJAMIN WEISS (1949-1981)

New York Office
475 Park Avenue, 8th Fl.
New York, New York 10016

May 3, 2005

XWZ L 68975/vl

MYRNA TAGAYUN
...99 Main Avenue, #5
Clifton, NJ  07011
57 Prospect Street
Clifton, NJ  07011

MR. TAGAYUN, HUSBAND OF MYRNA TAGAYUN
1199 Main Avenue, #5
Clifton, NJ  07011
57 Prospect Street
Clifton, NJ  07011

Re:   BANK OF AMERICA, N.A.  vs.  MYRNA TAGAYUN, et al.
      Docket No.   F- 7040-05
      Premises:    59 Prospect Street, Clifton, NJ  07011

To The Above Named Addressees:

Enclosed herewith please find copy of Summons and Complaint regarding the above captioned foreclosure matter. Kindly advise of your intentions.

Very truly yours,

By:   *Leonard B. Zucker*

LEONARD B. ZUCKER

LBZ/vl
Enclosures
Certified Mail Return Receipt Requested
cc:    Regular Mail

> ## THIS IS AN ATTEMPT TO COLLECT A DEBT.
> ## ANY INFORMATION OBTAINED
> ## WILL BE USED FOR THAT PURPOSE.

FILED:    APR 2 9 2005

XWZ 68975/mt
ZUCKER, GOLDBERG & ACKERMAN
Attorneys for Plantiff
200 Sheffield Street, Suite 301
P.O. Box 1024
Mountainside, New Jersey 07092-0024
1-908-233-8500

Bank of America, N.A.

Plaintiff,

vs.

MYRNA TAGAYUN; MR. TAGAYUN,
HUSBAND OF MYRNA TAGAYUN;   STATE
OF NEW JERSEY;

Defendants.

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION
PASSAIC COUNTY
DOCKET NO. F- 7040-05

Civil Action

COMPLAINT
FOR
FORECLOSURE

Bank of America, N.A., having its principal place of business at , ,  the plaintiff in the

above entitled cause, says:

## FIRST COUNT

1. On 04/11/2001, Myrna Tagayun & Mr. Tagayun, husband of Myrna Tagayun executed to an obligation (Note) secure the sum of $172800.00, payable on 05/01/2016 with the initial interest rate of 7.500% per annum, by payment of the sum of $1601.88 per month for interest and principal.

2. To secure the payment of the aforesaid obligation, Myrna Tagayun & Mr. Tagayun, husband of Myrna Tagayun, executed to Plaintiff or its assignors or its predecessors, a Mortgage dated 04/11/2001, and thereby mortgaged to Plaintiff or its assignors or its predecessors in fee the land hereinafter described.

3. The mortgaged premises are described as follows:

ALL the following described property located in the City of Clifton, County of Passaic, State of New Jersey:

COMMONLY known as 57 Prospect Street, Clifton, NJ 07011.

BEING also known as Lot 32, Block 15.10 on the tax map of the City of Clifton.

4. The holder of the obligation and Mortgage referred to in paragraphs 1 and 2 above assigned said obligation and Mortgage as follows:

NONE.

5. The obligation aforesaid contained an agreement that if any installment payment of interest and principal, taxes and insurance premiums should remain unpaid for 30 days after the same shall fall due, the whole principal sum, with all unpaid interest, should at the option of the above named mortgagee or the heirs, executors, administrators, representatives or assigns, become immediately due and

**Bank of America.**

Bank of America
475 CrossPoint Parkway
PO Box 9000
Getzville, NY 14068-9000

May 03, 2005

Myrna Tagayun
1199 Main Ave #5
Clifton NJ 07011

Loan Number 6060430888

Dear Customer:

Thank you for your most recent payment. This payment is being returned to you as it is not sufficient to fully reinstate your mortgage loan. All money remitted also must be in the form of certified funds, no personal checks will be accepted.

The Federal Home Loan Mortgage Corporation (also known as Freddie Mac), the lender that holds the loan, has engaged First American Loss Mitigation (FALM) to explore alternatives to foreclosure that may be available.

Please call 1.877.232.4999 to speak to a representative of First American Loss Mitigation to explore your options.

Sincerely,

Foreclosure Department

IMPORTANT NOTE: Contacting our office will not suspend your obligation to make your mortgage payments. We will continue all collection and foreclosure activity unless and until a workout plan has been completed. Timing is critical, so please act soon.

Enclosure
FC031 012 F8K

Return To:

ROBERT L. STOBER
Attorney At Law
805 Clifton Avenue
Clifton, New Jersey 07013

Prepared By: MICHAEL ADAMS
BANK OF AMERICA, N.A.
1400 BEST PLAZA DR, STE 101
RICHMOND, VA  23227

———— [Space Above This Line For Recording Data] ————  LOAN # 6060430888

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated APRIL 11, 2001 together with all Riders to this document.
(B) "Borrower" is MYRNA TAGAYUN

GERARD J. DISTEFANO
REGISTER
PASSAIC COUNTY
New Jersey

INSTRUMENT NUMBER
2001029417
RECORDED ON
Apr 18, 2001
11:25:43 AM
BOOK:M-463
PAGE:106
Total Pages: 16

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is BANK OF AMERICA, N.A.

Lender is a NATIONAL BANKING ASSOCIATION
organized and existing under the laws of THE UNITED STATES OF AMERICA

RECORDING FEES -   $45.00
RECORDER OF DEEDS
TOTAL            $45.00

INV: 24172 USER: AM
Form 3031 1/01

NEW JERSEY - Single Family - Fannie Mae/Freddie Mae UNIFORM INSTRUMENT

(VMP) -6(NJ) (0005)
Page 1 of 15               Initials:_____
VMP MORTGAGE FORMS - (800)521-7291

CVNJ 04/09/01 8:34 AM 6060430888



idie Mac's Weekly Primary Mortgage Market Survey



Search [_____] ▶GO

Home | Our Other Sites | Sitemap

**Freddie Mac℠**

» Doing Business with Freddie Mac | » About Freddie Mac | » Buying and Owning a Home

**News and Information**

# Weekly Primary Mortgage Market Survey

2005 Weekly Mortgage Rates Data (Excel 5.0/Win95 workbook)

## Compilation of Weekly Survey Releases for 2005

News and Information Home

Corporate Statistics

Officer Biographies

...s and Statements

Economic and Housing Research

Industry Reports and Publications

Primary Mortgage Market Survey
- About the PMMS
- Survey Participation
- PMMS Archives
- Syndicate PMMS Data
- News Release Archives

| August 18, 2005 | 30-yr | 5-yr | 5/1-yr ARM | 1-yr ARM |
|---|---|---|---|---|
| Average Rates: | 5.80% | 40% | 5.34% | 4.58% |
| Fees & Points: | 0.5 | 0.5 | 0.6 | 0.7 |

| August 11, 2005 | 30-yr | 5-yr | 5/1-yr ARM | 1-yr ARM |
|---|---|---|---|---|
| Average Rates: | 5.89% | 47% | 5.40% | 4.57% |
| Fees & Points: | 0.5 | 0.6 | 0.6 | 0.7 |

| August 4, 2005 | 30-yr | 5-yr | 5/1-yr ARM | 1-yr ARM |
|---|---|---|---|---|
| Average Rates: | 5.82% | 5.38% | 5.30% | 4.47% |
| Fees & Points: | 0.6 | 0.6 | 0.7 | 0.7 |

| July 28, 2005 | 30-yr | 5-yr | 5/1-yr ARM | 1-yr ARM |
|---|---|---|---|---|
| Average Rates: | 5.77% | 34% | 5.27% | 4.46% |
| Fees & Points: | 0.5 | 0.5 | 0.6 | 0.7 |

| July 21, 2005 | 30-yr | 5-yr | 5/1-yr ARM | 1-yr ARM |
|---|---|---|---|---|
| Average Rates: | 5.73% | 5.32% | 5.26% | 4.42% |
| Fees & Points: | 0.4 | 0.4 | 0.5 | 0.6 |

| July 14, 2005 | 30-yr | 15-yr | 5/1-yr ARM | 1-yr ARM |
|---|---|---|---|---|
| Average Rates: | 5.66% | 25% | 5.15% | 4.39% |
| Fees & Points: | 0.6 | 0.6 | 0.7 | 0.7 |

| July 7, 2005 | 30-yr | 15-yr | 5/1-yr ARM | 1-yr ARM |
|---|---|---|---|---|
| Average Rates: | 5.62% | 20% | 5.19% | 4.33% |
| Fees & Points: | 0.6 | 0.7 | 0.7 | 0.7 |

| June 30, 2005 | 30-yr | 5-yr | 5/1-yr ARM | 1-yr ARM |
|---|---|---|---|---|
| Average Rates: | 5.53% | 12% | 5.06% | 4.24% |
| Fees & Points: | 0.6 | 0.6 | 0.6 | 0.7 |

| June 23, 2005 | 30-yr | 5-yr | 5/1-yr ARM | 1-yr ARM |
|---|---|---|---|---|
| Average Rates: | 5.57% | 16% | 5.05% | 4.23% |
| Fees & Points: | 0.6 | 0.6 | 0.6 | 0.7 |

| June 16, 2005 | 30-yr | 5-yr | 5/1-yr ARM | 1-yr ARM |
|---|---|---|---|---|
| Average Rates: | 5.63% | 22% | 5.10% | 4.25% |
| Fees & Points: | 0.5 | 0.5 | 0.6 | 0.6 |

### PMMS℠ Resources

Sign-up to participate in our weekly PMMS online survey!

Syndicate PMMS data on your website.

PMMS RSS Feed

### Historical PMMS Data

Historical monthly PMMS data tables are available for each type of product in both HTML and Excel formats:

30-Year Fixed-Rate Historic Tables
[HTML] [Excel]

15-Year Fixed-Rate Historic Tables
[HTML] [Excel]

5-Year Adjustable-Rate Historic Tables
[HTML] [Excel]

1-Year Adjustable-Rate Historic Tables
[HTML] [Excel]

8/22/200...

...PMMSOutputYr.jsp


**Freddie Mac**
make home possible™

Graham H. Kidner, Asst. Gen. Counsel
8200 Jones Branch Drive, MS 202
McLean, Virginia 22102
(703) 903-2492 (telephone)
(703) 903-3691 (facsimile)
graham_kidner@freddiemac.com

31 August 2005

Robert S. Mandell
1199 Main Avenue, Suite 5
Clifton, New Jersey 07011

Re:    Freedom of Information Act Request
       Bank of America, N.A. Loan No. 6060430888
       Myrna B. Tagayun, 57 Prospect Street, Clifton, NJ

Dear Mr. Mandell:

I received your letter dated 26 August 2005. Federal Home Loan Mortgage Corporation ("Freddie Mac") is not subject to the Freedom of Information Act and will not accede to your request to produce the various documents and records that you are seeking. Given that you are in litigation with respect to the foreclosure of the referenced property, you should direct all further communications concerning this loan to the law firm of Zucker, Goldberg & Ackerman. You already have contact information for the law firm.

Yours sincerely,

Graham H. Kidner

cc:    Richard Haber, Esq.



HASLER

SE...
US PO...
FIRST CL...
MAILED FROM 2210...
011A0413002205



Robert S. Mandell
1199 Main Avenue, Suite 5
Clifton, New Jersey 07011

07011+2253-05 C015

Freddie
Mac
We make home possible™

8200 Jones Branch Drive
McLean, VA 22102-3110
Return Service Requested



Received
9-3-05

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

FEDERAL HOME LOAN MOSTGAGE CORP
8200 JONES BRANCH LONG MS 210
MC LEAN, VIRGINIA 2210

ATT: MR COLANTON HEDNEN
ASST GEN CONNSEL

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____  ☐ Agent
                     ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number
   (Transfer from service label)

7003 2260 0001 9702 0621

PS Form 3811, August 2001       Domestic Return Receipt       102595-02-M-1540

Freedie Mac
8200 Jones Branch Road, MS 202
McLean, Virginia 22102

CERTIFIED MAIL/RETURN RECEIPT REQUESTED
#7003 2260 0001 9702 0621

Att: Mr. Grahma H. Kidner, Asst. Gen. Counsel

Re: Your Reply of 31 August, 2005/Refusal to
    Provide Informatin pusuant to 5 U.S.C. 552

September 3, 2005

Dear Mr. Kidner:

I am in receipt of your above-referenced reply, refusing the release of informa-
tion I have requested. You state that "Federal Home Loan Mortgage Corporation
("Freddie Mac") is not subject to the Freedom of Information Act and will not
accede you (my) request to produce various documents and records that (I) am
seeking".

I refer you to Rocap v. INdiek, C.A.D.C. 1976, 539 F.2d 174, 176 U.S. App.
D.C. 172., wherein it was decided that the Federal Home Loan Mortgage Corporation
(is) an "agency", subject to disclosure and reporting requirements of (this)
section".

Again, I demand that the information requested in my communication to you of
August 26, 2005 under Express Mail Number 0772412561 be provided in full and
promptly, I am a non-commercial user of such information, and it bears directly
upon a serious matter in which I am involved.

I suggest you go to your local Law Library and fully review the provisions of
5 U.S.C. 552, together with Annotation 47 (West Publishing Company's edition
of the United States Code Annotated). You will find the above-referred citation
listed at that number.

I would much prefer NOT having to institute an action against the Federal Home
Loan Mortgage Corporation in the United States District Court for the District
of New Jersey. The law on the matter is clear, and was decided nearly thirty (30)
years ago.

I previously included a full copy of the text of 5 U.S.C. 552 for your review,
and therefore it is superfluous that I do so again.

I will take necessary action in the District Court, if the demanded information
is not provided within the time limits set by the provisions of 5 U.S.C. 552.

Respectfully yours,

Robert S. Mandell

# UNITED STATES CODE ANNOTATED

## Title 5

### Government Organization and Employees §§ 1 to 552

exempt as an ... in this ... ancy ... ..., U.S. States, ..., 539 F.2d 17... ..., C.A.D.C. 197... ... A.F.S... 680, reversed D.D.C.197... ... other grounds 5C. F.2d 887, 163 U.S.App.D.C. 327.

**44. — Defense Nuclear Facilities Safety Board**

Defense Nuclear Facilities Safety Board would be considered "agency" within meaning of the Freedom of Information Act (FOIA) and the Government in the Sunshine Act, and therefore required to make its records available to the public and to open its meetings, even though Board dealt with highly sensitive information concerning matters critical to nation's defense and to public health and safety; statute provides for Board to make its recommendations public after receipt by the Secretary of Energy, and Board argued it could be considered entity which advised the President, rather than "agency." Energy Research Foundation v. Defense Nuclear Facilities Safety Bd., C.A.D.C.1990, 917 F.2d 581, 286 U.S.App.D.C. 359.

**45. — Environmental Protection Agency**

Environmental Protection Agency must comply with publication requirements of this section. Appalachian Power Co. v. Train, C.A.4, 1997, 566 F.2d 451.

**46. — Federal courts**

Purpose of this section was to correct improper denials of requests for public information by various federal agencies, not by courts. F.D.I.C. v. Ernst & Ernst, C.A.2 (N.Y.) 1982, 677 F.2d 230.

This section imposes no obligation on the courts to produce any records in their possession. Warth v. Department of Justice, C.A.9 (Cal.) 1979, 595 F.2d 521.

This section makes agency information available to public but does not apply to courts of United States. Cook v. Willingham, C.A.10 (Kan.) 1968, 400 F.2d 885.

Tax Court was not an "agency" for purposes of this section such as to require it to disclose requested information. Ostheimer v. Chumbley, D.C.Mont.1980, 498 F.Supp. 890, affirmed 746 F.2d 1487.

**47. — Federal Home Loan Mortgage Corporation**

Federal Home Loan Mortgage Corporation was "agency," subject to disclosure and reporting requirements of this

section, Rocap v. Indiek, C.A.D.C. 1975, 539 F.2d 174, 176 U.S.App.D.C. 17.

**48. — Food and Drug Administration**

Pertinent records of the Food and Drug Administration may be subject to the provisions of this section and to the regulations pertaining to official records and information of the Department of Health, Education, and Welfare. Apicella v. McNeil Laboratories, Inc., D.C.N.Y.1975, 66 F.R.D. 78.

**49. — Grantees**

Federal participation in the generation of data by a privately controlled organization by means of a grant from Department of Housing and Urban Development does not make the private organization a federal "agency" within terms of this section. Forsham v. Harris, U.S. Dist.Col. 1980, 100 S.Ct. 977, 445 U.S. 169, 63 L.Ed.2d 293.

**50. — Municipalities**

Freedom of Information Act does not apply to municipal corporations. Rankel v. Town of Greenburgh, S.D.N.Y.1987, 117 F.R.D. 50.

**51. — National Academy of Sciences**

National Academy of Sciences is not an "agency" within this section. Lombardo v. Handler, D.C.D.C.1975, 397 F.Supp. 792, affirmed 546 F.2d 1043, 178 U.S.App.D.C. 277, certiorari denied 97 S.Ct. 2639, 431 U.S. 932, 53 L.Ed.2d 248.

**52. — National Security Council**

National Security Council (NSC) is "agency" and is subject to Freedom of Information Act (FOIA). Armstrong v. Executive Office of the President, 1995, 877 F.Supp. 690.

The National Security Council is an Agency for purposes of the Freedom of Information Act. 1978 (Counsel-Inf. Op.) 2 Op.O.L.C. 197.

**53. — Office of Science and Technology**

Where Office of Science and Technology had independent function of evaluating federal scientific programs, Office was "agency" subject to this section. Soucie v. David, C.A.D.C.1971, 448 F.2d 1067, 145 U.S.App.D.C. 144.

**54. — Office of the President**

Executive Residence of the President, which is exclusively dedicated to assisting the President in maintaining his home

... carrying out his various ceremonial ... is not an "agency" as defined in Freedom of Information Act (FOIA), and therefore was not subject to FOIA reporting requirements; staff of Executive Residence exercises no independent authority. Sweetland v. Walters, C.A.D.C.1995, 60 F.3d 852, 314 U.S.App.D.C. 9.

Counsel to the President, as part of Office of the President, was not an "agency" for purposes of the Freedom of Information Act. National Sec. Archive v. Archivist of the U.S., C.A.D.C. 1990, 909 F.2d 541, 285 U.S.App.D.C. 302.

"Executive Office" does not include Office of the President, and President's immediate personal staff or units in Executive Office whose sole function is to advise and assist President are not included within term "agency" under Freedom of Information Act. Rushforth v. Council of Economic Advisers, C.A.D.C. 1985, 762 F.2d 1038, 246 U.S.App.D.C. 59.

Under second prong of test applied to determine if entity in executive branch is agency and is subject to Freedom of Information Act (FOIA) or "sole function test", entity that exercises substantial independent authority aside from advising and assisting President is an agency. Armstrong v. Executive Office of the President, 1995, 877 F.Supp. 690.

The Office of the President is not an "agency" within meaning of this section. Lombardo v. Handler, D.C.D.C.1975, 397 F.Supp. 792, affirmed 546 F.2d 1043, 178 U.S.App.D.C. 277, certiorari denied 97 S.Ct. 2639, 431 U.S. 932, 53 L.Ed.2d 248.

**55. — Pardon Attorney**

The Office of the Pardon Attorney which, in addition to handling pardon applications, is authorized to perform any other duties assigned by the Attorney General or the deputy attorney general is a unit within an executive department. Crooker v. Office of Pardon Attorney, C.A.2 (Conn.) 1980, 614 F.2d 825.

**56. — President elect's transition staff**

President elect's transition staff is not an agency within this section. Illinois Institute for Continuing Legal Educ. v. U.S. Dept. of Labor, D.C.Ill.1982, 545 F.Supp. 1229.

**57. — Red Cross**

American National Red Cross, undoubtedly a close ally of the United States government, is not an "agency" for purposes of this section, as operations of Red Cross are not subject to substantial federal control or supervision. Irwin Memorial Blood Bank of San Francisco Medical Soc. v. American Nat. Red Cross, C.A.9 (Cal.) 1981, 640 F.2d 1051.

**58. — Renegotiation boards**

The Renegotiation Board is an "agency" for purposes of this section and is not exempt from the applicable provisions of its provisions. Renegotiation Bd. v. Bannercraft Clothing Co., Inc., U.S. Dist.Col. 1974, 94 S.Ct. 1028, 415 U.S. 1, 39 L.Ed.2d 123, on remand 495 F.2d 1074, 162 U.S.App.D.C. 18.

Regional Renegotiation Board, charged with obligation to file reports in renegotiation cases is "agency" to which this section, including requirement of disclosure of final opinions, applies. Grumman Aircraft Engineering Corp. v. Renegotiation Bd., C.A.D.C. 1973, 482 F.2d 710, 157 U.S.App.D.C. 121, certiorari granted 94 S.Ct. 2602, 417 U.S. 907, 41 L.Ed.2d 211, reversed on other grounds 95 S.Ct. 1491, 421 U.S. 168, 44 L.Ed.2d 57.

**59. — Smithsonian Institution**

Smithsonian Institution had reasonable basis for concluding that it was not "agency" under Freedom of Information Act (FOIA), and thus, it was not liable for attorney fees, even though institution is federally chartered, receives federal appropriations, has many employees subject to civil service laws, and hires own public force. Cotton v. Heyman, C.A.D.C.1995, 63 F.3d 1115, 314 U.S.App.D.C. 161.

Smithsonian Institution was "agency" subject to Freedom of Information Act (FOIA); Smithsonian performed governmental functions as center of scholarship and national museum responsible for safekeeping and maintenance of national treasures, Smithsonian received federal funds for many of its operations, was chartered by act of Congress, and had majority of civil service employees, and Smithsonian received representation from United States Attorney, absolute governmental immunity in liability suits, and other benefits in property transfers. Cotton v. Adams, D.D.C.1992, 798 F.Supp. 22.

149

148



Graham H. Kidner, Asst. Gen. Counsel
8200 Jones Branch Drive, MS 202
McLean, Virginia 22102
(703) 903-2492 (telephone)
(703) 903-3691 (facsimile)
graham_kidner@freddiemac.com

8 September 2005

Robert S. Mandell
1199 Main Avenue, Suite 5
Clifton, New Jersey 07011

Re:    Freedom of Information Act Request
       Bank of America, N.A. Loan No. 6060430888
       Myrna B. Tagayun, 57 Prospect Street, Clifton, NJ

Dear Mr. Mandell:

I received your letter dated 3 September 2005.   I am familiar with *Rocap v. Indiek*, 539 F.2d 174 (D.C. Cir. 1976).  Because of fundamental changes made by Congress to Freddie Mac's status after the decision in *Rocap*, Freddie Mac takes the position that it is no longer subject to the Freedom of Information Act.

Yours sincerely,

Graham H. Kidner

cc:    *Richard Haber, Esq.*

HASLER

SEP

US POSTA

FIRST CLASS

MAILED FROM 22102

011A0413002205

Received 9-14-05

Freddie Mac
We make home possible™

8200 Jones Branch Drive
McLean, VA 22102-3110
Return Service Requested

Robert S. Mandell
1199 Main Avenue, Suite 5
Clifton, New Jersey 07011

07011+2253-05  C015

EXHIBIT G



# QUANTUM
## Financial Solutions, LLC

May 31, 2006

RECEIVED

JUN 21 2006



Justice David Souter
Supreme Court of the United States
Washington, D.C. 20543

Hon. Margaret Mary McVeigh
Judge, Superior Court of New Jersey
77 Hamilton Street
Paterson, New Jersey 07505

**RE: Bank of America v. Myrna Tagayun, et al.**
       **Docket No. F-7040-05**

Dear Justice Souter and Judge McVeigh,

I am an attorney with 29 years experience who currently represents over 100 clients in tax resolution issues with the Internal Revenue Service, including the Defendant in the above captioned case, through a national tax resolution company that is currently representing over 1,000 clients.

I am writing at the request of my client in response to the letter dated May 11, 2006 from Christopher J. Christie, United States Attorney, that was sent to the Superior Court of New Jersey. In this letter he stated that, "Typically the government looks to surplus funds and not to its statutory redemption rights in these matters". From my experience working in the tax resolution practice, I find this assertion somewhat overstated. I have found that the IRS takes a case by case approach to the issue of exercising its redemption rights, based upon the amount of equity in the property. Here, where the equity is substantial, the IRS would be inclined to exercise its rights. I currently have a case, very similar to this one, where the IRS is indeed exercising its right of redemption. Typically the IRS will find investors through making contacts with local real estate brokers and through announcements on its web site:

http://www.treas.gov/auctions/irs/index.html

The letter also states "The statutory right of redemption runs to the United States and to no other party". It is in fact the case that 28 U.S.C. Section 2410(c) and (d) protects only the interest of the United States, which as far as I know has not been waived, and therefore extends for the

5353 Manhattan Circle, Suite 100, Boulder, Colorado 80303
(888) 852-7978 • Fax (303) 499-0531 • www.quantum-financial.net

entire 120 days. I am not licensed as an attorney in New Jersey so I am not competent to comment on the affect of this right on the ability of the purchaser of the property to receive title free and clear of all encumbrances. Nor am I competent to comment on the equitable right of the Defendant to redeem during the period that the IRS has redemption rights that may have been extended to the defendant under New Jersey case law.

Sincerely,

John A. Filippello
Attorney
Quantum Financial Solutions
Tel: (888) 852-7978 Ext. 237

Airbill: 16413104551



https://www.wwexship.com/wwxchange/Label?id=164131045:

Waybill #: **16413104551**

Origin: **WBU**
Date Printed: 6/1/2006

Webship API 02.00 (01/2004)

| To: | Service: |
|---|---|
| **Robert Mandell**<br>**1199 Main Avenue, Suite 5**<br>**Clifton, NJ 07011**<br>**UNITED STATES** | **E** |
| | Special Service: |
| Attention To: **Robert Mandell**<br>Phone #:  **(973) 253-7737** | Route:<br>**TEBY 0W** |



**DHL**

www.dhl.com

**Worldwide EXPRESS.**

www.wwexship.com

From:
QUANTUM FINAN. SOLUTIONS
5353 MANHATTAN CIR. #100
ATTN: MATT
BOULDER, CO 80303
UNITED STATES

Sent By:  John Filippello
Phone #: 888-852-7978

Description:
**Weight (lbs.): Letter**    Dims:0 X 0 X 0
Pieces:             1 of 1
Bill Shipment To: Sender
Ship Ref:           Resolutions

— — — — — — — — — Please fold or cut in half — — — — — — — — —
## DO NOT PHOTOCOPY
Using a photocopy could delay the delivery of your package and will result in additional shipping charge s

Create New Shipment        View Pending Shipments

DHL Signature (optional)_____ Route_____ Date_____ Time_____



**Worldwide EXPRESS.**

For Tracking, please go to www.dhl-usa.com or call 1-800-CALL-DHL
Thank you for shipping with DHL Worldwide Express





May 4, 2006

Robert S. Mandell
1199 Main Avenue, Suite 5
Clifton, NJ 07011

Dear Bob,

Enclosed you will find the Application for Certificate of Subordination, along with the lien payoff amount request. Copies of these documents were also faxed to you on May 4, 2006. Please contact me or John if you have any questions.

Sincerely,

Sara Goldsmith
Assistant to John A. Filippello
(888) 852-7978 ext. 265



# APPLICATION FOR CERTIFICATE OF SUBORDINATION
# OF FEDERAL TAX LIEN

**ATTN:**

Technical Services Group Manager
*Internal Revenue Service*
*Attn: Tom Corcoran*
*Fax: (732) 761-3342*

**1. Date of Application**

*April 20, 2006*

**2. Pursuant to**

26 USC (Internal Revenue Code)
*Section 6325(d)(1)*

**3. Applicants**

*Taxpayer applying for subordination:*

*Owner of Real Estate:*
*Myrna B. Tagayun, M.D.*        *SSN: 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*
*57 Prospect Street*
*Clifton, NJ 07011*

**4. Description of Property**

*The personal residence of the applicant at 57 Prospect Street, Clifton, NJ 07011*

**5. Federal Tax Liens**

*Personal Tax Returns for 1997, 1998, 1999, 2000, 2001 and 2002*

**6. Encumbrances**

*The property was foreclosed upon and sold at auction on April 11, 2006. The winning bid was $293,000. The applicant seeks to exercise her right to redeem the property by obtaining a loan to do so. The total amount that was claimed by the foreclosing party was $193,000. After closing costs the net proceeds to the Internal Revenue Service from this redemption would be $90,000.00. (See attachment from the Superior Court of New Jersey, Chancery Division, Passaic County).*

**7. Costs of Refinance**

*Estimated at $10,000.00*

**Page 2: Application for Certificate of Subordination**

**8.  Fair Market Value**   Based upon the price received at auction the fair market value is $293,000, since a party other than the lender acquired it for $100,000 more than the minimum bid.

**9. Additional Information**   **TOTAL CASH OFFER TO THE UNITED STATE GOVERNMENT OF $90,000.** This offer will avoid the IRS having to purchase the assets in order to preserve its liens.

**10. Taxpayer Contact**   John A. Filippello
(Note): John A. Filippello is being designated as the contact person for the purpose of providing the Internal Revenue Service information it needs to complete this transaction and to discuss this transaction with the Internal Revenue Service. He does not, however, have the authority to bind Applicants to any legal commitments. That can be done only by an officer of Applicants.

**11. Taxpayer Representative**   John A. Filippello
CAF: 0302-20863 R
Quantum Financial Solutions, LLC
5353 Manhattan Circle Suite 100
Boulder, CO 80303
(303) 499-9570

Under penalties of perjury, we declare that we have examined this application, including any accompanying schedules, exhibits, affidavits, and statements, and to the best of our knowledge and belief it is true, correct, and complete.

By: John Filippello                                   4/20/2008
                                                        Date



# QUANTUM
## Financial Solutions, LLC

May 4, 2006

Internal Revenue Service
Centralized Lien Unit

**VIA FACSIMILE:** (859) 669-3805

**RE: Myrna Tagayun**          **SSN: 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**

Dear Sir or Madam,

Please provide me the payoff information, including the per diem charges, for all tax liens owed by the taxpayer on the property located at:

57 Prospect Street
Clifton, NJ 07011

This request is being made pursuant to a refinancing of said property and the Federal Tax liens will be paid in full.

Should you have any questions or concerns, please do not hesitate to contact me.

**Attached please find an executed 2848 naming me as the power of attorney, and 8821 authorizing information to be given to my assistant, Sara Goldsmith.**

Sincerely,

John A. Filippello
Associate
Quantum Financial Solutions
TEL: (303) 499-9570 Ext. 237
FAX: (303) 499-0531

---

5353 Manhattan Circle, Suite 100, Boulder, Colorado 80303
(888) 852-7978 • Fax (303) 499-0531 • Solutions@Quantum-Financial.Net

EXHIBIT H

# CIVIL COVER SHEET

JS 44 (Rev. 3/99)

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**

Bank of America, N.A. (National Association)

(b) County of Residence of First Listed Plaintiff  Mecklenburg County, North Carolina
(EXCEPT IN U.S. PLAINTIFF CASES)

**DEFENDANTS**
(1) UNITED STATES OF AMERICA
(2) MYRNA B. TAGAYUN & MR. TAGAYUN, HUSBAND OF MYRNA B. TAGAYUN (LEGAL NAME: ROBERT S. MANDEL)
(3) STATE OF NEW JERSEY; (4) DISCOVER BANK et al

County of Residence of First Listed
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c) Attorney's (Firm Name, Address, and Telephone Number)

Zucker, Goldberg & Ackerman
200 Sheffield St., Suite 301, POB 1024
Mountainside, NJ 07092-0024   908-379-2233

Attorneys (If Known)

Robert S. Mandell, Husband of Myrna B.
Tagayun, Pro Se for Himself and Myrna
B. Tagayun – Other Counsel Unknown (if any)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
(2) ☒ 3  Federal Question (U.S. Government Not a Party)

☒ 2  U.S. Government Defendant
(3) ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— Med. Malpractice | ☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury— Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 892 Economic Stabilization Act |
| | | | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 894 Energy Allocation Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | | |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

**V. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

(1):15 U.S.C. 1601 to 2400 inclusive- Plaintiff has violated numerous provisions of the Truth in Lending Act and Fair Debt Collection Practices Act; (2): 28 U.S.C. 1332 (a)(1) Diversity

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ Unspecified
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions):
JUDGE _____  DOCKET NUMBER _____

DATE  MAY 31, 2005

SIGNATURE OF ATTORNEY OF RECORD  _[signature]_
Robert S. Mandell a/k/a "Mr. Tagayun"
Pro Se for Myself and My Wife

FOR OFFICE USE ONLY

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

NOT FOR PUBLICATION                                    **CLOSED**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ) | Civ. Docket No. 05-2805 |
| ) |  |
| BANK OF AMERICA, N.A.,    ) |  |
| ) | **OPINION AND ORDER** |
| Plaintiff,    ) |  |
| ) |  |
| MYRNA TAGAYUN, ROBERT S.    ) |  |
| MANDELL a/k/a Mr. Tagayun,    ) |  |
| DISCOVER BANK, et al.,    ) | Date: August 2, 2005 |
| ) |  |
| Defendant.    ) |  |

<u>**HOCHBERG, District Judge:**</u>

 This matter having come before the Court upon Plaintiff Bank of America's Motion to

Remand;[1] and the Court having considered the written submissions of the parties pursuant to Fed.

R. Civ. P. 78; and

---

 [1]On April 29, 2005, Plaintiff commenced a civil action against Defendants Myrna Tagayun and Robert S. Mandell a/k/a Mr. Tagayun (husband of Myrna Tagayun) in the Superior Court of New Jersey, Chancery Division, Passaic County, Docket No. F-7040-05. Plaintiff is the holder of a first purchase money mortgage on property located at 57-59 Prospect Street, Clifton, New Jersey, and alleges that Defendant Myrna Tagayun defaulted under the terms and conditions of the mortgage by failing to make the February 1, 2005 payment and all payments due thereafter. As a result of the alleged default, Plaintiff Bank of America filed the instant foreclosure action and on May 6, 2005 joined Discover Bank and the United States of America as additional lienholders on the property. On May 31, 2005, Defendant Robert S. Mandell, a/k/a "Mr. Tagayun" filed a Notice of Removal on the basis of diversity of citizenship under 29 U.S.C. §§ 1332 and 1441.

it appearing that Defendant Discover Bank neither joined nor consented to the removal petition.[2]

Accordingly, **IT IS** on this 2nd day of August 2005,

ORDERED that Plaintiff's Motion to Remand to State Court is **GRANTED**, and it is further

ORDERED that this matter is **REMANDED** to the Superior Court of New Jersey, Chancery Division, Passaic County, New Jersey, and it is further

ORDERED that this case is **CLOSED**.

/s/ **Faith S. Hochberg**
Hon. Faith S. Hochberg, U.S.D.J.

---

[2]In accordance with 28 U.S.C. § 1446(c), the "rule of unanimity" requires all defendants to join in or consent to the removal petition. The failure of one defendant to join the notice precludes removal unless the removal petition adequately explains the absence or nonjoinder of a codefendant. *Balazik v. County of Dauphin*, 44 F.3d 209, 213 (3d Cir. 1995). The Court of Appeals for the Third Circuit has held that the unanimity rule may be disregarded where (1) a non-joining defendant is an unknown or nominal party; (2) a defendant has been fraudulently joined; or (3) a non-resident defendant has not been served at the time the removing defendants filed their petition. *Id.* at 213 (3d Cir. 1995); *Lewis v. Rego Co.*, 757 F.2d 66, 68 (3d Cir. 1985); *Michaels v. State of New Jersey Attorney General's Office*, 955 F. Supp. 315, 319 (D.N.J. 1996); *see also Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939). Here, Discover Bank, a junior lienholder, is a real Defendant in interest whose absence has not been adequately explained. Defendants Tagayun argue that the removal was proper because Defendant Discover Bank and the United States of America were joined in this litigation by an Amended Complaint filed after the original complaint. However, given that the removal petition was filed after the joinder of the additional Defendants, this argument is meritless.

2

## SUPERIOR COURT OF NEW JERSEY



**MARGARET MARY MC VEIGH, P.J. CH**

RECEIVED
JUL 2 5 2005
CIVIL PRACTICE

COURTHOUSE
PATERSON, NEW JERSEY 07505-2018

July 21, 2005

Kevin M. Wolfe, Esq.
Civil Practice Liason
Civil Practice Division
Administrative Office of the Courts
25 Market Street
Trenton, New Jersey 08625

**TRUE COPY OF THE ORIGINAL INSPECTED BY ME.**

*Michele Chambers*
NOTARY PUBLIC
MICHELE CHAMBERS
Notary Public of New Jersey
My Commission Expires Aug. 5, 2008

RE:    Bank of America v. Tagauyn
       Docket No.: F-7040-05

Dear Mr. Wolfe:

        We are returning this foreclosure file that I had requested after our conversation in this matter.  We have confirmed with the Federal District Court that the matter was removed from the State Court and is currently scheduled before Federal District Court Judge Faith Hochberg and or Magistrate Schwartz, returnable July 25, 2005.  The motion, presumably filed by Zucker Goldberg's office will be heard there (Federal District Court) and not the General Equity Division of the Superior Court.

        The Federal District Court is aware of our interest in this matter, and will hopefully advise my chambers when and if this matter is remanded to State Court.  In the interim, the file should remain with the Foreclosure Unit.

        I hope this clarifies these issues.

Very truly yours,

*Margaret Mary McVeigh*
Margaret Mary McVeigh, P.J.Ch.

MMM:rlg



I hereby certify that the foregoing
is a true copy of the original on file
in my office.

*Donald T. Phelan*
Clerk

**EXHIBIT J**

# UNITED STATES
# CODE
# ANNOTATED

# PART II—LIENS

Sec.
6321. Lien for taxes.
6322. Period of lien.
6323. Validity and priority against certain persons.
6324. Special liens for estate and gift taxes.
6324A. Special lien for estate tax deferred under section 6166.
6324B. Special lien for additional estate tax attributable to farm, etc, valuation.
6325. Release of lien or discharge of property.
6326. Administrative appeal of liens.
6327. Cross references.

## HISTORICAL AND STATUTORY NOTES

**Amendments**

1998 Amendments. Pub.L. 105–206, Title III, § 3401(a), July 22, 1998, 122 Stat. 747, added Part II heading.

1988 Amendments. Pub.L. 100–647, Title VI, § 6238(c), Nov. 10, 1988, 102 Stat. 3743, added item 6326 and redesignated former item 6326 as 6327.

1981 Amendments. Pub.L. 97–34, Title IV, § 422(c)(6)(D), Aug. 13, 1981, 95 Stat. 316, deleted from item 6324A "or 6166A" following "section 6166".

1976 Amendments. Pub.L. 94–455, Title XX, §§ 2003(d)(2), 2004(f)(1), Oct. 4, 1976, 90 Stat. 1862, 1871, added items 6324A and 6324B.

1966 Amendments. Pub.L. 89–719, Title 1, §§ 101(b)(1), 103(b), Nov. 2, 1966, 80 Stat. 1131, 1135, substituted "Validity and priority against certain persons" for "Validity against mortgages, pledges, purchasers, and judgment creditors" in item 6323, and eliminated "partial discharge" which preceded "discharge" in item 6325.

## CROSS REFERENCES

Adjustments for gifts made within three years of decedent's death, see 26 USCA § 2035.

Sale of seized property, see 26 USCA § 6335.

## LIBRARY REFERENCES

**Texts and Treatises**
Internal Revenue, 20 Fed. Proc. L Ed § 48:592.

## § 6321. Lien for taxes

If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

(Aug. 16, 1954, c. 736, 68A Stat. 779.)

## HISTORICAL AND STATUTORY NOTES

**Revision Notes and Legislative Reports**
1954 Acts. House Report No. 1337, Senate Report No. 1622, and Conference Report No. 2543, see 1954 U.S. Code Cong. and Adm. News, p. 4554.

**Short Title**
Pub.L. 89–719, § 1(a), Nov. 2, 1966, 80 Stat. 1125, provided that: "This Act [enacting sections 3505, 7425, 7426 and 7810 of this title, amending sections 545, 6322 to 6325, 6331, 6332, 6334, 6335, 6337 to 6339, 6342, 6343, 6502, 6503, 6532, 7402, 7403, 7421, 7424, 7505, 7506 and 7809 of this title, sections 1346, 1402 and 2410 of Title 28, Judiciary and Judicial Procedure, and section 270a of Title 40, Public Buildings, Property and Works, redesignating former section 7425 of this title as 7427, and enacting provisions set out as notes under this section and section 7424 of this title, and under section 1346 of Title 28] may be cited as the 'Federal Tax Lien Act of 1966.'"

## CROSS REFERENCES

Action to enforce lien or to subject property to payment of tax, see 26 USCA § 7403.

Liability of operators for repayments to Mine Safety and Health Fund, see 30 USCA § 934.

Lien for liability, Employee Retirement Income Security Program, see 29 USCA § 1368.

## AMERICAN LAW REPORTS

Effect of certificate, statement (or refusal thereof), or error by tax collector or other public officer regarding unpaid taxes or assessments against specific property 21 ALR2d 1273.

Sufficiency of designation of taxpayer in recorded notice of federal tax lien. 3 ALR3d 633.

Effect of misnomer of landowner or delinquent taxpayer in notice, advertisement, etc., of tax foreclosure or sale. 43 ALR2d 967.

Void tax deed, tax sale certificate, and the like, as constituting color of title. 38 ALR2d 986.

Interest and penalties on federal tax covered in part by prebankruptcy liens as allowable or as surviving discharge in bankruptcy. 77 ALR2d 1125.

Tax sales or forfeitures by or to governmental units as interrupting adverse possession. 50 ALR2d 600.

Who may redeem, from a tax foreclosure or sale, property to which title or record ownership is held by corporation. 54 ALR2d 1172.

Interest of spouse in estate by entireties as subject to satisfaction of his or her individual debt. 75 ALR2d 1172.

Liens competing with federal tax priorities as choate or inchoate. 94 ALR2d 748.

Validity, construction, and effect of statutory provision for tax lien on property not belonging to taxpayer but used in his business. 84 ALR2d 1090.

Priority as between federal tax lien and mortgage to secure future advances or expenditures by mortgagee. 90 ALR2d 1179.

Right to attack merits of assessment, in proceeding under 26 USCA § 7403 to enforce, or under 28 USC § 2410 to discharge, federal tax lien. 100 ALR2d 869.

Dischargeability of claim for taxes under 1966 amendment to § 17a(1) of Bankruptcy Act (11 USC § 35a(1)) as affecting government's right to enforce tax lien against after-acquired property of bankrupt. 5 ALR Fed 1004.

Taxpayer's right under 28 USCA § 2410(a) to challenge procedures followed in imposing and enforcing federal tax lien on his property. 38 ALR Fed 900.

## LIBRARY REFERENCES

**American Digest System**
Internal Revenue ⟨=⟩4765.
Key Number System Topic No. 220.

§ 241U

…iorari denied 99 S.Ct. 2882, 442 U.S. …l L.Ed.2d 310.

If action against United States to confirm title to mineral rights was brought under seemingly most appropriate jurisdictional authority for action, it was barred after 12 years from date when plaintiff or predecessor in interest knew or should have known of claim of United States, and plaintiff's claim was accordingly too late. Selig v. U.S., D.C.Ark. 1982, 538 F.Supp. 1387.

Quiet title action brought against United States on September 15, 1975, was commenced within applicable twelve-year period of limitations, in view of fact that until 1968 there had been no sign of reemergence of disputed property sufficient to place plaintiff on notice of United States' claim to disputed property. Parker v. U.S. Dept. of Interior Bureau of Land Management, D.C.Idaho.1977, 431 F.Supp. 226.

Where none of plaintiffs knew, or should have known, of government's claim to realty prior to calendar year 1962, and complaint was amended well within twelve years thereafter to bring their action within this section, action was timely. Wackerli v. Morton, D.C.Idaho 1975, 390 F.Supp. 962.

**94. Tolling**

Statute of limitations applicable to homesteader's quiet title claims against federal Government was not tolled by his pursuit of administrative process after he had departed from formal appeal procedure, regardless of whether subsequent quiet title could have been dismissed for nonexhaustion. Donnelly v. U.S., C.A.9 (Alaska) 1988, 850 F.2d 1313, certiorari denied 109 S.Ct. 878, 488 U.S. 1046, 102 L.Ed.2d 1001.

Statute of limitations on party's quiet title claims against federal government was not tolled, even assuming 12-year statute was tollable, by settlement of previous action brought by claimant's predecessors-in-interest to enjoin Corps of Army Engineers from opening bids to lease disputed tract; claimant failed to establish that delay in filing suit was result of Government's stipulation to dismiss previous action, purportedly leading claimant to believe that Government had withdrawn its claim to the property. Borough of Marcus Hook v. Marine Investors, Inc., E.D.Pa.1987, 678 F.Supp. 109.

**95. Exceptions**

Although there may be cases where exceptions to applicability of statutes of limitations might be desirable, courts are not at liberty to draft any exception to requirements of statute requiring that action brought against United States to quiet title to property claimed by United States be brought within 12 years of time plaintiffs knew or should have known of claim of United States. Park County, Mont. v. U.S. By and Through Secretary of Agriculture, D.C.Mont.1978, 454 F.Supp. 1, affirmed 626 F.2d 718, certiorari denied 101 S.Ct. 923, 449 U.S. 1112, 66 L.Ed.2d 841.

**96. Waiver**

Twelve-year limitation for commencement of an action to adjudicate disputed title to real property in which the United States claims an interest, other than a security interest or water rights, is jurisdictional and therefore cannot be waived and may be raised at any time. Humboldt County v. U.S., C.A.9 (Nev.) 1982, 684 F.2d 1276.

Statute of limitations contained in this section is jurisdictional and may not be waived; it must be strictly construed in favor of the sovereign. Vincent Murphy Chevrolet Co., Inc. v. U.S., D.C.Colo. 1983, 561 F.Supp. 1233, affirmed 766 F.2d 449.

**§ 2410. Actions affecting property on which United States has lien**

(a) Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States, the United States may be named a party in any civil action or suit in any district court, or in any State court having jurisdiction of the subject matter—

## Ch. 161   LIENED PROPERTY

(1) to quiet title to,

(2) to foreclose a mortgage or other lien upon.

(3) to partition,

(4) to condemn, or

(5) of interpleader or in the nature of interpleader with respect to,

ral or personal property on which the United States has or claims a mortgage or other lien.

(b) The complaint or pleading shall set forth with particularity the nature of the interest or lien of the United States. In actions or suits involving liens arising under the internal revenue laws, the complaint or pleading shall include the name and address of the taxpayer whose liability created the lien, and, if a notice of the tax lien was filed, the identity of the internal revenue office which filed the notice, and the date and place such notice of lien was filed. In actions in which the United States attorney for the district in which the action is brought or upon an assistant United States attorney in writing filed with the clerk of the court in which the action is brought and by sending copies of the process and complaint, by registered mail, or by certified mail, to the Attorney General of the United States at Washington, District of Columbia. In such actions the United States may appear and answer, plead or demur within sixty days after such service or such further time as the court may allow.

(c) A judgment or decree in such action or suit shall have the same effect respecting the discharge of the property from the mortgage or other lien held by the United States as may be provided with respect to such matters by the local law of the place where the court is situated. However, an action to foreclose a mortgage or other lien, naming the United States as a party under this section, must seek judicial sale. A sale to satisfy a lien inferior to one of the United States, unless the United States consents that the property may be sold free of its lien and the proceeds divided as the parties may be entitled. Where a sale of real estate is made to satisfy a lien prior to that of the United States, the United States shall have one year from the date of sale within which to redeem, except that with respect to a lien arising under the internal revenue laws the period shall be 120 days or the period allowable for redemption under State law, whichever is longer, and in any case in which, under the provisions of section 505 of the Housing Act of 1950, as amended (12 U.S.C. 1701k), and subsection (d) of section 3720 of title 38 of the

Ch. 161    LIENED PROPERTY    Part

§ 201, 80 Stat. 1147; Oct. 22, 1986, Pub.L. 99-514, § 2, 100 Stat. 2095; Nov. 29, 1990, Pub.L. 101-647, Title XXXVI, § 3630, 104 Stat. 4966; Aug. 6, 1991, Pub.L. 102-83, § 5(c)(2), 105 Stat. 406.)

## HISTORICAL AND STATUTORY NOTES

**References in Text**

The internal revenue laws, referred to in subsec. (b), are classified generally to Title 26, Internal Revenue Code.

Section 7425 of the Internal Revenue Code of 1986, referred to in subsec. (d), is classified to section 7425 of Title 26, Internal Revenue Code.

**Revision Notes and Legislative Reports**

**1948 Acts.** Based on Title 28, U.S.C., 1940 ed., §§ 901, 902, 904, 905 (Mar. 4, 1931, c. 515, §§ 1, 2, 4, 5, 46 Stat. 1528, 1529; May 17, 1932, c. 190, 47 Stat. 158; June 25, 1936, c. 804, 49 Stat. 1921; June 6, 1940, c. 242, 54 Stat. 234; Dec. 22, 1942, c. 656, §§ 1-3, 56 Stat. 1026).

Provisions including the districts of Hawaii and Puerto Rico, and the District of Columbia, in section 901 of Title 28, U.S.C., 1940 ed., were omitted as covered by "any district court." See section 451 of this title.

Provisions in section 902 of Title 28, U.S.C., 1940 ed., relating to process, were omitted as covered by Rule 4 of the Federal Rules of Civil Procedure [this title].

Changes were made in phraseology.

**1949 Acts.** This amendment conforms the language of section 2410(b) of Title 28, U.S.C., with that of the prior law with respect to service of process and complaint upon the United States in suits brought in State courts. This is provided for by Rule 4(d)(4) of the Federal Rules of Civil Procedure [this title] with respect to such suits in United States district courts.

**1958 Acts.** House Report No. 624, see 1958 U.S. Code Cong. and Adm. News, p. 2933.

**1960 Acts.** Senate Report No. 1489, see 1960 U.S. Code Cong. and Adm. News, p. 2356.

**1966 Acts.** Senate Report No. 1708, see 1966 U.S. Code Cong. and Adm. News, p. 3722.

**1986 Acts.** House Conference Report No. 99-841 and Statement by President, see 1986 U.S. Code Cong. and Adm. News, p. 4075.

**1990 Acts.** House Report Nos. 101-681(Parts I and II) and 101-736, Senate Report No. 101-460, and Statement by President, see 1990 U.S. Code Cong. and Adm. News, p. 6472.

**Amendments**

**1991** Amendments. Subsec. (c). Pub.L. 102-83 substituted "section 3720 of title 38" for "section 1820 of title 38".

**1990** Amendments. Subsec. (c). Pub.L. 101-647 authorized the United States to credit the amount determined to be due it against the amount which the United States bids at a judicial sale.

**1986** Amendments. Subsec. (d). Pub.L. 99-514 substituted "Internal Revenue Code of 1986" for "Internal Revenue Code of 1954".

**1966** Amendments. Subsec. (a). Pub.L. 89-719 substituted "subject matter—

"(1) to quiet title to,

"(2) to foreclose a mortgage or other lien upon,

"(3) to partition,

"(4) to condemn, or

"(5) of interpleader or in the nature of interpleader with respect to,"

for "subject matter, to quiet title to or for the foreclosure of a mortgage or other lien upon".

Subsec. (b). Pub.L. 89-719 substituted "complaint or pleading shall set forth" for "complaint shall set forth", and inserted sentence requiring the complaint or pleading, in actions or suits involving liens arising under the internal revenue laws, to include the name and address of the taxpayer whose liability created the lien and, if a notice of the tax lien was filed, the identity of the internal revenue office which filed the notice, and the date and place such notice of lien was filed.

Subsec. (c). Pub.L. 89-719 substituted "judgment or decree in such action" for "judicial sale in such action", "discharge of the property from the mortgage

---

United States Code, the right to redeem does not arise, there shall be no right of redemption. In any case where the debt owing the United States is due, the United States may ask, by way of affirmative relief, for the foreclosure of its own lien and where property is sold to satisfy a first lien held by the United States, the United States may bid at the sale such sum, not exceeding the amount of its claim with expenses of sale, as may be directed by the head (or his delegate) of the department or agency of the United States which has charge of the administration of the laws in respect to which the claim of the United States arises. In any case where the United States is a bidder at the judicial sale, it may credit the amount determined to be due it against the amount determined to be due it at such sales.

(d) In any case in which the United States redeems real property under this section or section 7425 of the Internal Revenue Code of 1986, the amount to be paid for such property shall be the sum of—

(1) the actual amount paid by the purchaser at such sale (which, in the case of a purchaser who is the holder of the lien being foreclosed, shall include the amount of the obligation secured by such lien to the extent satisfied by reason of such sale),

(2) interest on the amount paid (as determined under paragraph (1)) at 6 percent per annum from the date of such sale, and

(3) the amount (if any) equal to the excess of (A) the expenses necessarily incurred in connection with such property, over (B) the income from such property plus (to the extent such property is used by the purchaser) a reasonable rental value of such property.

(e) Whenever any person has a lien upon any real or personal property, duly recorded in the jurisdiction in which the property is located, and a junior lien, other than a tax lien, in favor of the United States attaches to such property, such person may make a written request to the officer charged with the administration of the laws in respect of which the lien of the United States arises, to have the same extinguished. If after appropriate investigation, it appears to such officer that the proceeds from the sale of the property would be insufficient to wholly or partly satisfy the lien of the United States, or that the claim of the United States has been satisfied or by lapse of time or otherwise has become unenforceable, such officer shall so report to the Comptroller General who may issue a certificate releasing the property from such lien.

(June 25, 1948, c. 646, 62 Stat. 972; May 24, 1949, c. 139, § 119, 63 Stat. 105; July 7, 1958, Pub.L. 85-508, § 12(h), 72 Stat. 348; June 11, 1960, Pub.L. 86-507, § 1 (20), 74 Stat. 201; Nov. 2, 1966, Pub.L. 89-719, Title II,

675

**EXHIBIT E**

# ADMINISTRATIVE OFFICE OF THE COURTS
## STATE OF NEW JERSEY

PHILIP S. CARCHMAN, J.A.D.
ACTING ADMINISTRATIVE DIRECTOR OF THE COURTS

JOHN P. McCARTHY, JR.
DIRECTOR, OFFICE OF TRIAL COURT SERVICES



JANE F. CASTNER
ASSISTANT DIRECTOR
CIVIL PRACTICE DIVISION
PO BOX 981
TRENTON, NEW JERSEY 08625-0981
(609) 292-8470

July 18, 2007

Robert S. Mandell
1360 Clifton Avenue, # 27J
Clifton, New Jersey 07012

> **Re:** **Bank of America vs. Tagayun, et al**
> **Docket No.: F-7040-05**

Dear Mr. Mandell:

This letter will confirm my instructions to the Superior Court Clerk's records staff that miscellaneous notes, transmittal sheets, facsimile cover sheets and correspondence which was received, but not filed, in the above referenced foreclosure action is not to be copied or certified as a true copy of the court's official record.

Cordially yours,

Kevin M. Wolfe

KMW/mc

EXHIBIT F



**State of New Jersey**
OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION OF LAW
25 MARKET STREET
PO BOX
TRENTON, NJ 08625-0

JON S. CORZINE
*Governor*

ANNE MILGRAM
*Attorney General*

ROBERT J. GILSON
*Director*

May 9, 2008

Myrna Tagayun & Robert S. Mandell
1360 Clifton Ave., # 275
Clifton, NJ 07012

Re:    Tagayun, et al. v. Federal Home Loan Mort.
       Corp., et al.
       Docket No. 08-476 (JR)

Dear Ms. Tagayun and Mr. Mandell:

        I am the Deputy Attorney General assigned to defend the State of New Jersey in the above-referenced matter.  Please direct all future correspondence in this matter to my attention. Please copy me on all court filings and correspondence with the court and/or counsel.

        Please be advised that this case is improperly venued: The United States District Court for the District of Columbia lacks personal jurisdiction over the State of New Jersey.  Please promptly dismiss your claims against State.  If you fail to dismiss your claims against the State, we shall enter a limited appearance and move to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure.  We reserve the right to ask the court to impose sanctions and assess attorneys' fees against you under Rule 11 of the Federal Rules of Civil Procedure, if you fail to promptly dismiss your claims against the State.

                Sincerely yours,

                ANNE MILGRAM
                ATTORNEY GENERAL OF NEW JERSEY

        By:    Matthew Sapienza

                Matthew Sapienza
                Deputy Attorney General



HUGHES JUSTICE COMPLEX • TELEPHONE: (609) • FAX: (609)
*New Jersey Is An Equal Opportunity Employer • Printed on Recycled Paper and Recyclable*




*STATE OF NEW JERSEY*
*ADMINISTRATIVE OFFICE OF THE COURTS*

## KEVIN M. WOLFE, ESQ

CHIEF, CIVIL PRACTICE LIAISON
Civil Practice Division

RICHARD J. HUGHES JUSTICE COMPLEX
PO BOX 981, 6th FLOOR, NORTH WING
TRENTON, NEW JERSEY 08625

PHONE: (609) 292-8470
FAX: (609) 777-0844
Kevin.Wolfe@judiciary.state.nj.us